1  BARRETT S. LITT, SBN 45527
   E-Mail: blitt@littlaw.com
2  LINDSAY BATTLES SBN 262862
   Litt, Estuar & Kitson, LLP
3  1055 Wilshire Boulevard, Suite 1880
4  Los Angeles, California 90017
   Telephone: (213) 386-3114
5  Facsimile:  (213) 380-4585

6
   WILLIAM J. GENEGO, SBN. 103224
7  E-Mail: wgenego@gmail.com
   VICKI I. PODBERESKY, SBN. 123220
8  Nasatir, Hirsch, Podberesky & Genego
9  2115 Main Street
   Santa Monica, California 90405
10 Telephone: (310) 399-3259

11
   Attorneys for Plaintiff Bruce Lisker
12

13            UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

15 | BRUCE LISKER,            | CASE NO CV 09-9374 AHM (RC)

16 |            Plaintiff,    | **DECLARATION OF RICHARD LEO RE**
17 |                          | **PLAINTIFF'S MOTION TO ALLOW**
   |            vs.           | **PLAINTIFF TO RETAIN RICHARD LEO**
18 |                          | **AS A CONSULTANT OR EXPERT**
19 | CITY OF LOS ANGELES,
20 | et al.,                  | Hearing Date:    April 18, 2011
   |                          | Hearing Time:    10:00 A.M.
21 |            Defendants.   | Courtroom:        14

22 |                          | Trial Date:       October  17, 2011
23 |                          | TIME:             8:00 A.M.

24

25

26

27

28

## DECLARATION OF RICHARD LEO

I, Richard Leo, hereby state and declare as follows:

1.      I am an Associate Professor of Law at the University of San Francisco School of Law. I have a Ph.D in Jurisprudence and Social Policy (specializing in Social Psychology and Criminology) and a JD. I am a recognized expert in, among other things, psychological coercion, false confessions, and wrongful convictions. For more than two decades, I have conducted research on these issues, as well as on the social psychology of police interrogation, coercive influence techniques and the causes and consequences of police-interrogations and confessions.

2.      In September, 2010, an attorney associated with the City of Los Angeles contacted me to discuss the possibility of my providing expert consultation services on behalf of the City in the case of *Lisker v. City of Los Angeles*. The attorney for the City indicated that he wanted an impartial assessment of the reliability of Mr. Lisker's inculpatory statements, with the implication that, if my conclusions were helpful to the City, it would likely want to retain me as a testifying expert. As discussed below, I did not agree to be retained, and I informed the attorney that there was a potential conflict of interest arising from my work with Plaintiff's counsel Bill Genego on an unrelated case.

3.      I considered the phone conversation to be informal in nature. To the best of my recollection, we did not discuss anything related to the City's litigation strategy. Counsel for the City summarized background information about the case and explained in detail why he thought Mr. Lisker's admissions were likely true rather than false. Now, six months later, I recall the broad outlines of his position but not many of the details.

4.      To the best of my recollection, the attorney did not inform me that any of the information supplied was confidential. And as far as I am aware, none of the information disclosed was confidential. Although I do not remember all the

1

1  details of this conversation since it occurred six months ago, as far as I am aware,

2  the information we discussed is publicly available through court-filed documents

3  and newspaper articles.

4       5.        At the time of the phone call, I was already retained by Mr. Genego

5  in a different and still pending case (*Harold Hall vs. City of Los Angeles*, et al.). I

6  recalled during the call that Mr. Genego was counsel for Mr. Lisker. After

7  recalling this fact, I felt it was important to research my ethical obligations before

8  determining whether I could or would act as a consultant or expert to the City in

9  this case. I advised counsel for the City that I was working with Mr. Genego on a

10 different case and could not agree to be retained by the City until I had resolved the

11 ethical issue of whether I could appropriately act as a consultant or expert for the

12 City. I advised counsel for the City that I would consult with a colleague of mine at

13 the University of San Francisco School of Law where I am employed, perhaps one

14 who teaches professional responsibility, to determine whether I could ethically

15 accept consultation work on defendants' behalf.

16      6.        During the conversation, I did not commit to provide consulting or

17 expert services to defendants, nor have I committed to provide such services at any

18 time since.  I did not discuss consultation fees during the phone conversation. I felt

19 it was premature to discuss fees for my services until I had determined whether I

20 could undertake the project without breaching ethical duties. It is my usual practice

21 to send a retainer agreement after agreeing to be retained, but in this case, I had not

22 agreed to be retained due to the potential conflict of interest, and so did not send

23 one.

24      7.        During the conversation, the attorney representing the City did not

25 ask me to perform any specific services on the City's behalf, nor did I agree to do

26 anything beyond investigating the potential conflict of interest. To date, the City

27 has provided me with no documents to review, and I have done no work on its

28 behalf.  I do not recall the City telling me during this conversation that anything it

2

1  communicated in our call was confidential. No compensation was provided to me

2  by the City.

3         8.        After conferring with a colleague, I concluded that a conflict of

4  interest existed and that I could not provide the requested services without Mr.

5  Genego's express consent. I concluded that the only way I could act on the City's

6  behalf was if I contacted Mr. Genego, and he consented to my doing so and waived

7  any conflict of interest. I placed a call to the attorney for the City to advise him of

8  this conclusion and to see, whether, in light of it, he wanted me to contact Mr.

9  Genego to request such a waiver.

10        9.        Ultimately, I did not have the opportunity to advise the City of my

11  conclusions and proposed resolution because counsel for the City did not follow up

12  with me regarding the case. I left at least one message at the City Attorney's Office

13  indicating that I wanted to speak with him, and possibly two. (I did not

14  communicate my conclusions when leaving the message, only that I wanted to talk

15  to him.) I am not certain whether my first call was returned or not, but I did not

16  speak with the attorney. In any case, counsel for the City did not return my last

17  phone message, and I did not make any further efforts to contact him. After my last

18  unreturned phone call, no one from the City followed up with me regarding my

19  potential involvement in the case.

20        10.      In September, 2010, I had sent several emails to the attorney from

21  the City of Los Angeles. On September 10, 2010, I sent an email informing him

22  that I had been out of town but would return his phone call the following week

23  (this appears to be in response to his first contacting me and leaving a message on

24  my voicemail to contact him). On September 14th, I emailed telling him that I had

25  just gotten back into town and that I would be available for part of that day or the

26  following day for him to call me. We spoke on that day (September 14th), after

27  which I sent three more emails (the first of which thanked him for the phone

28  conversation and the second and third of which contained no text; each of the three

3

1  emails, however, contained an attached book chapter or article on the subject of

2  false confessions).  The final email I sent to this attorney occurred on September

3  29, 2010, after receiving an email from him asking when would be a good time for

4  him to call me.  I suggested the following Monday morning but I never heard back

5  from the attorney after that.  I do not consider anything in these emails confidential

6  but have not provided them to plaintiff's counsel.  I can provide them to the court

7  if the court requests.

8      11.    To the best of my recollection, my contacts with the City of Los

9  Angeles in regard to this case are limited to those described above. I do not believe

10  that these contacts established a confidential relationship or that the City could

11  reasonably conclude that it had retained me, given my clear communication of the

12  potential conflict problem.  I also do not believe the City could reasonably

13  conclude that it had established a confidential relationship with me in the one

14  phone call we had given the nature of this phone call (i.e., to describe the facts of

15  the case to me and ask whether I would be interested in doing an impartial review

16  and analysis for them with regard to Mr. Lisker's inculpatory statements) and my

17  clear communication of the potential conflict problem that first needed resolution.

18      12.    Some months after these events, I was contacted by Mr. Genego

19  about this case, I informed him that I had been contacted, but not retained, by the

20  City. I then had a conversation with him and Barry Litt regarding whether I could

21  act as a consultant or expert for Mr. Lisker. During this conversation, they asked

22  me to describe interactions with the City, but to refrain from communicating any

23  confidential information that was provided. I described what I have described in

24  this declaration, including that I did not believe that any confidential information

25  had been communicated. They indicated that they were interested in retaining me,

26  subject to resolving any issue about whether I could properly act as a consultant or

27  expert for the Plaintiff. I indicated that I was willing to be retained, subject to that

28  same resolution. They then advised me that they would speak with counsel for the

4

1  City and advise him of the situation, and, if they could not resolve the situation

2  with him, they would file a motion with the court. Subsequently, I had a discussion

3  with them regarding the fact that the City Attorney was opposed to my acting as a

4  consultant or expert for the Plaintiff, and that they were going to file a motion with

5  the Court. I am providing this declaration for that motion.

6      I declare under penalty of perjury that the foregoing is true and accurate to

7  the best of my knowledge.

8      Executed at San Francisco, California, on March 13, 2011.

9

10  _____

11              Richard Leo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28