1 | **CARMEN A. TRUTANICH**, City Attorney - **SBN 86629x**
**GARY G. GEUSS**, Chief Assistant City Attorney
2 | **CORY BRENTE**, Assistant City Attorney
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney - **SBN 192872**
3 | christian.bojorquez@lacity.org
200 North Main Street, 6th Floor, City Hall East
4 | Los Angeles, CA  90012
Phone No.: (213) 978-6900, Fax No.: (213) 978-8785
5 |
*Attorneys for Defendant s* **CITY OF LOS ANGELES**, a municipal corporation, also
6 | named as the LOS ANGELES POLICE DEPARTMENT, a non-suable entity, ANDREW MONSUE and HOWARD LANDGREN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| BRUCE E. LISKER, | CASE NO.: CV09-09374 AHM (RCx) |
|---|---|
| Plaintiff, | **Assigned to: Honorable A. Howard Matz**<br>**Courtroom: 14**<br><br>**Assigned to: Magistrate: Andrew J. Wistrich**<br>**Courtroom: 690 - Roybal** |
| vs. | **DEFENDANTS CITY OF LOS ANGELES, ANDREW MONSUE and HOWARD LANDGREN'S** *AMENDED* **NOTICE OF MOTION AND MOTION TO COMPEL PSYCHIATRIC IME OF PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES** |
| CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT, ANDREW MONSUE, HOWARD LANDGREN, and DOES 1 TO 10, | **Date:** July 18, 2011<br>**Time:** 10:00 a.m.<br>**Courtroom:** 690 |
| Defendants | |

**TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE AND NOTICE IS HEREBY GIVEN THAT on July 18, 2011 at 10:00 a.m., before the Honorable Magistrate Judge Andrew J. Wistrich, judge presiding in Courtroom 690 of the United States District Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants, **CITY OF LOS ANGELES**,

1

a **municipal corporation, also named as the LOS ANGELES POLICE DEPARTMENT, a non-suable entity**, **ANDREW MONSUE and HOWARD LANDGREN** (collectively "Defendants") will move the court, pursuant to Federal Rules of Civil Procedure 35, for an Order Compelling Plaintiff to submit to a Defense Mental Examination for the following grounds:

1) To justify a mental examination of a party to a lawsuit, the moving party must prove (1) the adverse party's mental condition is "in controversy" and (2) there is "good cause" for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964); see also *Turner v. Imperial Stores*, 161 F.R.D. 89, 91 (S.D. Cal. 1995). In this matter, it is without question that an Independent Mental Evaluation of Bruce Lisker is appropriate based upon the fact Plaintiff's mental condition is "in controversy" and good cause exists since a large portion of Plaintiff's claimed damages are based on severe emotional distress, which were identified by Plaintiff not only in his deposition, but were also issues raised by Plaintiff through his Psychiatric Expert Report and Psychiatric Examination; and

2) Next, the moving party must prove there is "good cause" for the requested mental evaluation. Generally, "good cause" requires proof of specific facts that justifies the requested discovery. *Schlagenhauf v. Holder, supra*, 379 U.S. at 120. Factors that are relevant when considering whether "good cause" exists include, but are not limited to:

   the possibility of obtaining desired information by other means; whether plaintiff plans to prove his claim through testimony of expert witnesses; whether the desired materials are relevant; and whether plaintiff claims ongoing emotional distress.
   *Mandujano v. Geithner, supra,* 2011 U.S. Dist. LEXIS 27986 at *7.

"Good Cause" exists in this matter justifying a mental examination of Plaintiff. Defendants do not have access to "desired information from other means." More importantly, Exhibit 2 demonstrates that Plaintiff "plans to prove his claim through

testimony" of Dr. Kupers.  Obviously, seeking the examination is entirely relevant and Plaintiff is obviously claiming emotional distress, specifically that he is suffering from Post Traumatic Stress Disorder and Depression as discussed above.

This motion is based upon the allegations of Plaintiff's Complaint, the Memorandum of Points and Authorities attached hereto, the Exhibits, the Proposed Order, and with any other oral and documentary evidence presented to the Court at the time of the hearing.  This Motion is made following Local Rule 7-3 Conferences of Counsel which took place in November 2010 and April of 2011.

## 1. INTRODUCTION

Plaintiff, Bruce Lisker, seeks damages pursuant to 42 U.S.C. § 1983 from retired Los Angeles Police Department Detectives Andrew Monsue and Howard Landgren, based on events that happened more than a quarter-of-a-century ago.  Monsue and Landgren were the detectives assigned to investigate the murder of Lisker's mother.  The detectives did what detectives do.  They interviewed witnesses, gathered evidence, submitted their reports to the prosecuting attorney, and then allowed the criminal proceedings to run their course.

The district attorney charged Lisker with the murder of his mother, Lisker was represented by counsel throughout the criminal proceedings who had full access to all of the evidence that Detectives Monsue and Landgren had gathered as well as the conclusions that Monsue and Landgren drew based on the evidence.  A jury convicted Lisker. Lisker was sentenced to prison.  His conviction was affirmed by both the California Court of Appeal and the Supreme Court.  But then in 2009, the federal district court granted his late-filed habeas petition on the grounds that his attorney had performed inadequately and on the grounds that the prosecution introduced evidence at trial that they knew or should have known was false.  After Lisker was granted habeas relief, the district attorney maintained that Lisker was guilty of murdering his mother, but announced they were unable to proceed with a second prosecution because due to the

1  passage of time, witnesses had died, memories had faded, and evidence had been lost.
2  The murder charges were thereafter dismissed without prejudice. Lisker now wants
3  Monsue and Langren to pay him damages for the 26 years he spent in prison.
4
5  Dated:          June 20, 2011
6                  **CARMEN A. TRUTANICH**, City Attorney
7                  By:_____/S/_____
8                     **CHRISTIAN R. BOJORQUEZ**, Deputy City Atty
9                  *Attorneys for Defendant s* **CITY OF LOS ANGELES**, a municipal
10                 corporation, also named as the LOS ANGELES POLICE
11                 DEPARTMENT, a non-suable entity, ANDREW MONSUE and
12                 HOWARD LANDGREN
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1. **STATEMENT OF FACTS**

Plaintiff, Bruce Lisker's mother, Dorka Lisker, was murdered in her home on March 10, 1983. The police responded to the Lisker home at approximately 11:30 a.m. on March 10, 1983 and found 17-year-old Lisker outside the home, hysterical and screaming with blood on his hands. Shortly thereafter, Lisker was placed in a police vehicle. Los Angeles Police Department Detectives Andrew Monsue and Howard Landgren were tasked with investigating her murder. Detective Monsue arrived on the scene at about 12:00 p.m. Detective Monsue transferred Lisker to another police vehicle and transported him to the police station.

At the station, Detective Monsue interviewed Lisker. Monsue did not advise Lisker of his Miranda rights at the outset of the interview. About halfway through the interview Monsue gave Lisker Miranda advisements. After Detective Monsue gave the Miranda advisements, Lisker waived his rights and the interview continued until Lisker declined to speak further. The entire interview was audio-recorded.

On November 21, 1985, a jury convicted Lisker of second degree murder. On February 7, 1986, the court sentenced Lisker to state prison for a term of 15 years to life, enhanced by one year for use of a deadly weapon, for a total term of 16 years to life.

On December 22, 1988, the California Court of Appeal, Second Appellate District affirmed Lisker's conviction, holding that it was error to admit Lisker's pre-Miranda statements at trial, but that the error was harmless because "[t]he challenged statements pale in significance when considered with the remaining, overwhelming evidence connecting [Lisker] with the murder. We conclude the error was harmless beyond a reasonable doubt."

The California Supreme Court denied habeas relief on April 25, 1989, and Lisker's conviction became final. Lisker did not file anything further in state or federal court attempting to set aside his criminal conviction for the next 14 years.

On February 24, 2003, Lisker signed a petition for writ of habeas corpus which then was filed in the Los Angeles County Superior Court; that court denied the petition

on March 6, 2003. On July 28, 2003, Lisker filed a petition for writ of habeas corpus in the California Court of Appeal which the court denied on August 5, 2003. On August 18, 2003, Lisker filed a petition for review with the California Supreme Court which that court denied on October 29, 2003.

On April 16, 2004, Lisker filed a petition for writ of habeas corpus in federal district court. Thereafter, Lisker filed a First, and then a Second Amended Petition. In the Second Amended Petition, Lisker raised four claims: (1) Lisker's right to counsel was violated by the introduction of a confession obtained by a police agent; (2) Lisker's right to effective assistance of counsel was violated when his trial attorney failed to investigate and present a third-party culpability defense; (3) Lisker's due process right to a fair trial were violated when he was convicted on the basis of false evidence; and (4) Lisker's due process rights were violated by the cumulative impact of the other three constitutional violations.

An evidentiary hearing was held over seven days from December 1 to December 9, 2005. Neither Monsue nor Landgren was called as a witness at this hearing, or otherwise participated in it.

On August 6, 2009, the federal district court issued an order accepting the findings and recommendations of the magistrate judge and ordered and adjudged that the Second Amended Petition be denied as to Lisker's claim of a right of counsel violation, but be granted as to Lisker's claims that his Fourteenth Amendment right to effective assistance of counsel, his Fifth Amendment due process right to a fair trial were violated.

On September 21, 2009, the Superior Court of the State of California, for the County of Los Angeles granted the prosecutor's motion to dismiss the criminal charges against Lisker without prejudice, pursuant to California Penal Code Section 1382. The prosecutor stated that following an extensive review of Lisker's case, the District Attorney's Office was "confident in the defendant's guilt in this case." The prosecutor explained that due the passage of time, because witnesses have died, because memories

2

1 have faded, and because evidence has been lost or destroyed, the prosecution was unable to proceed to trial.

Lisker filed this lawsuit pursuant to 42 U.S.C. section 1983 on December 22, 2009. Lisker's complaint includes four claims against Detectives Monsue and Langren and one against the City of Los Angeles. Against Monsue and Langren, he claims he was prosecuted based on false evidence, he was maliciously prosecuted, his privilege against self-incrimination was violated, and exculpatory evidence was withheld at his criminal trial in violation of his right to a fair trial. His claim against the City is that his constitutional injury was caused by a City policy or practice.

## 2. DEFENDANTS REQUEST FOR MENTAL EXAMINATION[1]

Defendants and Plaintiff have met and conferred regarding this issue, but were unable to resolve the matter. Plaintiff offered to allow a Defense Expert the ability to conduct a mental examination, but limited solely to rebut what Plaintiff's Expert had done and would not agree to any testing. The Defense was not willing to agree to Plaintiff's offer. It is the Defendants' belief that not only are they entitled to a full mental examination, but also that it is necessary due to the severity of the emotional distress claimed by Plaintiff and documented by his Expert. It should be noted that Plaintiff's Expert did not conduct a full mental examination, but rather conducted a limited evaluation that was not based on any testing.

The Defense Psychiatric Expert, Dr. James Rosenberg, M.D., has reviewed and considered multiple sources of information in this matter, including the report of Plaintiff's Expert in psychiatry, Terry A. Kupers, MD. According to Dr. Kupers' report (Exhibit 2), he conducted a face-to-face psychiatric examination of Plaintiff for seven hours on April 1, 2011, as well as additional 90 minutes via phone interviews. As a result of his overall evaluation, Dr. Kupers opines that Plaintiff has sustained profound emotional injuries as a

---

[1] A Copy of a Declaration of Defense Psychiatric Expert, Dr. James Rosenberg, M.D. is attached herein, which also includes attachments 1 & 2 described herein as (1) Dr. Rosenberg's CV & (2) "Description of Psychiatric Examination."

result of the allegations in this case, resulting in the psychiatric disorders of Posttraumatic Stress Disorder (PTSD) and Depressive Disorder Not Otherwise Specified (NOS).

Based upon Dr. Rosenberg's review, it is his opinion that, with reasonable medical certainty and from a psychiatric standpoint, the Defense should be provided with an opportunity to conduct a face-to-face psychiatric examination of Plaintiff which would include, a detailed interview, mental status examination, screening cognitive assessment, and standardized psychological testing. Factors that support the Defendants' position include the following:

Dr. Kupers has substantially based his expert opinions in this matter on information that he personally obtained from his face-to-face psychiatric examination of Plaintiff. It is the Defense belief that they should be provided with an adequate opportunity to conduct their own assessment of Plaintiff in order to evaluate Plaintiff's emotional injury claims, as well as Dr. Kupers' expert opinions.

Plaintiff's emotional injury claims in this matter, as described in Dr. Kupers' Report, include profound personal losses over many years and the psychiatric diagnoses of PTSD and Depressive Disorder NOS that continue to the present time. These factors clearly place Mr. Lisker's mental state at issue, far beyond "garden variety" emotional distress, and into the category of a severe emotional injury claim that justifies an expert mental examination.

Dr. Rosenberg has conducted similar evaluations in hundreds of cases venued in State and Federal Courts. Dr. Rosenberg has attached his standard description of what the psychiatric examination would entail as "Attachment 2." Ultimately, the Defendants' examiner should be provided wide latitude to conduct a thorough inquiry, including but not limited to:

> evaluation and history of the mental illnesses alleged, past psychiatric history, [ ] history of substance abuse, inquiry into the [Plaintiff's] psychosocial and development history, relationship and marital history . . . social and occupational history, family history, a complete review of the symptoms and depressive signs, current living situation and exploration of other causes for the condition. The examiner should be allowed to conduct recognized and appropriate psychological testing, at the discretion of the examiner. The specific tests to be administered will be revealed at the time of the examination.

*Mandujano v. Geithner,* 2011 U.S. Dist. LEXIS 27986, *8 (N.D. Cal. Mar. 7, 2011) The *Mandujano v. Geithner* Court found that the proposed examination was reasonably related to the mental distress damages claimed. *Id.* at *9.

## I. MEMORANDUM OF POINTS AND AUTHORITIES

Defendants hereby request that this Court grant an order allowing the Defendants the opportunity to conduct an Independent Mental Examination of Plaintiff Bruce Lisker pursuant to Rule 35(a) of the Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure, Rule 35(a)(1), when a party requests an order for a mental examination:

> The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a . . . mental examination . . .

Moreover, Federal Rule 35(a)(2)(A) & (B) state that the order:

> (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

To justify a mental examination of a party to a lawsuit, the moving party must prove (1) the adverse party's mental condition is "in controversy" and (2) there is "good cause" for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964); see also *Turner v. Imperial Stores*, 161 F.R.D. 89, 91 (S.D. Cal. 1995). In this matter, it is without question that an Independent Mental Evaluation of Bruce Lisker is appropriate based upon the fact his mental condition is "in controversy" and good cause exists since a large portion of Plaintiff's claimed damages are based on severe emotional distress, which were identified by Plaintiff not only in his deposition, but were also issues raised by the Plaintiff through his Psychiatric Expert Report and Psychiatric Examination. Specifically, Plaintiff's Psychiatric Expert opines that Plaintiff has sustained severe emotional injuries which have resulted in the psychiatric disorders of Post Traumatic Stress Disorder and Depressive Disorder. This was opined after Plaintiff's Expert

5

conducted a face-to-face psychiatric examination of Plaintiff for seven (7) hours, with an additional ninety (90) minutes via telephonic conference.

**In Controversy**: The moving party must first prove the adverse party's mental state is "in controversy." A Plaintiff's mental condition is "in controversy" when there is pending litigation and the condition is the subject of the litigation. *Mandujano v. Geithner,* 2011 U.S. Dist. LEXIS 27986 (N.D. Cal. Mar. 7, 2011). It is uncontroverted that Plaintiff designated an Expert that claims Plaintiff is suffering from psychiatric disorders of Post Traumatic Stress Disorder and Depressive Disorder. (Exhibit 3.) Often, allegations of severe emotional injury combined with substantial emotional distress damages satisfy the "in controversy" element, and sometimes the "good cause" requirement of F.R.C.P. 35(a) as well. *Wilson v. Dalton*, 24 Fed. Appx. 777, 779 (9th Cir. Cal. 2001). Nevertheless, most courts require additional factors to demonstrate the adverse party's mental state is "in controversy." *Turner v. Imperial Stores*, supra, 61 F.R.D. at 95. In addition to Plaintiff's claim of emotional distress, Courts will order examinations when a case involves one or more of the following factors:

> (a) a claim for intentional or negligent infliction of emotional distress; (b) an allegation of a specific mental or psychiatric injury or disorder; (c) a claim of unusually severe emotional distress; (d) a plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (e) plaintiff's concession that his or her mental condition is in controversy.

*Mandujano v. Geithner,* 2011 U.S. Dist. LEXIS 27986, 4-5 (N.D. Cal. Mar. 7, 2011); *citing to, Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal. 1995); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 608 (C.D. Cal. 1995).

While the Court in *Wilson* held that the plaintiff's deposition and amount of damages requested was sufficient to find the plaintiff's mental condition was "in controversy" and that there was "good cause" for a mental examination. *Wilson, supra,* 24 Fed. Appx. at 779. The plaintiff in *Wilson,* who sued the U.S. Navy under the Rehabilitation Act, appealed the mental examination order after summary judgment was entered for the defense. *Id.* at 777-8. The 9th Circuit Court reasoned that in addition to

6

the amount of damages requested, Plaintiff's "emotional descriptions of long-lasting and significant emotional distress" equaled allegations of severe emotional injury and was sufficient to uphold the Magistrate Judge's mental examination order. *Id.* at 779. Defendants do not rely solely upon *Wilson v. Dalton,* but rather believe that they satisfy the test set forth in *Turner v. Imperial Stores*.

The Court in *Turner v. Imperial Stores* held that emotional damages alone are not sufficient to justify a court-ordered mental examination of an adverse party. *Turner v. Imperial Stores*, supra, 61 F.R.D. at 97. The defendant in *Turner v. Imperial Stores* requested a mental examination of the plaintiff based alleged damages of "humiliation, mental anguish, and emotional distress." *Id.* at 97. The court reasoned that because the plaintiff did not bring a cause of action for either intentional or negligent infliction of emotional distress, did not allege suffering from any specific psychiatric injury or disorder, did not intend to offer expert testimony and did not concede that her mental condition was "in controversy," the defense's examination request was not supported. *Id.* at 98.

In applying the test set forth in *Turner v. Imperial Stores*, Defendants acknowledge that Plaintiff has not raised a claim of intentional or negligent infliction of emotional distress. Nevertheless, he will be seeking significant damages that will be based on Plaintiff's claim of emotional distress. Furthermore, the amount in controversy, such as in *Wilson,* will be substantial given the length of time and severity of damages claimed by Plaintiff.

While Plaintiff may not have raised a claim of emotional distress in his complaint, Plaintiff meets all of the remaining *Turner v. Imperial Stores* factors. For starters, Plaintiff has made allegations of "specific mental or psychiatric injury or disorder." Specifically, Plaintiff claims to suffer from emotional problems that include depression, reentry, trust and personal safety issues. (Deposition of Bruce Lisker at page 23:16-25, attached herein as "Exhibit 1.") Since being released from prison on August 13th, 2009, Plaintiff described his present emotional state as a "fucking ocean of sadness" (Exhibit 1, page 118:1-8) that have been long-lasting, both in overall duration and length of each

episode. For example, Plaintiff has been treated for depression since entering Juvenile Hall back in March of 1983, (Exhibit 1, pages 39: 2-15 thru 40: 1-13) and stated that his "typical pattern of depression" would last four or five days at a time. (Exhibit 1, page 113: 4-5.) Additionally, Plaintiff is currently prescribed Xanax for anxiety and, although not presently, "had a recommendation for marijuana for [his] lower back pain and sleep issues." (Exhibit 1, page33: 5-16.)

While Plaintiff has been found to suffer from Post Traumatic Stress Disorder (Expert Report of Dr. Kupers at page 57 is attached herein as "Exhibit 2"), Plaintiff has also made allegations of suffering from "unusually severe emotional distress," wherein his Expert states that "when one or another symptom picture becomes severe enough it warrants a second diagnosis. Depression is that severe in Mr. Lisker's case. And his depression, like PTSD, causes suffering and disability." (Exhibit 2, page 58-59.) Ultimately, Plaintiff's Expert Report totals 61 pages and throughout the Report, Dr. Kupers apparently concludes that Plaintiff "has experienced a huge amount of pain and suffering, has developed psychiatric damage and disability." (Exhibit 1, page 61.) This analysis described above also satisfies the fact that Plaintiff is offering "expert testimony to support a claim of emotional distress." As Plaintiff designated Dr. Kupers as his expert in this matter, Plaintiff can be said to have conceded that "his [ ] mental condition is in controversy within the meaning of Rule 35."

Ultimately, unlike the moving party in *Turner v. Imperial Stores*, the present request supplies specific evidence to support allegations that Plaintiff's mental state is "in controversy." Plaintiff's mental disorders were documented by doctors at the juvenile facility (Exhibit 2, pages 48 - 53) and recently by Dr. Kupers after a mental examination. (Exhibit 2.) Thus, when considering all significant facts and circumstances pertaining to Plaintiff's damages, his mental state, which includes an Expert Report, the mental state of Plaintiff satisfies the "in controversy" element of Rule 35(a).

**Good Cause:** Next, the moving party must prove there is "good cause" for the requested mental evaluation. Generally, "good cause" requires proof of specific facts that justifies the requested discovery. *Schlagenhauf v. Holder, supra*, 379 U.S. at 120.

Factors that are relevant when considering whether "good cause" exists include, but are not limited to:

> the possibility of obtaining desired information by other means; whether plaintiff plans to prove his claim through testimony of expert witnesses; whether the desired materials are relevant; and whether plaintiff claims ongoing emotional distress.

*Mandujano v. Geithner, supra,* 2011 U.S. Dist. LEXIS 27986 at *7.

"Good Cause" exists in this matter justifying a mental examination of Plaintiff. Defendants do not have access to "desired information from other means." More importantly, Exhibit 2 demonstrates that Plaintiff "plans to prove his claim through testimony" of Dr. Kupers. Obviously, seeking the examination is entirely relevant and Plaintiff is obviously claiming emotional distress, specifically that he is suffering from Post Traumatic Stress Disorder and Depression as discussed above.

It should also be noted that in *Schlagenhauf v. Holder,* the Court held that four separate examinations of the defendant would not be allowed without specific allegations to show good cause. *Id.* at 165. The plaintiff in *Schlagenhauf v. Holder* requested that the mental and physical examinations performed on the defendant to prove the defendant's eyes were impaired. *Id.* at 164. The Court reasoned, however, no facts in the affidavits or pleadings suggested the defendant suffered from anything, aside from the statement that the defendant's "eyes and vision" were impaired, to justify "the broad internal medicine examination." *Id.* at 165.

Unlike the moving party in *Schlagenhauf v. Holder*, the underlying request is not for a broad general examination of the adverse party. There is only one specific mental examination requested and the mental examination will provide an opportunity to fill gaps in the plaintiff's psychiatric history prior, during and after his incarceration periods. In addition, Plaintiff has already participated in an expert evaluation by Dr. Kupers. This evaluation, among other things, created new areas of interest regarding his prior prescribed medication such Prozac (Exhibit 2, page 49), mental rehabilitation at the California Youth Authority (Exhibit 2, page 15) and how his overall experience during

prison at Chino (Exhibit 2, page 19) and San Quentin (Exhibit 2, pages 29-31) altered his mental state.

Finally, and unlike the damages in *Schlagenhauf v. Holder*, a portion of the damages likely requested will rely on damages to the Plaintiff's mental state. Without the opportunity for further questioning by an additional medical expert the Defense will be at a disadvantage to create a thorough defense to potential issues raised at trial. Thus, there is "good cause" for an additional mental examination to be performed on Plaintiff.

## II.  CONCLUSION & RECOMMENDATION

In conclusion, this Court should find the request under Rule 35(a) for a mental examination of Mr. Lisker is appropriate and justified. This Court will likely find that Mr. Lisker's mental state is "in controversy" because the requested damages will rely on emotional distress, there is documented specific psychiatric disorders, coupled with Plaintiff's Expert Report and expected testimony. Furthermore, there is "good cause" for a mental examination because it will provide the defense with opportunities to fill gaps and prepare a thorough defense at trial.

Dated:  June 16, 2011

**CARMEN A. TRUTANICH**, City Attorney

By: _____/S/_____
**CHRISTIAN R. BOJORQUEZ**, Deputy City Atty

*Attorneys for Defendant s* **CITY OF LOS ANGELES**, a municipal corporation, also named as the LOS ANGELES POLICE DEPARTMENT, a non-suable entity, ANDREW MONSUE and HOWARD LANDGREN