1               UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3        HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                    – – –

5

6

7                          )

BRUCE LISKER,               )

8                        )

               PLAINTIFF,   )

9                        )

        vs.              ) No. CV09-9374-AHM(AJWX)

10                      )

CITY OF LOS ANGELES, ET AL.,  )

11                    )

             DEFENDANTS.  )

12 _____)

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             LOS ANGELES, CALIFORNIA

17          MONDAY, SEPTEMBER 12, 2011

18                2:00 P.M.

19

20

21

22     _____

23            CINDY L. NIRENBERG, CSR 5059

           U.S. Official Court Reporter

24         312 North Spring Street, #438

          Los Angeles, California 90012

25          *www.cindynirenberg.com*

```
1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:
                        NASATIR HIRSCH PODBERESKY KHERO & GENEGO
4                       BY: WILLIAM J. GENEGO, JR.,
                            ATTORNEY AT LAW
5                           VICKI I. PODBERESKY,
                            ATTORNEY AT LAW
6                       2115 MAIN STREET
                        SANTA MONICA, CA 90405
7                       310-399-3259

8
                        LITT ESTUAR & KITSON
9                       BY: BARRETT S. LITT, ATTORNEY AT LAW
                        1055 WILSHIRE BOULEVARD
10                      SUITE 1880
                        LOS ANGELES, CA 90017
11                      213-386-3114

12

13   FOR THE DEFENDANTS:
14                      OFFICE OF THE LOS ANGELES CITY ATTORNEY
                        CARMEN A. TRUTANICH, CITY ATTORNEY
15                      BY: CHRISTIAN R. BOJORQUEZ,
                            DEPUTY CITY ATTORNEY
16                      200 NORTH MAIN STREET
                        6TH FLOOR
17                      LOS ANGELES, CA 90012
                        213-978-7023
18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 12, 2011

 2                         2:00 P.M.

 3                         - - - - -

 4        THE CLERK:  Calling Item Number 6, CV09-9374, Bruce

 5   Lisker versus City of Los Angeles, et al.

 6        Counsel, state your appearances, please.

 7        MS. PODBERESKY:  Vicki Podberesky on behalf of Bruce

 8   Lisker.

 9        MR. LITT:  Barrett Litt on behalf of Bruce Lisker.

10        MR. GENEGO:  Bill Genego on behalf of Bruce Lisker.

11        MR. BOJORQUEZ:  And Christian Bojorquez on behalf of

12   the defendants in this matter.

13        THE COURT:  Okay.  Good afternoon to all of you.

14        Let me start with something a little unusual, and

15   it's to say that I understand that one of you, but I'm not sure

16   who -- or at least one of the lawyers in this case recently was

17   ill, and I just want to express my concern that you're all

18   doing fine and that whoever was ill has recovered.  I don't

19   know who was ill.

20        MR. LITT:  It was me, Your Honor.  I have a heart

21   condition and I had a blood clot, so I had a couple of stents

22   put in.

23        THE COURT:  Oh, okay.  Well, that's --

24        MR. LITT:  But the thing about stents is as long as

25   they catch it in time, you're fine.
```

```
 1              THE COURT:  Well, I hope you're fine, and I just
 2    wouldn't have wanted to ignore that development.
 3              Okay.  We're here for the scheduling conference --
 4    not so much as scheduling conference as a status conference.
 5              I had signed this order that was lodged, and it was
 6    filed on August 17th, Document 168, which appears to govern the
 7    remaining developments in this case, but I had some questions
 8    about it.
 9              And do you have it before you, counsel?
10              MR. GENEGO:  I do not.
11              MR. BOJORQUEZ:  Unfortunately, I do not.
12              MR. LITT:  I don't either.
13              THE COURT:  You better make copies.
14              This status conference has come about in part because
15    of the way I resolved or ruled upon some of the previously
16    filed motions, in part I think because one of you or all of you
17    thought that we need to have some kind of status conference to
18    determine where we go from here.
19              Am I right about the latter development?  Was that
20    the consensus of the lawyers here that you wanted to talk to me
21    about something?
22              MR. LITT:  Well, we had filed a request for a status
23    conference, Your Honor, because we had raised some issues, one
24    relating to the length of the trial, and we tried to lay out
25    some of what that -- what the issues there were; and also, as
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   had occurred in Goldstein and in discussions with the Court in

2   a status conference -- but as far as I know hadn't occurred

3   here -- the question of how the evidence of the previous trial

4   was going to be handled seemed to require some discussion

5   because there are several different possibilities, but we

6   haven't discussed it with the Court.

7        THE COURT:  Have you discussed it with each other,

8   these different possibilities to which you are alluding?

9        MR. LITT:  We've had a brief discussion, but I don't

10  know that it's been resolved.  I mean, I think that based on

11  our discussion in Goldstein, where we had a lengthy discussion

12  about it -- I don't know if the Court recalls --

13       THE COURT:  I kind of do, but not the details.

14       MR. LITT:  Yeah, but you -- we had discussed the fact

15  that you had suggested that we use the habeas decision there as

16  sort of a starting point to develop a set of stipulated facts

17  which we had agreed the plaintiffs would take a first stab at.

18  Then we would give it to the defendants.  We would try to get

19  as much agreement from each side's perspective as to what

20  information from that first trial was important.  And if we had

21  disagreements on certain things, those would be isolated --

22       THE COURT:  And then ruled upon.

23       MR. LITT:  -- and then ruled upon.

24       And then if there were certain, particular parts of

25  the trial record that either side wanted to put in, that would

1    also be discussed, but the idea wasn't to put in the whole

2    trial record.

3            So that's what we had discussed in Goldstein.  I

4    think we think that's a good idea, but we wanted to make sure

5    that that's what the Court thought made sense.

6            THE COURT:  Well, why don't you respond to that.  I

7    have a few questions.

8            MR. BOJORQUEZ:  Sure.  One thing I know is that most

9    of the requests from the plaintiffs regarding this issue came

10   up prior to the trial continuing, so, I mean, we were getting

11   prepared and trying to have these meetings.  So in all

12   fairness, at least to me, I really wasn't prepared to discuss

13   this today.

14           However, with that being said, I think, you know,

15   from our perspective, the habeas proceeding, if it's certain

16   things of certain people's testimony that may have been, you

17   know, on behalf of the defendants and so they want to use those

18   as admissions and those type things, obviously, I think other

19   than relevancy issues, that's something that they would have a

20   right to do.

21           But as far as relying again on the habeas proceeding

22   itself and its contents and any particular --

23           THE COURT:  You mean the ruling itself?

24           MR. BOJORQUEZ:  The ruling itself and any of the

25   findings.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  That's not what Mr. Litt is referring to.

 2              MR. LITT:  No.

 3              MR. BOJORQUEZ:  Okay.  Then I guess I'm not

 4    exactly --

 5              MR. LITT:  I'm referring to that -- basically, yeah,

 6    we have to in some form present to the jury what the evidence

 7    was at the first trial, so what I was suggesting was that the

 8    habeas decision gives a very detailed description of the first

 9    trial, and so not being bound by that, but using that as a

10    starting point to develop a proposed set of facts as to the

11    events of the first trial, that's what I was referring to.

12              MR. BOJORQUEZ:  Yeah, I see.  I think we had a little

13    bit of discussion; I apologize to everyone.  But, you know, our

14    perspective would be to use the original criminal transcript,

15    to go through and find out what the ultimate issues would be,

16    because I think in certain ways, when I read through the habeas

17    findings and the facts that they suggest exist and then I

18    actually go to the actual testimony that was presented at the

19    habeas proceeding, there is a lot of kind of jumps-to-fact as

20    opposed to what was actually said.  And if we go back to the

21    criminal trial, obviously, it's word-of-mouth.  It's exactly

22    what was stated in the record.

23              And it's not -- we've all, I think, been very

24    involved in the underlying criminal proceeding and the

25    transcripts that we all have, so I think that would be one --
```

```
 1              THE COURT:  Okay.  Let me just make this observation

 2    because I'm really not sure what I would conclude is the most

 3    appropriate and fair way to proceed.

 4              Working backwards, I construe what Mr. Litt was just

 5    orally referring to -- and you're at a disadvantage because

 6    it's not in writing and maybe you weren't expecting it,

 7    although I think you should have -- he is basically saying look

 8    at Judge Zarefsky's account of the background story to what has

 9    now become the civil rights action.

10              He's not saying you can't look beneath that or to

11    anything else.  I think he's saying that account is a pretty

12    good distillation of the key factors that led up to the

13    recommendation that Judge Zarefsky made.

14              So starting with that, try to pull together what --

15    and now I'm turning to a related but different observation --

16    what has to be established for the benefit of the jury in this

17    case, which is, the background story.  For lack of a better

18    word, I'll say that.  Let me stop there.

19              Am I right in construing what you're saying?

20              MR. LITT:  Yes.

21              THE COURT:  Okay.  So if you think -- and you may be

22    right, if this is what you think -- that the decision of Judge

23    Zarefsky as adopted by the district judge or any of the other

24    written decisions that led up to today are incomplete,

25    inaccurate, unfounded, you don't have to stop with whatever the
```

1    characterization of summary was and you could propose something

2    to supplement it or clarify it or negate it.

3            But the bottom line is that, although there may be

4    something very close to the underlying criminal trial that has

5    to be somehow pursued in the second phase, if we get to the

6    second phase, this is not a re-trial, as such, and the due

7    process claims which are the subject and will be the subject of

8    the first phase that I rule on, have to be pursued in terms of

9    challenges to what happened before or what didn't happen --

10   that's your theory -- without reenacting what did happen

11   before.

12           Are you following what I'm saying?

13           MR. BOJORQUEZ:  Yeah.  I mean, I understand the

14   standard of what the due process claims are.

15           THE COURT:  Not just what the standard is, but the

16   plaintiffs -- maybe you should speak for the plaintiffs, Mr.

17   Litt or Mr. Genego or Ms. Podberesky.  I don't know, but it

18   seems to me you're going to have to, before we get to the final

19   trial memo, begin this process of figuring out how we try this

20   case-within-a-case without retrying the case how you propose to

21   do it.

22           You want guidance from me, and I can give you better

23   guidance after I see what you propose to do.

24           I want you to imagine you're standing up delivering

25   your opening statement knowing what has been stipulated to or

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   been marked as a court exhibit, which becomes an exhibit in the

2   case before me and, therefore, part of the evidence and not

3   subject to refutation.  That's typically the way I proceed.

4          And I am not entirely -- I know what your theories

5   are in this case, but I'm not entirely sure how you intend to

6   present them, except that I am sure that you want some

7   guidance -- and I'm off the top of my head trying to provide

8   some -- as to how you can avoid simply saying, *My client was*

9   *accused of a crime and here's what happened,* and repeating it

10  all over again.

11         There are certain things which are indisputable.  He

12  was accused of a crime.  He was tried.  He was convicted.  He

13  was sentenced.  There were nine witnesses -- I'm making this

14  up.  There was information -- and here there may be even need

15  for live proof to put flesh on the skeleton that the

16  prosecution had or the police department had or these two

17  officers had that was inconsistent with what they wound up

18  saying at the trial.

19         If that's the theory, then what they said at trial

20  does become evidence in this trial, not the whole millage of

21  facts of what they said, so that you can contrast it with what

22  you think you can prove they knew.

23         That's the way it's going to shake out.  You follow

24  me so far?

25         MR. BOJORQUEZ:  Yeah, I understand that.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            THE COURT:  How did you intend to defend the case --

 2            MR. BOJORQUEZ:  Well, I mean, for the City's --

 3            THE COURT:  -- on the liability --

 4            MR. BOJORQUEZ:  Sure.

 5            THE COURT:  -- on the due process claims and on the

 6   Monell claims?

 7            MR. BOJORQUEZ:  On the liability phase, obviously our

 8   position is first for them to prove that whatever they're

 9   alleging was false or withheld was, in fact, false and

10   withheld.

11            If they met that standard and were able to prove

12   that, then, of course, the issue then becomes whether or not it

13   was material.

14            And the issue with materiality, though, does come

15   with the fact that the underlying criminal trial -- what

16   existed, not outside of that, but all of that information would

17   have to come in and be presented as far as the totality of the

18   evidence so that you can make that determination as to whether

19   or not the evidence was material or not.

20            THE COURT:  So all of it would have to come in in

21   what form?

22            MR. BOJORQUEZ:  Well, I mean, I guess that's --

23            THE COURT:  And how is what I'm --

24            MR. BOJORQUEZ:  Well, I guess the main issue would be

25   whatever potential, you know, absolute stipulated facts that
```

1   would be out there that we could agree upon, and then the other

2   ones would have to be coming out as if, in my opinion, it was

3   being presented at the -- how it was presented at the

4   underlying criminal trial.

5          THE COURT:  Well, I think we are sort of on the same

6   page, more or less, all of us.

7          And it's got to start somewhere, Mr. Litt and your

8   colleagues, and I think you have to propose what would fall

9   into something akin to a stipulation or a court exhibit that

10  tells the core parts of the background story that are

11  indisputable.

12         And that doesn't necessarily require that if these

13  officers, who are the defendants here, spent a day-and-a-half

14  on the stand in the underlying case a long time ago, that every

15  question and every answer that they were asked and that they

16  provided be scanned into the stipulation, but that a fair

17  summary, which responsible lawyers can agree to -- a fair

18  summary, a balanced summary, an accurate summary -- be set in

19  there.

20         Then, as I anticipate off the top of my head, what

21  you would then be adding to it and that's new at this trial is

22  what -- is how that failed to comply with their duties and your

23  client's due process rights.

24         That's sort of the broad outline of what's the first

25  phase.

1          This scheduling -- this modified schedule that you

2     propose that I accepted, I have to ask some questions about it

3     because I am trying to figure out how realistic it is to expect

4     you to accomplish all this.

5          Are both sides agreed that non-expert discovery has

6     come and gone and that the cutoff has been arrived at?

7          MR. GENEGO:  Yes.

8          MR. LITT:  Yeah.  I mean, well --

9          MR. GENEGO:  That was our understanding.

10         MR. LITT:  Yeah, I mean, it had come and gone under

11    the previous scheduling order and the stipulation didn't change

12    that, so --

13         THE COURT:  Well, the NA, the nonapplicable, takes us

14    through dates that were previously set for July 25th of this

15    year.  In other words, that was the last day for hearing the

16    motions.

17         So except for motions in limine, both sides

18    acknowledge that there are no other motions that will be

19    necessary or at least that will be filed leading up to the

20    trial; is that correct?

21         MR. LITT:  Yes, Your Honor.

22         I think that there's -- that we have -- this is also

23    a discussion we had in Goldstein, and we didn't file a motion

24    here, in part, based on that.

25         There is a materiality issue, which I think at the

```
 1    end of our case, we will argue as a matter of law is material,

 2    but we concluded after sort of what happened in Goldstein that

 3    the best way to do that was at the end of our case rather than

 4    try to do it through a motion for partial summary judgment.  So

 5    I --

 6              THE COURT:  So the motion for partial summary

 7    judgment -- I guess I asked the question like this in

 8    Goldstein -- if you had been required to file one or were

 9    required to have filed one in this case, it would have said,

10    Assuming that the evidence shows X, Y and Z, then the Court

11    must instruct the jury that these omissions or these falsehoods

12    were material?

13              MR. LITT:  Right, and that's what you basically said

14    in Goldstein; it's not appropriate for summary judgment, we

15    will deal with it at the time.

16              THE COURT:  It's not only -- in principle, it may not

17    be appropriate for summary judgment, but it wouldn't be

18    feasible for me to evaluate until I hear the evidence, right?

19              MR. LITT:  I think that's --

20              THE COURT:  So are you asking for confirmation that

21    on this issue of whether you have a right to a finding of

22    materiality, once you've rested your case, you can procedurally

23    seek it after you rest?  Is that what you are asking me to

24    confirm now?

25              MR. LITT:  Well, I don't know that you have to
```

1    confirm it.  We will make that request and the Court can rule

2    on it at the time.

3            THE COURT:  Well, it makes sense to me that that's

4    how we will proceed.

5            Other than that exception, all motions are history

6    except for the new motions -- and now I know there will have to

7    be some, and maybe quite a few -- the new motions in limine.

8            MR. LITT:  Yes, and there will be a lot of those.

9    And we are going to start filing them so that the Court doesn't

10   get inundated with them all at once.

11           THE COURT:  How many do you think there will be?

12           MR. LITT:  On our end, 15 to 20.

13           THE COURT:  Those questions that you asked in the

14   reply memo?

15           MR. LITT:  You did answer most of them.  I know that

16   you said that there were a lot of them, but you actually

17   answered most of them.

18           THE COURT:  I thought about them, but I didn't intend

19   to provide a definitive analysis when they were not really

20   properly briefed.

21           And there's going to be no expert discovery -- has

22   expert discovery been conducted in this case?

23           MR. LITT:  You mean depositions or --

24           THE COURT:  Well, I had an expert discovery cutoff.

25           MR. LITT:  There has been an exchange of reports.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    There were no, on either side, expert depositions taken.

2            THE COURT:  Do you intend to take such depositions?

3            MR. LITT:  Well, we're past the time.

4            THE COURT:  You are.  That's what I see here and

5    that's what I am asking about.

6            MR. LITT:  So we recognize that, and we will --

7            THE COURT:  Well, let me tell you this, and this is

8    part of my Case Management Order.

9            Neither side would have a right to compel the other

10   side's expert to appear for a deposition, but if both sides

11   wanted to agree to it in exchange for reciprocity and

12   mutuality, I wouldn't object to that.

13           You can always do something consensually.  You just

14   can't come into court and demand an order that would entitle

15   you to it.

16           So you decide whether you want to conduct depositions

17   of the other side's experts or allow yours to be -- how many

18   experts were there and what are they experts about?

19           MR. LITT:  Well, that was in -- we actually gave the

20   Court -- because this related to the length of the trial.

21   There are a lot of them.  I mean, I can read them or maybe it

22   might be easier (indicating) --

23           THE COURT:  Let me just take a look.  What document

24   are you holding on to?

25           MR. LITT:  This is Request for Status Conference that

1   we filed.

2          THE COURT:  Oh, I didn't look at this today.  When

3   was this filed?

4          MR. LITT:  That was filed several weeks ago.  And we

5   actually -- we thought that the status conference, in part, was

6   based on that request, but I guess it was just coincidental.

7          THE COURT:  Well, I have to explain and apologize

8   that I just have been trying to play a confusing game of

9   catch-up for a few weeks now for various reasons, and I bounce

10  from calendar matter to calendar matter.

11         I'm not going to continue this meeting until I read

12  this, so you just wait in here and I will be back soon.

13     *(Recess taken 2:19 to 2:34 p.m.)*

14         THE COURT:  Okay.  We are back on the record.

15         I returned to Mr. Litt a Xerox copy of what he handed

16  me.

17         That document was stricken.

18         MR. LITT:  It was?

19         THE COURT:  Yes.

20         MR. LITT:  Oh, I didn't know that.

21         THE COURT:  The docket reflects that it was stricken

22  on the day I issued the ruling on the previously pending

23  motions.

24         I don't remember how that happened, but that may be

25  one reason why I was unaware of it coming into this meeting.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      Now I've looked at it, and I think that there are a

2    couple of fundamental forms of guidance you wanted that called

3    for this -- that led up to this status conference.  One is how

4    long will the trial be, another is the status of the so-called

5    confidential exhibits and whether you get copies.

6      There's no way -- I understand your point, Mr. Litt,

7    that you have to prove your case in large measure through

8    experts, but there is no way you're going to do it with just

9    one expert, but there is no way you are going to choose to do

10   it, much less be permitted to do it, probably, with 12 or 13 or

11   how ever many there are here, right?  It's somewhere between

12   those two numbers?

13          MR. LITT:  Well, they're broken -- I mean, there is

14   some duplication, and, actually, on most of these, the

15   defendants have experts as well as us.

16          THE COURT:  You have as many experts as --

17          MR. LITT:  No.  These are -- the "P" and the "D" are

18   for the plaintiffs and the defendants.

19          THE COURT:  Oh, I didn't notice the "D."  Okay.

20          MR. LITT:  I mean, we listed both, and we broke them

21   down on what the issue was.

22          THE COURT:  I see.

23          MR. LITT:  So in requesting the extension, we were

24   trying to take account of both sides' experts.  It wasn't that

25   we have experts and they don't have any.

```
 1              THE COURT:  Okay.  So you broke up the schedule
 2    according to phases, too.  You divided --
 3              MR. LITT:  Right.
 4              THE COURT:  I see what you've done here.
 5              And there are some experts, like Rosenberg, who are
 6    going to testify about a number of things.  But that's just one
 7    expert, right?
 8              MR. LITT:  Right.
 9              THE COURT:  Mr. Bojorquez?
10              MR. BOJORQUEZ:  That's correct, Your Honor, and they
11    would all be, of course, at the same time.
12              THE COURT:  Well, have the parties considered, and
13    the second part of the question is have they discussed with
14    each other -- assuming such unavoidably necessary reliance on
15    expert testimony, have they considered narrowing the number --
16    reducing the number and narrowing the range of expert testimony
17    by entering into stipulations along the lines of, *If called as
18    a witness, Dr. Rosenberg* -- whatever that person's name; I
19    don't know if it's a man or a woman -- *would testify that he is
20    a psychiatrist.  He was trained here.  He did that.  He looked
21    at these documents* -- or she -- *and concluded that plaintiff
22    had a propensity for violence*?
23              Having all of the testimony of at least some of these
24    experts presented as agreed-to summaries of their direct
25    testimony with the live examination being restricted to cross
```

1    and having that reciprocal approach toward at least some of

2    these experts, have you thought about that?

3         This gets to the question of 20 trial days, which is

4    not acceptable.

5         MR. LITT:  I can't say that we have.

6         THE COURT:  Well, you should.  You should talk to

7    each other about it.  And it's not a requirement, but I'm

8    looking for ways to work with you, counsel.

9         You are telling me that in this unusual case, not

10   only do you have the risk of a trial within a trial, but you

11   have, on issues of liability, as well as damages for that

12   matter, a super abundance of reliability on experts.  That

13   makes it really tough for the jurors.

14        If you were to go to trial next week, Mr. Litt, on

15   the liability phase, who would be your key witnesses?

16        MR. LITT:  The key witnesses?  I don't know that

17   there is one.

18        THE COURT:  Not -- key witnesses, plural, the two or

19   three most important ones.

20        MR. LITT:  Aside from the defendant -- probably,

21   frankly, I think the defendants -- or at least Detective Monsue

22   is probably the most important witness in some ways.

23        MR. GENEGO:  As far as the expert, it would be the --

24        THE COURT:  No, any witness.  I figured the defendant

25   would be -- the detective would be the most important.  Who

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    else?

2            MR. GENEGO:  The reconstruction experts and the

3    internal affairs police practices.  I think those are the two

4    that I would say would stand out.

5            There's -- some of the other forensics experts, I

6    think they are suitable for stipulations; for example, that

7    testimony about the footprints, but -- and I think that that

8    would make a lot of sense to stipulate as to those folks.  Some

9    the other experts, it would be harder to do.

10           THE COURT:  What do you mean by "reconstruction"?

11   You mean Terrio and Varat?

12           MR. GENEGO:  Yes, and also, to a certain degree, the

13   weather and visibility, the meteorologist.

14           Those two categories, plus the internal affairs

15   police practices expert because that has a lot to do with our

16   effort to prove that the investigation produced false evidence

17   that was then presented at the trial at a later time about the

18   reconstruction, about the weather, and the way that that was

19   handled later on in the internal affairs investigation.

20           THE COURT:  Could you please explain to me where the

21   internal affairs fits in on the liability phase and Monell?

22           MR. GENEGO:  Sure.

23           THE COURT:  Just talk to me.  What does that mean?

24           MR. GENEGO:  What happened was that Mr. Lisker filed

25   an internal affairs complaint in 2003.  At that point, he had

1    been in custody for 20 years, and his complaint was about a

2    parole letter that Detective Monsue had written in 1998.

3            And the parole letter said, *Several years after the*

4    *crime, the new owners of the house told me that they found $150*

5    *in the attic.*  Remember this is being written in 1998.  The

6    crime was 1983.  The trial was 1985.

7            So the letter that's being written in 1998 says, *The*

8    *new owners contacted me, told me they had found $150 in the*

9    *attic, and that confirms our original suspicion that this was a*

10   *robbery and, therefore, he should not be given a parole.*

11           Mr. Lisker reads that in his prison file in 2001.  He

12   files an internal affairs complaint in 2003 in June, and it's

13   assigned to Sergeant Gavin to investigate.

14           He then begins to conduct an investigation, and that

15   was really -- from our perspective, was the beginning of the

16   unraveling of the case because Mr. Lisker identified about five

17   areas in his letter, in addition to the parole letter, that he

18   said were false.

19           And the first thing that Sergeant Gavin did was he

20   went and interviewed the person who bought the house, who

21   turned out to be a public defender, and he said -- and I'm

22   trying to be fair here.  Basically, he signed a declaration

23   saying, *I never found any money and I never told the detective*

24   *I found any money.*

25           And at that point, Sergeant Gavin began to

1   investigate further, and one of the other things he did was Mr.

2   Lisker had complained that no one had ever looked at the shoe

3   prints that were made outside the house or inside the house and

4   that someone should have done that.  And at the trial, the

5   testimony was that those were made by his shoes.

6          Sergeant Gavin then for the first time sent out the

7   shoe prints to SID, Scientific Investigation Division, of LAPD,

8   and he got a report back saying these could not have been made

9   by Mr. Lisker's shoes.  His shoes have a wavy pattern and these

10  are a hexagonal pattern.

11         And at that point Sergeant Gavin continued to

12  investigate further, and one of the things he did was he

13  contacted the --

14         THE COURT:  Let me just interrupt.  Sergeant Gavin

15  would be a key witness in the liability phase?

16         MR. GENEGO:  He was.  I think that he would be.  He

17  was at the evidentiary hearing.  He was a very key witness, and

18  I suspect he would be one at the trial.

19         And so what happens is that he continues on doing his

20  investigation.  And according to his testimony at the

21  evidentiary hearing, at some point he gets a call from his

22  supervisor who says, *Shut it down.  Close out the*

23  *investigation.  There are other judicial reviews and only talk*

24  *to Detective Monsue about the letter.*

25         So that then causes Mr. Lisker to be notified that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    his complaint has been rejected.

 2            His private investigator at that point, who was the

 3    person who had actually contacted the homeowner to get the

 4    declaration, wrote a letter to Chief Bratton saying, There's a

 5    cover-up here, and that happens in the fall of 2004.

 6            He files a complaint in 2003.  It's rejected in June

 7    of 2004.

 8            The private investigator writes a letter in September

 9    of 2004.  That goes to Bratton and then to --

10            THE COURT:  Okay.  Stop.  Stop.  Stop.

11            MR. GENEGO:  Sure.

12            THE COURT:  You're giving me more than I need.

13            MR. GENEGO:  Okay.

14            THE COURT:  I'm just trying to get a rough idea.  I'm

15    not as familiar with the details as you are --

16            MR. GENEGO:  Sure.  No, I understand.  I understand.

17            THE COURT:  -- as I will become.

18            This story about internal affairs, I take it, leads

19    to a theory of ratification that gives you a basis to pursue

20    Monell liability against the City?

21            MR. GENEGO:  Correct.

22            THE COURT:  Right?

23            MR. GENEGO:  Correct.

24            MR. LITT:  That's not the only Monell theory.

25    There's a second Monell theory.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                THE COURT:  There is a second what?

 2                MR. LITT:  Monell theory.

 3                THE COURT:  And what's that?

 4                MR. LITT:  That is that the way that internal affairs

 5    operated basically condoned and gave license to the kind of

 6    conduct that occurred here and a pattern and practice of sort

 7    of internal affairs not dealing with improper and particularly

 8    false evidence.

 9                THE COURT:  So to the extent your claims are Monell

10    claims, the evidence at this upcoming trial will be entirely

11    different than the evidence at the underlying criminal trial,

12    right?

13                MS. PODBERESKY:  Yes.

14                MR. LITT:  Yes.

15                MR. GENEGO:  Yes.

16                THE COURT:  On both of the Monell --

17                MS. PODBERESKY:  Yes.

18                MR. GENEGO:  Absolutely.  Absolutely.

19                THE COURT:  And did my order of August 11th

20    contemplate a different phase for Monell liability?  I don't

21    think it did.

22                MR. GENEGO:  No.

23                MR. LITT:  No.

24                THE COURT:  And you don't want it, right?  You want

25    to prove due process violations and Monell liability in the
```

1    same phase, right?

2            MR. LITT:  Yes.

3            THE COURT:  And that's what is currently contemplated

4    under my order, right?

5            MR. LITT:  Yes.

6            MR. BOJORQUEZ:  I don't know if that is currently

7    contemplated under the Court's order because I don't know if it

8    was really addressed.

9            MR. LITT:  It wasn't addressed, but -- it was

10   addressed, but it would be liability and damages.

11           MR. BOJORQUEZ:  Correct.  And, of course, the

12   defendant's position would be that we would be doing a motion

13   in limine to create a separate phase for that.  We would be

14   requesting a bifurcation.

15           THE COURT:  I won't preclude you from making that

16   request.  If it wasn't clear from these motions, that I

17   couldn't fully understand, that it was the plaintiffs' position

18   that Monell and due process all belong in the same phase, then

19   you have a right to say they shouldn't.  That's my current

20   view.

21           This 20-day estimate that you want in this scheduling

22   conference in this status report or request that was stricken,

23   that's for all of the phases?

24           MR. LITT:  Yes.

25           THE COURT:  How much for a phase about due process

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    violations as opposed to, for sake of argument, Monell?  How

2    much time do you think you would need?

3         MR. LITT:  I don't know that we've broken it down

4    that way.

5         MR. GENEGO:  I mean, I may be speaking out of turn

6    here, but -- I think I underestimated the first time around,

7    but I think as to that particular phase, just the liability

8    without the Monell information, probably like eight days.

9         THE COURT:  Yeah, that's what I would have guessed

10   you were going to say.

11        So the purpose of this status conference, counsel,

12   that we're having right now is to give you some guidance as to

13   the length of the trial and what else?  See if I can broker a

14   deal or issue an order about confidential documents.  What

15   else?

16        MR. LITT:  I think those are -- the main things were

17   the length of the trial; this question, which I think we've

18   discussed, about sort of how we're going to deal with the

19   evidence of the first trial, the original criminal trial, and I

20   guess we should revisit that to be a little more specific, but

21   we did discuss it; and then the confidential documents.

22        And I guess we would like to have clarity as well

23   because some of the motions in limine that we're preparing

24   refer to the confidential documents that we're going to mark as

25   trial exhibits, and we would like to avoid having to file all

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  these things under seal.

2           THE COURT:  Okay.  Let's work backwards, because I am

3  beginning to have an idea of what I can do that is appropriate

4  here.

5           What's your response -- do you have this request for

6  a status conference before you here?

7           MR. BOJORQUEZ:  Yes, I do.

8           THE COURT:  So just look at this last page, 6.

9           I have to acknowledge that I have your work product

10 here before me --

11          MR. LITT:  Yeah, I know.

12          THE COURT:  -- with your notes.  I thought it was my

13 law clerk's writing.

14     (Laughter.)

15          MR. LITT:  It's no big secret, so --

16          MR. GENEGO:  I couldn't read them.  I don't know

17 about the Court.

18          THE COURT:  I'm having trouble.

19          Well, what is your response to page 6, Mr. Bojorquez?

20          MR. BOJORQUEZ:  As far as the confidential exhibits?

21          THE COURT:  Right.

22          MR. BOJORQUEZ:  We really don't know at this point

23 because I don't know -- I know my assistant was communicating

24 with Mr. Genego, I believe, and I don't know if a list was ever

25 sent out or anything like that.

```
 1              MR. GENEGO:  I gave her a list of all of the exhibits
 2    that were still produced under the protective order that we
 3    wanted exempted that we had identified as exhibits.
 4              MR. BOJORQUEZ:  Unfortunately, I don't have that with
 5    me, and I know a lot of this happened like right during the
 6    time when things had got continued, so as far as this
 7    particular portion goes, what we have been trying to discuss is
 8    looking and seeing what documents they are referring to and
 9    then going on a document-by-document basis.
10              THE COURT:  Okay.  Here's what we do about
11    confidential exhibits.
12              I take it the problem is that there is a stamp that
13    says "Confidential," and it covers the letters or words that
14    are otherwise on the clean document.  Is that the gist of it?
15              MR. GENEGO:  That's one concern.  And the other
16    concern is that if some of the material does not look
17    particularly sensitive, then we would not want to go through
18    the trouble of filing it under seal, which makes, I think, life
19    a little bit more difficult for everybody if that is something
20    that is really not necessary.  So it's the watermark and it's
21    the under-seal filing privilege.
22              THE COURT:  Okay.  Mr. Bojorquez, I'm ordering that
23    you respond to this request in writing, but that won't be the
24    only way or the last way for the parties to speak to each
25    other, but at least provide a written response to this request
```

1    by not later than a week from today so the parties can see what

2    their respective positions are.

3              Now, do you understand this request sufficiently or

4    do you want me to order the plaintiffs' lawyers to make it

5    clearer to you what they want you to do?

6              MR. LITT:  Why don't we solve that by volunteering to

7    do that because this was a summary, so I think it would be

8    helpful to give a list.

9              THE COURT:  So you give them a list.  Can you give it

10   to them by Friday and then I will give you a week to respond to

11   that?

12             MR. GENEGO:  Sure.

13             THE COURT:  You get them the list of exactly which

14   exhibits you want to have changed and why.

15             You respond by Friday.

16             I'm assuming and expecting counsel to work this out.

17             That doesn't necessarily mean there is only one

18   approach.  Some exhibits may warrant a different treatment than

19   others, but I don't know what these exhibits say, so you guys

20   work that out.

21             Now, in terms of the length of the trial, it would

22   be -- it's less important today to determine a length of trial

23   than it is to determine the reliability of this trial date

24   because I can't tell you what the length of the trial will be

25   until I rule on these motions in limine.  How long the trial

 1    reasonably needs to be depends on what is coming in and what

 2    isn't.

 3            So I don't see the need to change the ten-day

 4    estimate, but I'll give you this assurance.  If there were two

 5    or three phases, if a big part of this case has to do with

 6    something entirely new, which is the two-pronged Monell theory,

 7    it's going to take more than ten trial days.  That's for sure.

 8    I grant you that.

 9            Whether it takes 20 or how many days should be

10    allocated and confined to any given phase, I'm not in a

11    position to determine.  I'm more concerned about holding on to

12    this February 28th date.

13            Now I'm going to tell you something about the

14    duration and about the date.  I'm now a senior judge.  I'm not

15    going to be starting trials at 8 o'clock.  I'm going to be

16    getting a little bit more breathing space in my life.  That

17    means that the trials will probably take more days than they

18    used to.  I'll just leave it at that.

19            We will figure out what the trial schedule will be

20    when we approach that.

21            I went through -- after I got this request for a

22    status conference -- my trial calendar.  You know, for every

23    ten cases, nine will settle, but there are some that I know

24    won't and some of them are very major and very lengthy.  And

25    right now I'm going to do my very best to stick to that

1   February 28th date, but we will have to see.

2           There are a couple that are on the trial calendar

3   that have been continued and that won't settle, and I actually

4   am going to be moving into Phase 2.  I don't know if that's

5   steadfast, but they have to be tried.  But assume February

6   28th.

7           You start filing your motions in limine, and I will

8   try to keep more or less current on them.

9           That's all I'm going to say about the trial date and

10  the trial length.

11          Now, this revised schedule, which we will assume to

12  be the governing schedule that I so ordered, says "not

13  applicable" as to the last day to conduct a settlement

14  conference.

15          I don't remember, frankly -- did you have a

16  settlement mediation?

17          MR. GENEGO:  We did, in front of former Magistrate

18  Judge Chapman.

19          THE COURT:  How many days?

20          MR. GENEGO:  It was one morning.  That was it.  It

21  didn't go anywhere.

22          THE COURT:  Obviously.  Why?  Why was there --

23  despite the odds against it, why was there progress -- and I

24  don't want a response to be dependent on the different

25  personalities of the magistrate judges, but why was there

1   progress in Goldstein and not in Lisker?

2          MR. LITT:  I think I can give you my perspective on

3   it.  My perspective on it is because it was Long Beach versus

4   the City of Los Angeles.

5          My impression, for what it's worth, of the police

6   litigation unit within the city attorney's office is that with

7   very rare exceptions -- the May Day case that was before you

8   being one, but a rare one.  The position of the city attorney's

9   office is that, *We think we can win the cases, and except for*

10  *very low settlements, we're not really interested in*

11  *settlement.*

12         I mean, you can tell me if you disagree, but that's

13  my impression based on my personal experience and discussions

14  with a lot of people who do this kind of work.

15         THE COURT:  Your response, Mr. Bojorquez?

16         MR. BOJORQUEZ:  Your Honor, I don't really have a

17  position.  I think that one of the main issues at the time that

18  the initial settlement conference was conducted was very early

19  on in the process of the case -- and I think it was where we

20  had gotten movement on a continuance.  I think, to be honest

21  with you, I mean, I don't know Mr. Litt -- I don't think Mr.

22  Litt was involved with it at the time.

23         MR. LITT:  No, I wasn't.

24         MR. BOJORQUEZ:  But Mr. Genego and Ms. Podberesky

25  were there, and I think one of the issues was Chapman just kind

1  of said, *It looks like there is on both sides an issue*

2  *regarding how far along you are on the discovery process*, and

3  some of those type things.  So we all came in and then we were

4  excused, in essence.

5          THE COURT:  Okay.  Let me just ask you this.  I think

6  you can confidently and securely give me an answer without

7  compromising your client's position, but if you think you

8  can't, then you should tell me so.

9          I heard what Mr. Litt said.  I'm a little surprised

10  that it would be dependent on just the difference between the

11  two municipalities and the respective city attorney's offices.

12          My impression -- and I could be wrong -- is that for

13  whatever reasons, Monsue and the department have a deeper

14  allegiance to the outcome of the underlying case -- in other

15  words, a conviction that it was a proper result and that Lisker

16  really did kill his mother -- than was the case with the Long

17  Beach people.

18          In other words, there is no way they are going to

19  settle because that would be an abomination and beyond just and

20  not for other reasons.

21          Am I right?

22          MR. BOJORQUEZ:  I don't know enough about the

23  department's position at this point, but I can tell you that I

24  know the position of the department as far as they do believe

25  that Mr. Lisker has guilt or some involvement in the actual

1  murder, but as far as the settlement perspective, that is

2  something I don't know.

3          THE COURT:  Okay.  Well, I appreciate your answer

4  because it may be an academic question.

5          You're not going to be -- neither side is going to be

6  excused from compliance with Local Rule 1615.  You are going to

7  have to try to settle this case at a later time.  So that

8  not-applicable last date to conduct settlement conference I am

9  striking without requiring a new page to be created.

10          You are not ready to proceed to settle yet until I

11  move on some of these motions, until you make it clear what

12  your expectations are in terms of how the case will be tried,

13  what the evidence will consist of and the like.

14          I've heard only one side of the story about this

15  internal affairs development.  I remember reading something

16  about Gavin previously.

17          If it comes out close to what the plaintiffs

18  characterize, there's got to be settlement value in this case,

19  Mr. Bojorquez, because the department can ill afford a jury

20  finding that systematically as a matter of practice and policy,

21  which is key to Monell, it covered up misconduct.

22          That would not be good for the City of Los Angeles

23  and the LAPD, and there would be a real risk of that if the

24  evidence turned out to be the way the plaintiffs are saying.

25          So -- I'm not faulting you for anything at all,

```
 1   nothing.   I don't know what happened before Judge Chapman, but
 2   I'm telling you if you are going to do your job as the lawyer
 3   for your client, you should go back today and tell whoever it
 4   is that has the necessary power and ear that I expect a
 5   different approach once additional rulings have been made and
 6   in light of what I only superficially and preliminarily
 7   construe to be a pretty promising Monell case, because the
 8   Monell liability is not entirely dependent only on a finding of
 9   a due process violation.
10          If the parole rights were violated by -- I take it
11   this letter that was written in 1998 was designed to persuade
12   the parole board to deny parole, right?
13          Is that a particular theory in the complaint in this
14   case?
15          MR. LITT:  It's not a separate theory.
16          THE COURT:  Yeah, I didn't think so, but we will see
17   where we take it from here.
18          So you got to start thinking that I'm going to be
19   more attentive to this case, and your client -- clients have a
20   different risk than if they simply say, *You know, it's awfully*
21   *hard to find that the trial was unfair.*
22          It is hard.  Plaintiffs have a tough challenge, but I
23   will order further settlement proceedings, and you both should
24   start thinking about who should conduct them.  I'm not going to
25   impose on Judge Woehrle.
```

```
 1              MR. LITT:  If I can persuade her, would you object?

 2              THE COURT:  You know, I don't want you to try until

 3    and unless I say it's okay.

 4              I know that Judge Woehrle is dealing with a lot of

 5    major responsibilities and calendaring requirements, and it

 6    would not be fair to impose on her.  And she's my friend.  Now,

 7    the fact that she's my friend doesn't affect how she conducts

 8    things; she's probably the friend of a lot of district judges

 9    here, but as much as I would like to see this case settle, I

10    don't think the principle is sound that she is the only person

11    that can pull it off, but it may not have to be a magistrate

12    judge.

13              MR. LITT:  She may not be the only person.  I will

14    say that in my experience with the City and with the County,

15    she is one of the few magistrate judges that enjoys a high

16    level of respect and confidence from the defense side as well

17    as the plaintiff's side, and that's hard to come by.

18              THE COURT:  And much deserved.  You know, she helped

19    me on Mywon and she helped me on Goldstein.  She helped both

20    sides.  Well, you weren't on Goldstein.

21              MR. BOJORQUEZ:  No, but as far as the City's

22    perspective -- the reason I laugh, Your Honor, is because I

23    think everyone who knows Magistrate Woehrle likes her

24    generally, and she is somebody in our office that's highly

25    respected as well.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  Well, talk to each other -- you don't
 2   have to respond now; I don't want to compromise anything --
 3   about other possible mediators.
 4              I am not ruling her out, but I don't want you to
 5   start knocking on her door.  It's premature, and I know that
 6   there are certain other things that she prefers to continue to
 7   work on, and she certainly has the right to continue to do
 8   that.
 9              Anything else that needs to be addressed today?
10              MR. LITT:  I don't think so.
11              THE COURT:  Mr. Bojorquez?
12              MR. BOJORQUEZ:  I don't believe anything, Your Honor.
13              THE COURT:  All right.  I will order to have Mr.
14   Montes to have minutes of today's proceeding that more or less
15   in a kind of cryptic and conclusory way reflect what happened
16   today.
17              MR. LITT:  One thing, Your Honor.  We haven't
18   discussed this with Mr. Bojorquez.
19              THE COURT:  Is it Bojorquez or Bojorquez?
20              MR. BOJORQUEZ:  Well, it's probably pronounced
21   Bojorquez, but being in Los Angeles, everybody says Bojorquez.
22   I don't take offense to it at all.
23              THE COURT:  Well, what do you want to be referred to
24   as?
25              MR. BOJORQUEZ:  It really doesn't -- it's Bojorquez.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   But I don't, again -- I don't --

 2       (Multiple speakers talking.)

 3           MR. LITT:  Bojorquez.

 4           MR. GENEGO:  Bojorquez.

 5           MR. BOJORQUEZ:  You actually also pronounce it

 6   properly.

 7           THE COURT:  Then I should pronounce the "J" because

 8   that's what the jurors are going to learn.  I don't want some

 9   eyebrow to be raised inappropriately.

10           MR. LITT:  We are going to propose a questionnaire.

11           We can file a motion, if you want, but some judges

12   just say, Give us the proposed questionnaire.  We will run it

13   by the other side and ask them to make the adjustments.

14           THE COURT:  First draft a questionnaire.  Then get

15   maximum degree of approval for it.  And then only as to

16   specific questions or lines of inquiry where there is

17   opposition does the proposal have to be presented to me in two

18   parts, one is the agreed-to questions and the other is the

19   disputed questions.

20           MR. LITT:  Okay.

21           THE COURT:  And given the considerable coverage that

22   at least the L.A. Times -- I don't know about other

23   organizations -- provided to this case, I doubt if I will

24   refuse a questionnaire.  I will probably approve it.

25           MR. LITT:  Okay.
```

1          THE COURT:  All right.  Thank you.

2          MR. BOJORQUEZ:  Thank you, Your Honor.

3          MR. GENEGO:  Thank you, Your Honor.

4          MS. PODBERESKY:  Thank you, Your Honor.

5      *(Proceedings concluded.)*

6                         --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

CERTIFICATE


    I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date: SEPTEMBER 21, 2011




            /s/  Cindy L. Nirenberg, CSR No. 5059

                      Official Court Reporter

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**$**
**$150 [2]**  22/4 22/8

**—**

**--oOo [1]**  40/6

**/**

**/s [1]**  41/17

**1**

**1055 [1]**  2/9
**11th [1]**  25/19
**12 [3]**  1/17 3/1 18/10
**13 [1]**  18/10
**15 [1]**  15/12
**1615 [1]**  35/6
**168 [1]**  4/6
**17th [1]**  4/6
**1880 [1]**  2/10
**1983 [1]**  22/6
**1985 [1]**  22/6
**1998 [4]**  22/2 22/5 22/7 36/11

**2**

**20 [4]**  15/12 20/3 22/1 31/9
**20-day [1]**  26/21
**200 [1]**  2/16
**2001 [1]**  22/11
**2003 [3]**  21/25 22/12 24/6
**2004 [3]**  24/5 24/7 24/9
**2011 [3]**  1/17 3/1 41/12
**21 [1]**  41/12
**2115 [1]**  2/6
**213-386-3114 [1]**  2/11
**213-978-7023 [1]**  2/17
**25th [1]**  13/14
**28 [1]**  41/6
**28th [3]**  31/12 32/1 32/6
**2:00 [2]**  1/18 3/2
**2:19 [1]**  17/13
**2:34 [1]**  17/13

**3**

**310-399-3259 [1]**  2/7
**3114 [1]**  2/11
**312 [1]**  1/24
**3259 [1]**  2/7

**4**

**438 [1]**  1/24

**5**

**5059 [2]**  1/23 41/17

**6**

**6th [1]**  2/16

**7**

**7023 [1]**  2/17
**753 [1]**  41/5

**9**

**90012 [2]**  1/24 2/17
**90017 [1]**  2/10
**90405 [1]**  2/6
**9374 [1]**  3/4

**A**

**able [1]**  11/11
**abomination [1]**  34/19
**about [35]**  3/24 4/8 4/14 4/19 4/21 5/12
 13/2 15/18 16/5 16/18 19/6 20/2 20/7 21/7
 21/17 21/18 22/1 22/16 23/24 24/18 26/25

27/14 27/18 28/17 29/10 31/11 31/13 31/14
32/11 33/7 33/9 35/2 36/3
**above [1]**  41/8
**above-entitled [1]**  41/8
**absolute [1]**  11/25
**Absolutely [2]**  25/18 25/18
**abundance [1]**  20/12
**academic [1]**  35/4
**acceptable [1]**  20/4
**accepted [1]**  13/2
**accomplish [1]**  13/4
**according [2]**  19/2 23/20
**account [3]**  8/8 8/11 18/24
**accurate [1]**  12/18
**accused [2]**  10/9 10/12
**acknowledge [2]**  13/18 28/9
**action [1]**  8/9
**actual [2]**  7/18 34/25
**actually [9]**  7/18 7/20 15/16 16/19 17/5
 18/14 24/3 32/3 39/5
**adding [1]**  12/21
**addition [1]**  22/17
**additional [1]**  36/5
**addressed [4]**  26/8 26/9 26/10 38/9
**adjustments [1]**  39/13
**admissions [1]**  6/18
**adopted [1]**  8/23
**affairs [10]**  21/3 21/14 21/19 21/21 21/25
 22/12 24/18 25/4 25/7 35/15
**affect [1]**  37/7
**afford [1]**  35/19
**after [5]**  9/23 14/2 14/23 22/3 31/21
**afternoon [1]**  3/13
**again [3]**  6/21 10/10 39/1
**against [2]**  24/20 32/23
**ago [2]**  12/14 17/4
**agree [3]**  12/1 12/17 16/11
**agreed [4]**  5/17 13/5 19/24 39/18
**agreed-to [2]**  19/24 39/18
**agreement [1]**  5/19
**AHM [1]**  1/9
**AJWX [1]**  1/9
**akin [1]**  12/9
**al [2]**  1/10 3/5
**all [25]**  3/13 3/17 4/16 6/11 7/23 7/25
 10/10 11/16 11/20 12/4 13/4 15/5 15/10
 19/11 19/23 26/16 26/23 27/25 29/1 32/9
 34/3 35/25 38/13 38/22 40/1
**allegiance [1]**  34/14
**alleging [1]**  11/9
**allocated [1]**  31/10
**allow [1]**  16/17
**alluding [1]**  5/8
**along [2]**  19/17 34/2
**also [5]**  4/25 6/1 13/22 21/12 39/5
**although [2]**  8/7 9/3
**always [1]**  16/13
**am [11]**  4/19 8/19 10/4 10/6 13/3 16/5 28/2
 32/4 34/21 35/8 38/4
**analysis [1]**  15/19
**ANGELES [11]**  1/10 1/16 1/24 2/10 2/14 2/17
 3/1 3/5 33/4 35/22 38/21
**another [1]**  18/4
**answer [4]**  12/15 15/15 34/6 35/3
**answered [1]**  15/17
**anticipate [1]**  12/20
**any [8]**  6/22 6/24 8/23 18/25 20/24 22/23
 22/24 31/10
**anything [6]**  8/11 28/25 35/25 38/2 38/9
 38/12
**anywhere [1]**  32/21
**apologize [2]**  7/13 17/7
**appear [1]**  16/10

**A**

appearances [2]   2/1 3/6
appears [1]   4/6
applicable [2]   32/13 35/8
appreciate [1]   35/3
approach [4]   20/1 30/18 31/20 36/5
appropriate [4]   8/3 14/14 14/17 28/3
approval [1]   39/15
approve [1]   39/24
are [55]
areas [1]   22/17
argue [1]   14/1
argument [1]   27/1
around [1]   27/6
arrived [1]   13/6
as [66]
Aside [1]   20/20
ask [3]   13/2 34/5 39/13
asked [3]   12/15 14/7 15/13
asking [3]   14/20 14/23 16/5
assigned [1]   22/13
assistant [1]   28/23
assume [2]   32/5 32/11
assuming [3]   14/10 19/14 30/16
assurance [1]   31/4
at the [1]   12/3
attentive [1]   36/19
attic [2]   22/5 22/9
attorney [6]   2/4 2/5 2/9 2/14 2/14 2/15
attorney's [3]   33/6 33/8 34/11
August [2]   4/6 25/19
avoid [2]   10/8 27/25
awfully [1]   36/20

**B**

back [5]   7/20 17/12 17/14 23/8 36/3
background [3]   8/8 8/17 12/10
backwards [2]   8/4 28/2
balanced [1]   12/18
BARRETT [2]   2/9 3/9
based [4]   5/10 13/24 17/6 33/13
basically [5]   7/5 8/7 14/13 22/22 25/5
basis [2]   24/19 29/9
be [89]
Beach [2]   33/3 34/17
because [24]   4/14 4/16 4/23 5/5 7/16 8/2
 8/5 13/3 16/20 21/15 22/15 26/7 27/23 28/2
 28/23 30/7 30/24 33/3 34/19 35/4 35/19 36/7
 37/22 39/7
become [3]   8/9 10/20 24/17
becomes [2]   10/1 11/12
been [16]   5/10 6/16 7/23 9/25 10/1 13/6
 14/8 15/22 15/25 17/8 22/1 23/8 24/1 29/7
 32/3 36/5
before [9]   4/9 9/9 9/11 9/18 10/2 28/6
 28/10 33/7 36/1
began [1]   22/25
begin [1]   9/19
beginning [2]   22/15 28/3
begins [1]   22/14
behalf [5]   3/7 3/9 3/10 3/11 6/17
being [8]   6/14 7/9 12/3 19/25 22/5 22/7
 33/8 38/21
believe [3]   28/24 34/24 38/12
belong [1]   26/18
beneath [1]   8/10
benefit [1]   8/16
best [2]   14/3 31/25
better [3]   4/13 8/17 9/22
between [2]   18/11 34/10
beyond [1]   34/19
bifurcation [1]   26/14

big [2]   28/15 31/5
Bill [1]   28/19
bit [3]   7/13 29/19 31/16
blood [1]   3/21
board [1]   36/12
BOJORQUEZ [16]   2/15 3/11 19/9 28/19 29/22
 33/15 35/19 38/11 38/18 38/19 38/19 38/21
 38/21 38/25 39/3 39/4
both [9]   13/5 13/17 16/10 18/20 18/24 25/16
 34/1 36/23 37/19
bottom [1]   9/3
bought [1]   22/20
Boulevard [1]   2/9
bounce [1]   17/9
bound [1]   7/9
Bratton [2]   24/4 24/9
breathing [1]   31/16
brief [1]   5/9
briefed [1]   15/20
broad [1]   12/24
broke [2]   18/20 19/1
broken [2]   18/13 27/3
broker [1]   27/13
BRUCE [5]   1/7 3/4 3/7 3/9 3/10

**C**

CA [3]   2/6 2/10 2/17
calendar [4]   17/10 17/10 31/22 32/2
calendaring [1]   37/5
CALIFORNIA [4]   1/2 1/16 1/24 3/1
call [1]   23/21
called [3]   18/2 18/4 19/17
Calling [1]   3/4
came [2]   6/9 34/3
can [23]   9/22 10/8 10/21 10/22 11/18 12/17
 14/22 15/1 16/13 16/21 27/13 28/3 30/1 30/9
 33/2 33/9 33/12 34/6 34/23 35/19 37/1 37/11
 39/11
can't [5]   8/10 16/14 20/5 30/24 34/8
carmen [1]   2/14
case [32]   3/16 4/7 8/17 9/20 9/20 9/20 10/2
 10/5 11/1 12/14 14/1 14/3 14/9 14/22 15/22
 16/8 18/7 20/9 22/16 31/5 33/7 33/19 34/14
 34/16 35/7 35/12 35/18 36/7 36/14 36/19
 37/9 39/23
case-within-a-case [1]   9/20
cases [2]   31/23 33/9
catch [2]   3/25 17/9
catch-up [1]   17/9
categories [1]   21/14
causes [1]   23/25
CENTRAL [1]   1/2
certain [4]   5/21 5/24 6/15 6/16 7/16 10/11
 21/12 38/6
certainly [1]   38/7
CERTIFICATE [1]   41/3
certify [1]   41/5
challenge [1]   36/22
challenges [1]   9/9
change [2]   13/11 31/3
changed [1]   30/14
Chapman [3]   32/18 33/25 36/1
characterization [1]   9/1
characterize [1]   35/18
Chief [1]   24/4
choose [1]   18/9
CHRISTIAN [2]   2/15 3/11
CINDY [2]   1/23 41/17
city [12]   1/10 2/14 2/14 2/15 3/5 24/20
 33/4 33/6 33/8 34/11 35/22 37/14
City's [2]   11/2 37/21
civil [1]   8/9
claims [6]   9/7 9/14 11/5 11/6 25/9 25/10

# C

**clarify [1]** 9/2
**clarity [1]** 27/22
**clean [1]** 29/14
**clear [2]** 26/16 35/11
**clearer [1]** 30/5
**clerk's [1]** 28/13
**client [3]** 10/8 36/3 36/19
**client's [2]** 12/23 34/7
**clients [1]** 36/19
**close [3]** 9/4 23/22 35/17
**clot [1]** 3/21
**Code [1]** 41/6
**coincidental [1]** 17/6
**colleagues [1]** 12/8
**come [8]** 4/14 11/14 11/17 11/20 13/6 13/10 16/14 37/17
**comes [1]** 35/17
**coming [3]** 12/2 17/25 31/1
**communicating [1]** 28/23
**compel [1]** 16/9
**complained [1]** 23/2
**complaint [6]** 21/25 22/1 22/12 24/1 24/6 36/13
**compliance [1]** 35/6
**comply [1]** 12/22
**compromise [1]** 38/2
**compromising [1]** 34/7
**concern [3]** 3/17 29/15 29/16
**concerned [1]** 31/11
**conclude [1]** 8/2
**concluded [3]** 14/2 19/21 40/5
**conclusory [1]** 38/15
**condition [1]** 3/21
**condoned [1]** 25/5
**conduct [6]** 16/16 22/14 25/6 32/13 35/8 36/24
**conducted [2]** 15/22 33/18
**conducts [1]** 37/7
**conference [18]** 4/3 4/4 4/4 4/14 4/17 4/23 5/2 16/25 17/5 18/3 26/22 27/11 28/6 31/22 32/14 33/18 35/8 41/10
**confidence [1]** 37/16
**confidential [7]** 18/5 27/14 27/21 27/24 28/20 29/11 29/13
**confidently [1]** 34/6
**confined [1]** 31/10
**confirm [2]** 14/24 15/1
**confirmation [1]** 14/20
**confirms [1]** 22/9
**conformance [1]** 41/9
**confusing [1]** 17/8
**consensually [1]** 16/13
**consensus [1]** 4/20
**considerable [1]** 39/21
**considered [2]** 19/12 19/15
**consist [1]** 35/13
**construe [2]** 8/4 36/7
**construing [1]** 8/19
**contacted [3]** 22/8 23/13 24/3
**contemplate [1]** 25/20
**contemplated [2]** 26/3 26/7
**contents [1]** 6/22
**continuance [1]** 33/20
**continue [3]** 17/11 38/6 38/7
**continued [3]** 23/11 29/6 32/3
**continues [1]** 23/19
**continuing [1]** 6/10
**contrast [1]** 10/21
**convicted [1]** 10/12
**conviction [1]** 34/15
**copies [2]** 4/13 18/5

**copy [1]** 17/15
**correct [6]** 13/20 19/10 24/21 24/23 26/11 41/7
**could [5]** 9/1 12/1 21/20 23/8 34/12
**couldn't [2]** 26/17 28/16
**counsel [6]** 2/1 3/6 4/9 20/8 27/11 30/16
**County [1]** 37/14
**couple [3]** 3/21 18/2 32/2
**course [3]** 11/12 19/11 26/11
**court [15]** 1/1 1/23 5/1 5/6 5/12 6/5 10/1 12/9 14/10 15/1 15/9 16/14 16/20 28/17 41/18
**Court's [1]** 26/7
**cover [1]** 24/5
**cover-up [1]** 24/5
**coverage [1]** 39/21
**covered [1]** 35/21
**covers [1]** 29/13
**create [1]** 26/13
**created [1]** 35/9
**crime [4]** 10/9 10/12 22/4 22/6
**criminal [8]** 7/14 7/21 7/24 9/4 11/15 12/4 25/11 27/19
**cross [1]** 19/25
**cryptic [1]** 38/15
**CSR [2]** 1/23 41/17
**current [2]** 26/19 32/8
**currently [2]** 26/3 26/6
**custody [1]** 22/1
**cutoff [2]** 13/6 15/24
**CV09 [2]** 1/9 3/4
**CV09-9374 [1]** 3/4
**CV09-9374-AHM [1]** 1/9

# D

**damages [2]** 20/11 26/10
**date [7]** 30/23 31/12 31/14 32/1 32/9 35/8 41/12
**dates [1]** 13/14
**day [7]** 12/13 13/15 17/22 26/21 31/3 32/13 33/7
**day-and-a-half [1]** 12/13
**days [6]** 20/3 27/8 31/7 31/9 31/17 32/19
**deal [3]** 14/15 27/14 27/18
**dealing [2]** 25/7 37/4
**decide [1]** 16/16
**decision [3]** 5/15 7/8 8/22
**decisions [1]** 8/24
**declaration [2]** 22/22 24/4
**deeper [1]** 34/13
**defend [1]** 11/1
**defendant [2]** 20/20 20/24
**defendant's [1]** 26/12
**defendants [9]** 1/11 3/12 3/12 5/18 6/17 12/13 18/15 18/18 20/21
**defender [1]** 22/21
**defense [1]** 37/16
**definitive [1]** 15/19
**degree [2]** 21/12 39/15
**delivering [1]** 9/24
**demand [1]** 16/14
**deny [1]** 36/12
**department [4]** 10/16 34/13 34/24 35/19
**department's [1]** 34/23
**dependent [3]** 32/24 34/10 36/8
**depends [1]** 31/1
**deposition [1]** 16/10
**depositions [4]** 15/23 16/1 16/2 16/16
**deputy [1]** 2/15
**description [1]** 7/8
**deserved [1]** 37/18
**designed [1]** 36/11

# D

**despite [1]** 32/23
**detailed [1]** 7/8
**details [2]** 5/13 24/15
**detective [5]** 20/21 20/25 22/2 22/23 23/24
**determination [1]** 11/18
**determine [4]** 4/18 30/22 30/23 31/11
**develop [2]** 5/16 7/10
**development [3]** 4/2 4/19 35/15
**developments [1]** 4/7
**did [13]** 9/10 11/1 15/15 19/20 22/19 23/1 23/12 25/19 25/21 27/21 32/15 32/17 34/16
**didn't [9]** 9/9 13/11 13/23 15/18 17/2 17/20 18/19 32/21 36/16
**difference [1]** 34/10
**different [9]** 5/5 5/8 8/15 25/11 25/20 30/18 32/24 36/5 36/20
**difficult [1]** 29/19
**direct [1]** 19/24
**disadvantage [1]** 8/5
**disagree [1]** 33/12
**disagreements [1]** 5/21
**discovery [5]** 13/5 15/21 15/22 15/24 34/2
**discuss [3]** 6/12 27/21 29/7
**discussed [8]** 5/6 5/7 5/14 6/1 6/3 19/13 27/18 38/18
**discussion [6]** 5/4 5/9 5/11 5/11 7/13 13/23
**discussions [2]** 5/1 33/13
**disputed [1]** 39/19
**distillation [1]** 8/12
**district [5]** 1/1 1/2 1/3 8/23 37/8
**divided [1]** 19/2
**DIVISION [2]** 1/2 23/7
**do [35]** 4/9 4/10 4/11 5/13 6/20 9/21 9/23 14/3 14/4 15/11 16/2 16/13 18/8 18/9 18/10 20/10 21/9 21/10 21/15 27/2 28/3 28/5 28/7 29/10 30/3 30/4 30/5 30/7 31/5 31/25 33/14 34/24 36/2 38/7 38/23
**docket [1]** 17/21
**document [6]** 4/6 16/23 17/17 29/9 29/9 29/14
**document-by-document [1]** 29/9
**documents [5]** 19/21 27/14 27/21 27/24 29/8
**does [5]** 10/20 11/14 21/23 29/16 39/17
**doesn't [5]** 12/12 15/9 30/17 37/7 38/25
**doing [3]** 3/18 23/19 26/12
**don't [46]**
**done [2]** 19/4 23/4
**door [1]** 38/5
**doubt [1]** 39/23
**down [3]** 18/21 23/22 27/3
**Dr [1]** 19/18
**draft [1]** 39/14
**due [8]** 9/6 9/14 11/5 12/23 25/25 26/18 26/25 36/9
**duplication [1]** 18/14
**duration [1]** 31/14
**during [1]** 29/5
**duties [1]** 12/22

# E

**each [6]** 5/7 5/19 19/14 20/7 29/24 38/1
**ear [1]** 36/4
**early [1]** 33/18
**easier [1]** 16/22
**effort [1]** 21/16
**eight [1]** 27/8
**either [3]** 4/12 5/25 16/1
**else [5]** 8/11 21/1 27/13 27/15 38/9
**end [3]** 14/1 14/3 15/12
**enjoys [1]** 37/15
**enough [1]** 34/22

**entering [1]** 19/17
**entitle [1]** 16/14
**entitled [1]** 41/8
**essence [1]** 34/4
**established [1]** 8/16
**estimate [2]** 26/21 31/4
**Estuar [2]** 2/8
**et [2]** 1/10 3/5
**evaluate [1]** 14/18
**even [1]** 10/14
**events [1]** 7/11
**ever [3]** 18/11 23/2 28/24
**every [3]** 12/14 12/15 31/22
**everybody [2]** 29/19 38/21
**everyone [2]** 7/13 37/23
**evidence [15]** 5/3 7/6 10/2 10/20 11/18 11/19 14/10 14/18 21/16 25/8 25/10 25/11 27/19 35/13 35/24
**evidentiary [2]** 23/17 23/21
**exactly [3]** 7/4 7/21 30/13
**examination [1]** 19/25
**example [1]** 21/6
**except [4]** 10/6 13/17 15/6 33/9
**exception [1]** 15/5
**exceptions [1]** 33/7
**exchange [2]** 15/25 16/11
**excused [2]** 34/4 35/6
**exempted [1]** 29/3
**exhibit [3]** 10/1 10/1 12/9
**exhibits [9]** 18/5 27/25 28/20 29/1 29/3 29/11 30/14 30/18 30/19
**exist [1]** 7/17
**existed [1]** 11/16
**expect [2]** 13/3 36/4
**expectations [1]** 35/12
**expecting [2]** 8/6 30/16
**experience [2]** 33/13 37/14
**expert [12]** 13/5 15/21 15/22 15/24 16/1 16/10 18/9 19/7 19/15 19/16 20/23 21/15
**experts [15]** 16/17 16/18 16/18 18/8 18/15 18/16 18/24 18/25 19/5 19/24 20/2 20/12 21/2 21/5 21/9
**explain [2]** 17/7 21/20
**express [1]** 3/17
**extension [1]** 18/23
**extent [1]** 25/9
**eyebrow [1]** 39/9

# F

**fact [5]** 5/14 7/19 11/9 11/15 37/7
**factors [1]** 8/12
**facts [5]** 5/16 7/10 7/17 10/21 11/25
**failed [1]** 12/22
**fair [5]** 8/3 12/16 12/17 22/22 37/6
**fairness [1]** 6/12
**fall [2]** 12/8 24/5
**false [5]** 11/9 11/9 21/16 22/18 25/8
**falsehoods [1]** 14/11
**familiar [1]** 24/15
**far [11]** 5/2 6/21 10/24 11/17 20/23 28/20 29/6 34/2 34/24 35/1 37/21
**faulting [1]** 35/25
**feasible [1]** 14/18
**February [3]** 31/12 32/1 32/5
**few [4]** 6/7 15/7 17/9 37/15
**figure [2]** 13/3 31/19
**figured [1]** 20/24
**figuring [1]** 9/19
**file [5]** 13/23 14/8 22/11 27/25 39/11
**filed [9]** 4/6 4/16 4/22 13/19 14/9 17/1 17/3 17/4 21/24
**files [2]** 22/12 24/6

**F**

**filing [4]**  15/9 29/18 29/21 32/7
**final [1]**  9/18
**find [2]**  7/15 36/21
**finding [3]**  14/21 35/20 36/8
**findings [2]**  6/25 7/17
**fine [3]**  3/18 3/25 4/1
**first [13]**  5/17 5/20 7/7 7/8 7/11 9/8 11/8
  12/24 22/19 23/6 27/6 27/19 39/14
**fits [1]**  21/21
**five [1]**  22/16
**flesh [1]**  10/15
**floor [1]**  2/16
**folks [1]**  21/8
**follow [1]**  10/23
**following [1]**  9/12
**footprints [1]**  21/7
**foregoing [1]**  41/6
**forensics [1]**  21/5
**form [2]**  7/6 11/21
**format [1]**  41/9
**former [1]**  32/17
**forms [1]**  18/2
**found [4]**  22/4 22/8 22/23 22/24
**frankly [2]**  20/21 32/15
**Friday [2]**  30/10 30/15
**friend [3]**  37/6 37/7 37/8
**front [1]**  32/17
**fully [1]**  26/17
**fundamental [1]**  18/2
**further [3]**  23/1 23/12 36/23

**G**

**game [1]**  17/8
**gave [3]**  16/19 25/5 29/1
**Gavin [7]**  22/13 22/19 22/25 23/6 23/11
  23/14 35/16
**Genego [6]**  2/3 2/4 3/10 9/17 28/24 33/24
**generally [1]**  37/24
**get [9]**  5/18 9/5 9/18 15/10 18/5 24/3 24/14
  30/13 39/14
**gets [2]**  20/3 23/21
**getting [2]**  6/10 31/16
**gist [1]**  29/14
**give [11]**  5/18 9/22 27/12 30/8 30/9 30/9
  30/10 31/4 33/2 34/6 39/12
**given [3]**  22/10 31/10 39/21
**gives [2]**  7/8 24/19
**giving [1]**  24/12
**go [8]**  4/18 7/15 7/18 7/20 20/14 29/17
  32/21 36/3
**goes [2]**  24/9 29/7
**going [29]**  5/4 9/18 10/23 15/9 15/21 17/11
  18/8 18/9 19/6 27/10 27/18 27/24 29/9 31/7
  31/13 31/15 31/15 31/25 32/4 32/9 34/18
  35/5 35/5 35/6 36/2 36/18 36/24 39/8 39/10
**Goldstein [10]**  5/1 5/11 6/3 13/23 14/2 14/8
  14/14 33/1 37/19 37/20
**gone [2]**  13/6 13/10
**good [4]**  3/13 6/4 8/12 35/22
**got [6]**  12/7 23/8 29/6 31/21 35/18 36/18
**gotten [1]**  33/20
**govern [1]**  4/6
**governing [1]**  32/12
**grant [1]**  31/8
**guess [7]**  7/3 11/22 11/24 14/7 17/6 27/20
  27/22
**guessed [1]**  27/9
**guidance [5]**  9/22 9/23 10/7 18/2 27/12
**guilt [1]**  34/25
**guys [1]**  30/19

**H**

**habeas [6]**  5/15 6/15 6/21 7/8 7/16 7/19
**had [32]**  3/21 3/21 4/5 4/7 4/22 4/23 5/1
  5/9 5/11 5/14 5/15 5/17 5/20 6/3 7/12 10/16
  10/16 10/17 13/10 13/23 14/8 15/24 19/22
  21/25 22/2 22/8 23/2 24/3 24/3 29/3 29/6
  33/20
**hadn't [1]**  5/2
**half [1]**  12/13
**handed [1]**  17/15
**handled [2]**  5/4 21/19
**happen [2]**  9/9 9/10
**happened [8]**  9/9 10/9 14/2 17/24 21/24 29/5
  36/1 38/15
**happens [2]**  23/19 24/5
**hard [3]**  36/21 36/22 37/17
**harder [1]**  21/9
**has [16]**  3/18 4/14 8/8 8/16 9/4 9/25 13/5
  13/6 15/21 15/25 21/15 24/1 31/5 34/25 36/4
  38/7
**have [69]**
**haven't [2]**  5/6 38/17
**having [5]**  19/23 20/1 27/12 27/25 28/18
**he [30]**  8/7 10/11 10/12 10/12 10/12 17/15
  19/19 19/20 19/20 19/20 21/25 22/10 22/11
  22/14 22/17 22/19 22/21 22/22 23/1 23/8
  23/12 23/12 23/16 23/16 23/17 23/18
  23/19 23/21 24/6
**he's [2]**  8/10 8/11
**head [2]**  10/7 12/20
**hear [1]**  14/18
**heard [2]**  34/9 35/14
**hearing [3]**  13/15 23/17 23/21
**heart [1]**  3/20
**held [1]**  41/8
**helped [3]**  37/18 37/19 37/19
**helpful [1]**  30/8
**her [6]**  29/1 37/1 37/6 37/23 38/4 38/5
**here [21]**  4/3 4/18 4/20 5/3 10/14 12/13
  13/24 16/4 17/12 18/11 19/4 19/20 22/22
  24/5 25/6 27/6 28/4 28/6 28/10 36/17 37/9
**here's [2]**  10/9 29/10
**hereby [1]**  41/5
**hexagonal [1]**  23/10
**high [1]**  37/15
**highly [1]**  37/24
**Hirsch [1]**  2/3
**his [11]**  22/1 22/11 22/17 23/5 23/9 23/19
  23/20 23/21 24/1 24/2 34/16
**history [1]**  15/5
**holding [2]**  16/24 31/11
**homeowner [1]**  24/3
**honest [1]**  33/20
**Honor [11]**  3/20 4/23 13/21 19/10 33/16
  37/22 38/12 38/17 40/2 40/3 40/4
**HONORABLE [1]**  1/3
**hope [1]**  4/1
**house [4]**  22/4 22/20 23/3 23/3
**how [25]**  5/3 9/19 9/20 10/5 10/8 11/1 11/23
  12/3 12/22 13/3 15/4 15/11 16/17 17/24 18/3
  18/11 26/25 27/1 27/18 30/25 31/9 32/19
  34/2 35/12 37/7
**HOWARD [1]**  1/3
**However [1]**  6/14

**I**

**I'll [3]**  8/18 31/4 31/18
**I'm [31]**  3/15 7/3 7/5 8/2 8/15 9/12 10/5
  10/7 10/13 11/23 17/11 20/7 22/21 24/14
  24/14 28/18 29/22 30/16 31/10 31/11 31/13
  31/14 31/14 31/15 31/25 32/9 34/9 35/25
  36/2 36/18 36/24

## I

**I've [2]**  18/1 35/14
**idea [4]**  6/1 6/4 24/14 28/3
**identified [2]**  22/16 29/3
**ignore [1]**  4/2
**ill [4]**  3/17 3/18 3/19 35/19
**imagine [1]**  9/24
**important [5]**  5/20 20/19 20/22 20/25 30/22
**impose [2]**  36/25 37/6
**impression [3]**  33/5 33/13 34/12
**improper [1]**  25/7
**inaccurate [1]**  8/25
**inappropriately [1]**  39/9
**incomplete [1]**  8/24
**inconsistent [1]**  10/17
**indicating [1]**  16/22
**indisputable [2]**  10/11 12/11
**information [4]**  5/20 10/14 11/16 27/8
**initial [1]**  33/18
**inquiry [1]**  39/16
**inside [1]**  23/3
**instruct [1]**  14/11
**intend [4]**  10/5 11/1 15/18 16/2
**interested [1]**  33/10
**internal [10]**  21/3 21/14 21/19 21/21 21/25
  22/12 24/18 25/4 25/7 35/15
**interrupt [1]**  23/14
**interviewed [1]**  22/20
**inundated [1]**  15/10
**investigate [3]**  22/13 23/1 23/12
**investigation [6]**  21/16 21/19 22/14 23/7
  23/20 23/23
**investigator [2]**  24/2 24/8
**involved [2]**  7/24 33/22
**involvement [1]**  34/25
**is [79]**
**isn't [1]**  31/2
**isolated [1]**  5/21
**issue [9]**  6/9 11/12 11/14 11/24 13/25 14/21
  18/21 27/14 34/1
**issued [1]**  17/22
**issues [7]**  4/23 4/25 6/19 7/15 20/11 33/17
  33/25
**it [104]**
**it's [28]**  3/15 5/10 6/15 7/21 7/21 7/23 8/6
  10/23 12/7 14/14 14/16 18/11 19/19 20/7
  22/12 24/6 28/15 29/20 29/20 30/22 31/7
  33/5 36/15 36/20 37/3 38/5 38/20 38/25
**Item [1]**  3/4
**its [1]**  6/22
**itself [3]**  6/22 6/23 6/24

## J

**job [1]**  36/2
**Jr [1]**  2/4
**judge [11]**  1/3 8/8 8/13 8/22 8/23 31/14
  32/18 36/1 36/25 37/4 37/12
**judges [4]**  32/25 37/8 37/15 39/11
**judgment [4]**  14/4 14/7 14/14 14/17
**judicial [2]**  23/23 41/10
**July [1]**  13/14
**jumps [1]**  7/19
**jumps-to-fact [1]**  7/19
**June [2]**  22/12 24/6
**jurors [2]**  20/13 39/8
**jury [4]**  7/6 8/16 14/11 35/19
**just [23]**  3/17 4/1 8/1 8/4 9/15 16/13 16/23
  17/6 17/8 17/12 18/8 19/6 21/23 23/14 24/14
  27/7 28/8 31/18 33/25 34/5 34/10 34/19
  39/12

## K

**keep [1]**  32/8

## key [7]

**key [7]**  8/12 20/15 20/16 20/18 23/15 23/17
  35/10
**Khero [1]**  2/3
**kill [1]**  34/16
**kind [7]**  4/17 5/13 7/19 25/5 33/14 33/25
  38/15
**Kitson [1]**  2/8
**knew [1]**  10/22
**knocking [1]**  38/5
**know [42]**
**knowing [1]**  9/25
**knows [1]**  37/23

## L

**L.A [1]**  39/22
**lack [1]**  8/17
**LAPD [2]**  23/7 35/23
**large [1]**  18/7
**last [5]**  13/15 28/8 29/24 32/13 35/8
**later [4]**  21/17 21/19 30/1 35/7
**latter [1]**  4/19
**laugh [1]**  37/22
**Laughter [1]**  28/14
**law [5]**  2/4 2/5 2/9 14/1 28/13
**lawyer [1]**  36/2
**lawyers [4]**  3/16 4/20 12/17 30/4
**lay [1]**  4/24
**leading [1]**  13/19
**leads [1]**  24/18
**learn [1]**  39/8
**least [8]**  3/16 6/12 13/19 19/23 20/1 20/21
  29/25 39/22
**leave [1]**  31/18
**led [3]**  8/12 8/24 18/3
**length [8]**  4/24 16/20 27/13 27/17 30/21
  30/22 30/24 32/10
**lengthy [2]**  5/11 31/24
**less [5]**  12/6 18/10 30/22 32/8 38/14
**let [7]**  3/14 8/1 8/18 16/7 16/23 23/14 34/5
**Let's [1]**  28/2
**letter [9]**  22/2 22/3 22/7 22/17 22/17 23/24
  24/4 24/8 36/11
**letters [1]**  29/13
**level [1]**  37/16
**liability [12]**  11/3 11/7 20/11 20/15 21/21
  21/25 24/20 25/20 25/25 26/10 27/7 36/8
**license [1]**  25/5
**life [2]**  29/18 31/16
**light [1]**  36/6
**like [10]**  14/7 19/5 27/8 27/22 27/25 28/25
  29/5 34/1 35/13 37/9
**likes [1]**  37/23
**limine [6]**  13/17 15/7 26/13 27/23 30/25
  32/7
**line [1]**  9/3
**lines [2]**  19/17 39/16
**LISKER [13]**  1/7 3/5 3/8 3/9 3/10 21/24
  22/11 22/16 23/2 23/25 33/1 34/15 34/25
**Lisker's [1]**  23/9
**list [5]**  28/24 29/1 30/8 30/9 30/13
**listed [1]**  18/20
**litigation [1]**  33/6
**Litt [13]**  2/8 2/9 3/9 7/1 8/4 9/17 12/7
  17/15 18/6 20/14 33/21 33/22 34/9
**little [6]**  3/14 7/12 27/20 29/19 31/16 34/9
**live [2]**  10/15 19/25
**Local [1]**  35/6
**lodged [1]**  4/5
**long [6]**  3/24 12/14 18/4 30/25 33/3 34/16
**look [6]**  8/7 8/10 16/23 17/2 28/8 29/16
**looked [3]**  18/1 19/20 23/2
**looking [2]**  20/8 29/8
**looks [1]**  34/1

**L**

los **[11]**   1/10  1/16  1/24  2/10  2/14  2/16  3/5  3/3/4  35/22  38/21
lot **[10]**   7/19  15/8  15/16  16/21  21/8  21/15  29/5  33/14  37/4  37/8
low **[1]**   33/10

**M**

made **[6]**   6/5  8/13  23/3  23/5  23/8  36/5
magistrate **[5]**   32/17  32/25  37/11  37/15  37/23
main **[5]**   2/6  2/16  11/24  27/16  33/17
major **[2]**   31/24  37/5
make **[9]**   4/13  6/4  8/1  11/18  15/1  21/8  30/4  35/11  39/13
make it **[1]**   35/11
makes **[3]**   15/3  20/13  29/18
making **[2]**   10/13  26/15
man **[1]**   19/19
Management **[1]**   16/8
many **[6]**   15/11  16/17  18/11  18/16  31/9  32/19
mark **[1]**   27/24
marked **[1]**   10/1
material **[5]**   11/13  11/19  14/1  14/12  29/16
materiality **[3]**   11/14  13/25  14/22
matter **[7]**   3/12  14/1  17/10  17/10  20/12  35/20  41/8
MATZ **[1]**   1/3
maximum **[1]**   39/15
may **[12]**   6/16  8/21  9/3  10/14  14/16  17/24  27/5  30/18  33/7  35/4  37/11  37/13
maybe **[4]**   8/6  9/16  15/7  16/21
me **[34]**   3/14  3/20  4/20  6/12  8/1  8/18  9/18  9/22  10/2  10/24  14/18  14/23  15/3  16/7  16/23  17/16  20/9  21/20  21/23  22/4  22/8  23/14  24/12  28/10  29/5  30/4  33/12  34/5  34/6  34/8  37/19  37/19  39/17
mean **[19]**   5/10  6/10  6/23  9/13  11/2  11/22  13/8  13/10  15/23  16/21  18/13  18/20  21/10  21/11  21/23  27/5  30/17  33/12  33/21
means **[1]**   31/17
measure **[1]**   18/7
mediation **[1]**   32/16
mediators **[1]**   38/3
meeting **[2]**   17/11  17/25
meetings **[1]**   6/11
memo **[2]**   9/19  15/14
met **[1]**   11/11
meteorologist **[1]**   21/13
might **[1]**   16/22
millage **[1]**   10/20
minutes **[1]**   38/14
misconduct **[1]**   35/21
modified **[1]**   13/1
MONDAY **[2]**   1/17  3/1
Monell **[17]**   11/6  21/21  24/20  24/24  24/25  25/2  25/9  25/16  25/20  25/25  26/18  27/1  27/8  31/6  35/21  36/7  36/8
money **[2]**   22/23  22/24
Monica **[1]**   2/6
Monsue **[4]**   20/21  22/2  23/24  34/13
Montes **[1]**   38/14
more **[11]**   12/6  24/12  27/20  29/19  31/7  31/11  31/16  31/17  32/8  36/19  38/14
morning **[1]**   32/20
most **[8]**   6/8  8/2  15/15  15/17  18/14  20/19  20/22  20/25
mother **[1]**   34/16
motion **[5]**   13/23  14/4  14/6  26/12  39/11
motions **[13]**   4/16  13/16  13/17  13/18  15/5  15/6  15/7  17/23  26/16  27/23  30/25  32/7  35/11
mouth **[1]**   7/21

move **[1]**   35/11
movement **[1]**   9/20
moving **[1]**   32/4
Mr **[28]**   7/1  8/4  9/16  9/17  12/7  17/15  18/6  19/9  20/14  21/24  22/11  22/16  23/1  23/9  23/25  28/19  28/24  29/22  33/15  33/21  33/21  33/24  34/9  34/25  35/19  38/11  38/13  38/18
Ms **[2]**   9/17  33/24
much **[7]**   4/4  5/19  18/10  26/25  27/2  37/9  37/18
Multiple **[1]**   39/2
municipalities **[1]**   34/11
murder **[1]**   35/1
must **[1]**   14/11
mutuality **[1]**   16/12
my **[23]**   3/17  10/7  10/8  12/2  12/20  16/8  25/19  26/4  26/19  28/12  28/23  31/16  31/22  31/25  32/3  32/3  33/3  33/5  33/13  34/12  37/6  37/7  37/14
Mywon **[1]**   37/19

**N**

NA **[1]**   13/13
name **[1]**   19/18
narrowing **[2]**   19/15  19/16
Nasatir **[1]**   2/3
necessarily **[2]**   12/12  30/17
necessary **[3]**   19/19  19/14  29/20  36/4
need **[5]**   4/17  10/14  24/12  27/2  31/3
needs **[2]**   31/1  38/9
negate **[1]**   9/2
neither **[2]**   16/9  35/5
never **[2]**   22/23  22/23
new **[7]**   12/21  15/6  15/7  22/4  22/8  31/6  35/9
next **[1]**   20/14
nine **[2]**   10/13  31/23
NIRENBERG **[2]**   1/23  41/17
no **[19]**   1/9  7/2  13/18  15/21  16/1  18/6  18/8  18/9  18/17  20/24  23/2  24/16  25/22  25/23  28/15  33/23  34/18  37/21  41/17
non **[1]**   13/5
non-expert **[1]**   13/5
nonapplicable **[1]**   13/13
North **[2]**   1/24  2/16
not **[58]**
not-applicable **[1]**   35/8
notes **[1]**   28/12
nothing **[1]**   36/1
notice **[1]**   18/19
notified **[1]**   23/25
now **[15]**   8/9  8/15  14/24  15/6  17/9  18/1  27/12  30/3  30/21  31/13  31/14  31/25  32/11  37/6  38/2
number **[4]**   3/4  19/6  19/15  19/16
numbers **[1]**   18/12

**O**

o'clock **[1]**   31/15
object **[2]**   16/12  37/1
observation **[2]**   8/1  8/15
obviously **[4]**   6/18  7/21  11/7  32/22
occurred **[3]**   5/1  5/2  25/6
odds **[1]**   32/23
off **[3]**   10/7  12/20  37/11
offense **[1]**   38/22
office **[4]**   2/14  33/6  33/9  37/24
officers **[2]**   10/17  12/13
offices **[1]**   34/11
Official **[2]**   1/23  41/18
Oh **[4]**   3/23  17/2  17/20  18/19
okay **[19]**   3/13  3/23  4/3  7/3  8/1  8/21  17/14  18/19  19/1  24/10  24/13  28/2  29/10  29/22  34/5  35/3  37/3  39/20  39/25

## O

**omissions [1]** 14/11
**once [3]** 14/22 15/10 36/5
**one [28]** 3/15 3/16 4/16 4/23 6/8 7/25 14/8 14/9 17/25 18/3 18/9 19/6 20/17 23/1 23/2 23/12 23/18 29/15 30/17 32/20 33/8 33/8 33/17 33/25 35/14 37/15 38/17 39/18
**ones [2]** 12/2 20/19
**only [12]** 14/16 20/10 23/23 24/24 29/24 30/17 35/14 36/6 36/8 37/10 37/13 39/15
**oOo [1]** 40/6
**opening [1]** 9/25
**operated [1]** 25/5
**opinion [1]** 12/2
**opposed [2]** 7/20 27/1
**opposition [1]** 39/17
**orally [1]** 8/5
**order [12]** 4/5 13/11 16/8 16/14 25/19 26/4 26/7 27/14 29/2 30/4 36/23 38/13
**ordered [1]** 32/12
**ordering [1]** 29/22
**organizations [1]** 39/23
**original [3]** 7/14 22/9 27/19
**other [26]** 5/7 6/18 8/23 12/1 13/15 13/18 15/5 16/9 16/17 19/14 20/7 21/5 21/9 23/1 23/23 29/15 29/25 34/14 34/18 34/20 38/1 38/3 38/6 39/13 39/18 39/22
**others [1]** 30/19
**otherwise [1]** 29/14
**our [12]** 5/11 6/15 7/13 11/7 13/9 14/1 14/3 15/12 21/15 22/9 22/15 37/24
**out [19]** 4/24 7/15 9/19 10/23 12/1 12/2 13/3 21/4 22/21 23/6 23/22 27/5 28/25 30/6 30/20 31/19 35/17 35/24 38/4
**outcome [1]** 34/14
**outline [1]** 12/24
**outside [2]** 11/16 23/3
**over [1]** 10/10
**owners [2]** 22/4 22/8

## P

**p.m [3]** 1/18 3/2 17/13
**page [5]** 12/6 28/8 28/19 35/9 41/9
**parole [7]** 22/2 22/3 22/10 22/17 36/10 36/12 36/12
**part [8]** 4/14 4/16 10/2 13/24 16/8 17/5 19/13 31/5
**partial [2]** 14/4 14/6
**particular [5]** 5/24 6/22 27/7 29/7 36/13
**particularly [2]** 25/7 29/17
**parties [3]** 19/12 29/24 30/1
**parts [3]** 5/24 12/10 39/18
**past [1]** 16/3
**pattern [3]** 23/9 23/10 25/6
**pending [1]** 17/22
**people [2]** 33/14 34/17
**people's [1]** 6/16
**permitted [1]** 18/10
**person [4]** 22/20 24/3 37/10 37/13
**person's [1]** 19/18
**personal [1]** 33/13
**personalities [1]** 32/25
**perspective [8]** 5/19 6/15 7/14 22/15 33/2 33/3 35/1 37/22
**persuade [2]** 36/11 37/1
**phase [16]** 9/5 9/6 9/8 11/7 12/25 20/15 21/21 23/15 25/20 26/1 26/13 26/18 26/25 27/7 31/10 32/4
**phases [3]** 19/2 26/23 31/5
**plaintiff [3]** 1/8 2/3 19/21
**plaintiff's [1]** 37/17
**plaintiffs [8]** 5/17 6/9 9/16 9/16 18/18

35/17 35/24 36/22
**plaintiffs... [1]** 16/16
**play [1]** 17/8
**please [2]** 3/6 21/20
**plural [1]** 20/18
**plus [1]** 21/14
**Podberesky [5]** 2/3 2/5 3/7 9/17 33/24
**point [10]** 5/16 7/10 16/8 21/25 22/25 23/11 23/21 24/2 28/22 34/23
**police [4]** 10/16 21/3 21/15 33/5
**policy [1]** 35/20
**portion [1]** 29/7
**position [9]** 11/8 26/12 26/17 31/11 33/8 33/17 34/7 34/23 34/24
**positions [1]** 30/2
**possibilities [2]** 5/5 5/8
**possible [1]** 38/3
**potential [1]** 11/25
**power [1]** 36/4
**practice [2]** 25/6 35/20
**practices [2]** 21/3 21/15
**preclude [1]** 26/15
**prefers [1]** 38/6
**preliminarily [1]** 36/6
**premature [1]** 38/5
**prepared [2]** 6/11 6/12
**preparing [1]** 27/23
**present [2]** 7/6 10/6
**presented [7]** 7/18 11/17 12/3 12/3 19/24 21/17 39/17
**pretty [2]** 8/11 36/7
**previous [2]** 5/3 13/11
**previously [4]** 4/15 13/14 17/22 35/16
**principle [2]** 14/16 37/10
**prints [2]** 23/3 23/7
**prior [1]** 6/10
**prison [1]** 22/11
**private [2]** 24/2 24/8
**privilege [1]** 29/21
**probably [8]** 18/10 20/20 20/22 27/8 31/17 37/8 38/20 39/24
**problem [1]** 29/12
**procedurally [1]** 14/22
**proceed [4]** 8/3 10/3 15/4 35/10
**proceeding [5]** 6/15 6/21 7/19 7/24 38/14
**proceedings [4]** 1/15 36/23 40/5 41/8
**process [11]** 9/7 9/14 9/19 11/5 12/23 25/25 26/18 26/25 33/19 34/2 36/9
**produced [2]** 21/16 29/2
**product [1]** 28/9
**progress [2]** 32/23 33/1
**promising [1]** 36/7
**pronged [1]** 31/6
**pronounce [2]** 39/5 39/7
**pronounced [1]** 38/20
**proof [1]** 10/15
**propensity [1]** 19/22
**proper [1]** 34/15
**properly [2]** 15/20 39/6
**proposal [1]** 39/17
**propose [6]** 9/1 9/20 9/23 12/8 13/2 39/10
**proposed [2]** 7/10 39/12
**prosecution [1]** 10/16
**protective [1]** 29/2
**prove [6]** 10/22 11/8 11/11 18/7 21/16 25/25
**provide [3]** 10/7 15/19 29/25
**provided [2]** 12/16 39/23
**psychiatrist [1]** 19/20
**public [1]** 22/21
**pull [2]** 8/14 37/11
**purpose [1]** 27/11
**pursuant [1]** 41/5
**pursue [1]** 24/19

**P**

pursued [2]   9/5 9/8
put [4]   3/22 5/25 6/1 10/15

**Q**

question [7]   5/3 12/15 14/7 19/13 20/3
 27/17 35/4
questionnaire [4]   39/10 39/12 39/14 39/24
questions [7]   4/7 6/7 13/2 15/13 39/16 39/18
 39/19
quite [1]   15/7

**R**

raised [2]   4/23 39/9
range [1]   19/16
rare [2]   33/7 33/8
rather [1]   14/3
ratification [1]   24/19
re [1]   9/6
re-trial [1]   9/6
read [4]   7/16 16/21 17/11 28/16
reading [1]   35/15
reads [1]   22/11
ready [1]   35/10
real [1]   35/23
realistic [1]   13/3
really [12]   6/12 8/2 15/19 20/13 22/15 26/8
 28/22 29/20 33/10 33/16 34/16 38/25
reason [2]   17/25 37/22
reasonably [1]   31/1
reasons [3]   17/9 34/13 34/20
recalls [1]   5/12
recently [1]   3/16
Recess [1]   17/13
reciprocal [1]   20/1
reciprocity [1]   16/11
recognize [1]   16/6
recommendation [1]   8/13
reconstruction [3]   21/2 21/10 21/18
record [4]   5/25 6/2 7/22 17/14
recovered [1]   3/18
reducing [1]   19/16
reenacting [1]   9/10
refer [1]   27/24
referred [1]   38/23
referring [5]   7/1 7/5 7/11 8/5 29/8
reflect [1]   38/15
reflects [1]   17/21
refuse [1]   39/24
refutation [1]   10/3
regarding [2]   6/9 34/2
regulations [1]   41/10
rejected [2]   24/1 24/6
related [2]   8/15 16/20
relating [1]   4/24
relevancy [1]   6/19
reliability [2]   20/12 30/23
reliance [1]   19/14
relying [1]   6/21
remaining [1]   4/7
remember [4]   17/24 22/5 32/15 35/15
repeating [1]   10/9
reply [1]   15/14
report [2]   23/8 26/22
reported [1]   41/7
Reporter [2]   1/23 41/18
REPORTER'S [1]   1/15
reports [1]   15/25
request [11]   4/22 15/1 16/25 17/6 26/16
 26/22 28/5 29/23 29/25 30/3 31/21
requesting [2]   18/23 26/14
requests [1]   6/9
require [2]   5/4 12/12

required [2]   14/8 14/9
requirement [1]   10/7
requirements [1]   37/5
requiring [1]   35/9
resolved [2]   4/15 5/10
respect [1]   37/16
respected [1]   37/25
respective [2]   30/2 34/11
respond [5]   6/6 29/23 30/10 30/15 38/2
response [5]   28/5 28/19 29/25 32/24 33/15
responsibilities [1]   37/5
responsible [1]   12/17
rest [1]   14/23
rested [1]   14/22
restricted [1]   19/25
result [1]   34/15
retrying [1]   9/20
returned [1]   17/15
reviews [1]   23/23
revised [1]   32/11
revisit [1]   27/20
right [27]   4/19 6/20 8/19 8/22 14/13 14/18
 14/21 16/9 18/11 19/3 19/7 19/8 24/22 25/12
 25/24 26/1 26/4 26/19 27/12 28/21 29/5
 31/25 34/21 36/12 38/7 38/13 40/1
rights [3]   8/9 12/23 36/10
risk [3]   20/10 35/23 36/20
robbery [1]   22/10
Rosenberg [2]   19/5 19/18
rough [1]   24/14
rule [4]   9/8 15/1 30/25 35/6
ruled [3]   4/15 5/22 5/23
ruling [4]   6/23 6/24 17/22 38/4
rulings [1]   36/5
run [1]   39/12

**S**

said [12]   6/14 7/20 10/19 10/21 14/9 14/13
 15/16 22/3 22/18 22/21 34/1 34/9
sake [1]   27/1
same [4]   12/5 19/11 26/1 26/18
Santa [1]   2/6
say [12]   3/15 8/18 20/5 21/4 26/19 27/10
 30/19 32/9 36/20 37/3 37/14 39/12
saying [11]   8/7 8/10 8/11 8/19 9/12 10/8
 10/18 22/23 23/8 24/4 35/24
says [5]   22/7 23/22 29/13 32/12 38/21
scanned [1]   12/16
schedule [5]   13/1 19/1 31/19 32/11 32/12
scheduling [5]   4/3 4/4 13/1 13/11 26/21
Scientific [1]   23/7
seal [3]   28/1 29/18 29/21
second [5]   9/5 9/6 19/13 24/25 25/1
secret [1]   28/15
Section [1]   41/5
securely [1]   34/6
see [11]   7/12 9/23 16/4 18/22 19/4 27/13
 30/1 31/3 32/1 36/16 37/9
seeing [1]   29/8
seek [1]   14/23
seemed [1]   5/4
seems [1]   9/18
senior [1]   31/14
sense [3]   6/5 15/3 21/8
sensitive [1]   29/17
sent [2]   23/6 28/25
sentenced [1]   10/13
separate [2]   26/13 36/15
SEPTEMBER [4]   1/17 3/1 24/8 41/12
Sergeant [6]   22/13 22/19 22/25 23/6 23/11
 23/14
set [4]   5/16 7/10 12/18 13/14
settle [6]   31/23 32/3 34/19 35/7 35/10 37/9

**S**

**settlement [8]**  32/13 32/16 33/11 33/14 34/19
35/8 35/18 36/23
**settlements [1]**  33/10
**several [3]**  5/5 17/4 22/3
**shake [1]**  10/23
**she [11]**  19/21 37/7 37/10 37/13 37/15 37/18
37/19 37/19 37/24 38/6 38/7
**she's [3]**  37/6 37/7 37/8
**shoe [2]**  23/2 23/7
**shoes [3]**  23/5 23/9 23/9
**should [13]**  8/7 9/16 20/6 20/6 22/10 23/4
27/20 31/9 34/8 36/3 36/23 36/24 39/7
**shouldn't [1]**  26/19
**shows [1]**  14/10
**Shut [1]**  23/22
**SID [1]**  23/7
**side [8]**  5/25 16/1 16/9 35/5 35/14 37/16
37/17 39/13
**side's [3]**  5/19 16/10 16/17
**sides [5]**  13/5 13/17 16/10 34/1 37/20
**sides' [1]**  18/24
**signed [2]**  4/5 22/22
**simply [2]**  10/8 36/20
**skeleton [1]**  10/15
**so [49]**
**so-called [1]**  18/4
**solve [1]**  30/6
**some [30]**  4/7 4/15 4/17 4/23 4/25 5/4 7/6
10/6 10/8 13/2 15/7 18/14 19/5 19/23 20/1
20/22 21/5 21/8 23/21 27/12 27/23 29/16
30/18 31/23 31/24 34/3 34/25 35/11 39/8
39/11
**somebody [1]**  37/24
**somehow [1]**  9/5
**someone [1]**  23/4
**something [12]**  3/14 4/21 6/19 9/1 9/4 12/9
16/13 29/19 31/6 31/13 35/2 35/15
**somewhere [2]**  12/7 18/11
**soon [1]**  17/12
**sort [6]**  5/16 12/5 12/24 14/2 25/6 27/18
**sound [1]**  37/10
**space [1]**  31/16
**speak [2]**  9/16 29/24
**speakers [1]**  39/2
**speaking [1]**  27/5
**specific [2]**  27/20 39/16
**spent [1]**  12/13
**Spring [1]**  1/24
**stab [1]**  5/17
**stamp [1]**  29/12
**stand [2]**  12/14 21/4
**standard [3]**  9/14 9/15 11/11
**standing [1]**  9/24
**start [7]**  3/14 12/7 15/9 32/7 36/18 36/24
38/5
**starting [4]**  5/16 7/10 8/14 31/15
**state [1]**  3/6
**stated [1]**  7/22
**statement [1]**  9/25
**STATES [3]**  1/1 41/6 41/10
**status [13]**  4/4 4/14 4/17 4/22 5/2 16/25
17/5 18/3 18/4 26/22 27/11 28/6 31/22
**steadfast [1]**  32/5
**stenographically [1]**  41/7
**stents [2]**  3/21 3/24
**stick [1]**  31/25
**still [1]**  29/2
**stipulate [1]**  21/8
**stipulated [3]**  5/16 9/25 11/25
**stipulation [3]**  12/9 12/16 13/11
**stipulations [2]**  19/17 21/6

**stop [5]**  8/18 8/25 24/10 24/10 24/10
**stopped [1]**  27/17
**street [3]**  1/24 2/6 2/16
**stricken [3]**  17/17 17/21 26/22
**striking [1]**  35/9
**subject [3]**  9/7 9/7 10/3
**such [3]**  9/6 16/2 19/14
**sufficiently [1]**  30/3
**suggest [1]**  7/17
**suggested [1]**  5/15
**suggesting [1]**  7/7
**suitable [1]**  21/6
**Suite [1]**  2/10
**summaries [1]**  19/24
**summary [10]**  9/1 12/17 12/18 12/18 12/18
14/4 14/6 14/14 14/17 30/7
**super [1]**  20/12
**superficially [1]**  36/6
**supervisor [1]**  23/22
**supplement [1]**  9/2
**sure [12]**  3/15 6/4 6/8 8/2 10/5 10/6 11/4
21/22 24/11 24/16 30/12 31/7
**surprised [1]**  34/9
**suspect [1]**  23/18
**suspicion [1]**  22/9
**systematically [1]**  35/20

**T**

**take [11]**  5/17 16/2 16/23 18/24 24/18 29/12
31/7 31/17 36/16 36/17 38/22
**taken [2]**  16/1 17/13
**takes [2]**  13/13 31/9
**talk [5]**  4/20 20/6 21/23 23/23 38/1
**talking [1]**  39/2
**tell [7]**  16/7 30/24 31/13 33/12 34/8 34/23
36/3
**telling [2]**  20/9 36/2
**tells [1]**  12/10
**ten [3]**  31/3 31/7 31/23
**ten-day [1]**  31/3
**terms [3]**  9/8 30/21 35/12
**Terrio [1]**  21/11
**testify [2]**  19/6 19/19
**testimony [9]**  6/16 7/18 19/15 19/16 19/23
19/25 21/7 23/5 23/20
**than [12]**  6/19 14/3 15/5 24/12 25/11 30/1
30/18 30/23 31/7 31/17 34/16 36/20
**Thank [4]**  40/1 40/2 40/3 40/4
**that [252]**
**that's [35]**  3/23 6/3 6/4 6/5 6/19 7/1 7/11
9/10 10/3 10/19 10/23 11/22 12/21 12/24
14/13 14/19 15/3 16/4 16/5 19/6 19/10 22/7
24/24 26/3 26/19 26/23 27/9 29/15 31/7 32/4
32/9 33/12 37/17 37/24 39/8
**their [3]**  12/22 19/24 30/2
**them [19]**  10/6 11/8 15/9 15/10 15/15 15/16
15/17 15/18 16/21 16/21 18/20 28/16 30/9
30/10 30/13 31/24 32/8 36/24 39/13
**then [28]**  5/18 5/22 5/23 5/24 7/3 7/17
10/19 11/12 11/12 12/1 12/20 12/21 14/10
21/17 22/14 23/6 23/25 24/9 26/18 27/21
29/9 29/17 30/10 34/3 34/8 39/7 39/14 39/15
**theories [1]**  10/4
**theory [9]**  9/10 10/19 24/19 24/24 24/25
25/2 31/6 36/13 36/15
**there [46]**
**there's [7]**  13/22 15/21 18/6 21/5 24/4
24/25 35/18
**therefore [2]**  10/2 22/10
**these [18]**  5/8 6/11 10/16 12/12 14/11 14/11
18/14 18/17 19/21 19/23 20/2 23/8 23/9
26/16 28/1 30/19 30/25 35/11
**they [28]**  3/25 6/17 6/19 7/17 10/17 10/19

**T**

**they... [22]**   10/21 10/22 11/11 12/15 12/15
  15/19 16/18 18/25 19/10 19/13 19/15 21/6
  22/4 22/8 26/19 29/8 30/5 31/17 32/5 34/18
  34/24 36/20
**they're [2]**   11/8 18/13
**thing [4]**   3/24 6/8 22/19 38/17
**things [13]**   5/21 6/16 6/18 10/11 19/6 23/1
  23/12 27/16 28/1 29/6 34/3 37/8 38/6
**think [48]**
**thinking [2]**   36/18 36/24
**this [76]**
**those [12]**   5/21 6/17 6/18 15/8 15/13 18/12
  21/3 21/8 21/14 23/5 27/16 34/3
**though [1]**   11/14
**thought [6]**   4/17 6/5 15/18 17/5 20/2 28/12
**three [2]**   20/19 31/5
**through [7]**   7/15 7/16 13/14 14/4 18/7 29/17
  31/21
**time [14]**   3/25 12/14 14/15 15/2 16/3 19/11
  21/17 23/6 27/2 27/6 29/6 33/17 33/22 35/7
**Times [1]**   39/22
**Title [1]**   41/6
**to learn [1]**   39/8
**today [8]**   6/13 8/24 17/2 30/1 30/22 36/3
  38/9 38/16
**today's [1]**   38/14
**together [1]**   8/14
**told [3]**   22/4 22/8 22/23
**too [1]**   19/2
**top [2]**   10/7 12/20
**totality [1]**   11/17
**tough [2]**   20/13 36/22
**toward [1]**   20/1
**trained [1]**   19/20
**transcript [4]**   1/15 7/14 41/7 41/9
**transcripts [1]**   7/25
**treatment [1]**   30/18
**trial [49]**
**trials [2]**   31/15 31/17
**tried [4]**   4/24 10/12 32/5 35/12
**trouble [2]**   28/18 29/18
**true [1]**   41/6
**trutanich [1]**   2/14
**try [7]**   5/18 8/14 9/19 14/4 32/8 35/7 37/2
**trying [8]**   6/11 10/7 13/3 17/8 18/24 22/22
  24/14 29/7
**turn [1]**   27/5
**turned [2]**   22/21 35/24
**turning [1]**   8/15
**two [9]**   10/16 18/12 20/18 21/3 21/14 31/4
  31/6 34/11 39/17
**two-pronged [1]**   31/6
**type [2]**   6/18 34/3
**typically [1]**   10/3

**U**

**U.S [2]**   1/3 1/23
**ultimate [1]**   7/15
**unavoidably [1]**   19/14
**unaware [1]**   17/25
**under [7]**   13/10 26/4 26/7 28/1 29/2 29/18
  29/21
**under-seal [1]**   29/21
**underestimated [1]**   27/6
**underlying [7]**   7/24 9/4 11/15 12/4 12/14
  25/11 34/14
**understand [8]**   3/15 9/13 10/25 18/6 24/16
  24/16 26/17 30/3
**understanding [1]**   13/9
**unfair [1]**   36/21
**Unfortunately [2]**   4/11 29/4

**unfounded [1]**   8/25
**united [1]**   37/6
**UNITED [3]**   1/1 41/6 41/10
**unless [1]**   37/3
**unraveling [1]**   22/16
**until [6]**   14/18 17/11 30/25 35/10 35/11
  37/2
**unusual [2]**   3/14 20/9
**up [12]**   6/10 8/12 8/24 9/24 10/14 10/17
  13/19 17/9 18/3 19/1 24/5 35/21
**upcoming [1]**   25/10
**upon [4]**   4/15 5/22 5/23 12/1
**us [4]**   12/6 13/13 18/15 39/12
**use [3]**   5/15 6/17 7/14
**used [1]**   31/18
**using [1]**   7/9

**V**

**value [1]**   35/18
**Varat [1]**   21/11
**various [1]**   17/9
**versus [2]**   3/5 33/3
**very [10]**   7/8 7/23 9/4 23/17 31/24 31/24
  31/25 33/7 33/10 33/18
**VICKI [2]**   2/5 3/7
**view [1]**   26/20
**violated [1]**   36/10
**violation [1]**   36/9
**violations [2]**   25/25 27/1
**violence [1]**   19/22
**visibility [1]**   21/13
**volunteering [1]**   30/6

**W**

**wait [1]**   17/12
**want [20]**   3/17 6/17 9/22 9/24 10/6 16/16
  25/24 25/24 26/21 29/17 30/4 30/5 30/14
  32/24 37/2 38/2 38/4 38/23 39/8 39/11
**wanted [7]**   4/2 4/20 5/25 6/4 16/11 18/2
  29/3
**warrant [1]**   30/18
**was [87]**
**wasn't [6]**   6/1 6/12 18/24 26/9 26/16 33/23
**watermark [1]**   29/20
**wavy [1]**   23/9
**way [16]**   4/15 8/3 10/3 10/23 14/3 18/6 18/8
  18/9 21/18 25/4 27/4 29/24 29/24 34/18
  35/24 38/15
**ways [3]**   7/16 20/8 20/22
**we [76]**
**we're [7]**   4/3 16/3 27/12 27/18 27/23 27/24
  33/10
**we've [4]**   5/9 7/23 27/3 27/17
**weather [2]**   21/13 21/18
**week [3]**   20/14 30/1 30/10
**weeks [2]**   17/4 17/9
**well [31]**   3/23 4/1 4/22 6/6 11/2 11/22
  11/24 12/5 13/8 13/13 14/25 15/3 15/24 16/3
  16/7 16/19 17/7 18/13 18/15 19/12 20/6
  20/11 27/22 28/19 35/3 37/16 37/20 37/25
  38/1 38/20 38/23
**went [2]**   22/20 31/21
**were [25]**   4/25 5/24 6/10 10/13 11/11 12/15
  13/14 14/8 14/12 15/16 15/19 16/1 16/18
  18/23 20/14 22/18 23/3 23/5 27/10 27/16
  29/2 31/4 33/25 34/3 36/10
**weren't [2]**   8/6 37/20
**WESTERN [1]**   1/2
**what [80]**
**what's [3]**   12/24 25/3 28/5
**whatever [3]**   8/25 11/8 11/25 19/18 34/13
**when [5]**   7/16 15/19 17/2 29/6 31/20
**where [6]**   4/18 5/11 21/20 33/19 36/17 39/16

**W**

**whether [6]**  11/12 11/18 14/21 16/16 18/2
31/9
**which [16]**  4/6 5/8 5/17 8/17 9/7 10/1 10/11
12/17 13/25 20/3 27/17 29/18 30/13 31/6
32/11 35/21
**who [14]**  3/16 3/19 12/13 19/5 20/15 20/25
22/20 22/20 23/22 24/2 24/3 33/14 36/24
37/23
**whoever [2]**  3/18 36/3
**whole [2]**  6/1 10/20
**why [8]**  6/6 17/25 30/6 30/14 32/22 32/22
32/23 32/25
**will [33]**  9/7 13/18 13/19 14/1 14/15 15/1
15/4 15/6 15/8 15/11 16/6 17/12 18/4 24/17
25/10 30/10 30/24 31/17 31/19 31/19 31/23
32/1 32/7 32/11 35/12 35/13 36/16 36/23
37/13 38/13 39/12 39/23 39/24
**William [1]**  2/4
**Wilshire [1]**  2/9
**win [1]**  33/9
**withheld [2]**  11/9 11/10
**within [3]**  9/20 20/10 33/6
**without [5]**  9/10 9/20 27/8 34/6 35/9
**witness [5]**  19/18 20/22 20/24 23/15 23/17
**witnesses [4]**  10/13 20/15 20/16 20/18
**Woehrle [3]**  36/25 37/4 37/23
**woman [1]**  19/19
**won't [4]**  26/15 29/23 31/24 32/3
**word [2]**  7/21 8/18
**word-of-mouth [1]**  7/21
**words [4]**  13/15 29/13 34/15 34/18
**work [7]**  20/8 28/2 28/9 30/16 30/20 33/14
38/7
**Working [1]**  8/4
**worth [1]**  33/5
**would [51]**
**wouldn't [3]**  4/2 14/17 16/12
**wound [1]**  10/17
**writes [1]**  24/8
**writing [3]**  8/6 28/13 29/23
**written [6]**  8/24 22/2 22/5 22/7 29/25 36/11
**wrong [1]**  34/12
**wrote [1]**  24/4
**www.cindynirenberg.com [1]**  1/25

**X**

**Xerox [1]**  17/15

**Y**

**yeah [10]**  5/14 7/5 7/12 9/13 10/25 13/8
13/10 27/9 28/11 36/16
**year [1]**  13/15
**years [2]**  22/1 22/3
**Yes [14]**  8/20 13/7 13/21 15/8 17/19 21/12
25/13 25/14 25/15 25/17 26/2 26/5 26/24
28/7
**yet [1]**  35/10
**you [156]**
**you're [10]**  3/17 3/25 4/1 8/5 8/19 9/18
9/24 18/8 24/12 35/5
**you've [2]**  14/22 19/4
**your [34]**  3/6 3/20 4/23 9/10 9/25 10/4 12/7
12/22 13/21 14/22 18/6 18/7 19/10 20/15
25/9 28/5 28/9 28/12 28/19 32/7 33/15 33/16
34/7 35/3 35/12 36/2 36/3 36/19 37/22 38/12
38/17 40/2 40/3 40/4
**yours [1]**  16/17

**Z**

**Zarefsky [2]**  8/13 8/23
**Zarefsky's [1]**  8/8