1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3        HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                      – – –

5

6

7                                    )
   BRUCE LISKER,                     )
8                                    )
                      PLAINTIFF,     )
9                                    )
           vs.                       ) No. CV09-9374-AHM(AJWx)
10                                   )
   CITY OF LOS ANGELES, ET AL.,      )
11                                   )
                      DEFENDANTS.    )
12  _____ )

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              LOS ANGELES, CALIFORNIA

17            MONDAY, DECEMBER 12, 2011

18                  11:10 A.M.

19

20

21

22     _____

23        CINDY L. NIRENBERG, CSR 5059, FCRR
            U.S. Official Court Reporter
24            312 North Spring Street
           Los Angeles, California 90012
25              *www.cindynirenberg.com*

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:
                          NASATIR HIRSCH PODBERESKY KHERO & GENEGO
 3                        BY: WILLIAM J. GENEGO, JR.,
                              ATTORNEY AT LAW
 4                            VICKI I. PODBERESKY,
                              ATTORNEY AT LAW
 5                        2115 MAIN STREET
                          SANTA MONICA, CA 90405
 6                        310-399-3259

 7
                          LITT ESTUAR & KITSON
 8                        BY: BARRETT S. LITT, ATTORNEY AT LAW
                          1055 WILSHIRE BOULEVARD
 9                        SUITE 1880
                          LOS ANGELES, CA 90017
10                        213-386-3114

11

12
      FOR THE DEFENDANTS:
13                        OFFICE OF THE LOS ANGELES CITY ATTORNEY
                          CARMEN A. TRUTANICH, CITY ATTORNEY
14                        BY: CHRISTIAN R. BOJORQUEZ,
                              DEPUTY CITY ATTORNEY
15                        200 NORTH MAIN STREET
                          6TH FLOOR
16                        LOS ANGELES, CA 90012
                          213-978-7023
17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1                           I N D E X

2

3        *COMMENTS BY:*                    *PAGE*

4        MR. GENEGO                         5

5        MR. BOJORQUEZ                      7

6        MR. GENEGO                        13

7        MR. BOJORQUEZ                     16

8        MR. GENEGO                        33

9        MR. LITT                         43

10       MR. BOJORQUEZ                     53

11

12

13       MOTION IN LIMINE NO. 1 – GRANTED 42

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 12, 2011

 2                           11:10 A.M.

 3                           -  -  -  -  -

 4        THE CLERK:  Calling Item Number 1, CV09-9374, Bruce

 5  Lisker versus City of Los Angeles, et al.

 6        Counsel, state your appearances, please.

 7        MR. GENEGO:  Good morning, Your Honor.  Bill Genego

 8  on behalf of Mr. Lisker.

 9        THE COURT:  Good morning.

10        MR. LITT:  Good morning, Your Honor.  Barry Litt on

11  behalf of Mr. Lisker.

12        THE COURT:  Good morning.

13        MS. PODBERESKY:  Good morning, Your Honor.  Vicki

14  Podberesky on behalf of Mr. Lisker.

15        THE COURT:  Good morning to you.

16        MR. BOJORQUEZ:  And good morning, Your Honor.

17  Christian Bojorquez on behalf of the defendants in this matter.

18        THE COURT:  All right.  And good morning to you and

19  you all may be seated.

20        We're here to rule on motions in limine 1 and 2 that

21  the plaintiff has filed, and I've devoted a considerable effort

22  to reviewing those motions and concluded that in some respects,

23  the real crux of the decision is dependent on issues of case

24  management more than on rules of evidence.

25        I'll explain why I say that and how I think and what
```

```
 1   I think the proper ruling will be a little bit later, but right

 2   now I want to review -- given the guidance I've given you about

 3   my take on this being issues of management and the like, I want

 4   to ask some questions about where things stand and where things

 5   are headed.

 6          So go to the lectern -- will you be arguing, Mr.

 7   Genego?

 8          MR. GENEGO:  We divide our responsibilities for the

 9   motions.  I was going to do Number 1 and Number 2, but if there

10   are issues of case management, I think I can address them.

11          THE COURT:  Please do by going to the lectern.

12          At the status conference in September, on September

13   23rd, I directed the parties to start the process of compiling

14   a stipulation that would provide a procedural summary or

15   background that would be ultimately marked as Court Exhibit A

16   and that would be used to provide the necessary background,

17   context and information to the prospective jurors.

18          Have you done that?

19          MR. GENEGO:  I have not completed that task, Your

20   Honor.  I do expect to complete it this week.  I've made

21   substantial progress.  I have shown it to Ms. Podberesky and

22   Mr. Litt, and I do expect I will complete it by this week, but

23   I have not done that yet.

24          THE COURT:  And so you haven't submitted anything in

25   draft form even to Mr. Bojorquez?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. GENEGO:  No.

 2              THE COURT:  What are you using, and in particular to

 3    what extent, if any, are you using the findings that Judge

 4    Zarefsky made in the two decisions that he prepared that were

 5    adopted by Judge Phillips?

 6              MR. GENEGO:  We're using that as part of a framework

 7    for the summary of facts, but we have not sought -- and I do

 8    not believe we intend to seek to introduce those findings as

 9    having any preclusive effect.

10              THE COURT:  Say that again.  I didn't follow that.

11              MR. GENEGO:  We used the judge's opinion as a

12    framework for part of the Statement of Facts, but we are not

13    asking --

14              THE COURT:  That they be binding?  You are not

15    treating them as collateral estoppel?

16              MR. GENEGO:  That's exactly right.

17              THE COURT:  And you're not doing that because these

18    defendants, the two detectives, were not parties to that

19    proceeding?

20              MR. GENEGO:  That's correct.

21              THE COURT:  All right.  The next question is the

22    question that I want to direct to you, Mr. Bojorquez -- and

23    then I will get back to you, Mr. Genego -- and that is under

24    the current framework that I described and discussed in my

25    August -- I think it's the August 11th order, and in reference
```

1    to what you said in your opposition to these motions, what is

2    the new evidence that you intend to introduce to show actual

3    guilt at the appropriate phase, which currently is set to be

4    Phase 2?

5            MR. BOJORQUEZ:  Yes, Your Honor.

6            THE COURT:  What -- in other words, beyond what was

7    introduced at the trial.

8            MR. BOJORQUEZ:  Well, I think, without going into

9    specific details of what our theory is in the case, I think

10   there have been some things that have been brought to light

11   which may not have been utilized -- or the theory may have not

12   been utilized by the district attorney at the time of the

13   underlying criminal trial back in 1985 -- that our individual

14   defendants at the time that they made a decision and

15   determination to arrest Mr. Lisker for the underlying murder

16   are many things that the prosecutor never even thought of.  And

17   I can just give you some examples.

18           THE COURT:  Please do.

19           MR. BOJORQUEZ:  There is a big issue regarding the

20   credibility regarding what could be seen and what could not be

21   seen from the rear of the house.

22           THE COURT:  I understand that.

23           MR. BOJORQUEZ:  Now, the prosecution made a big deal

24   out of that, but that wasn't the most significant thing.  For

25   example, for Detective Monsue, the underlying interview that he

1    had taken of Mr. Lisker immediately after the underlying

2    incident was tape-recorded.  There was an interview.

3            During that particular time of the interview, in the

4    manner in which Mr. Lisker presented himself at the time of the

5    interview -- in the manner that he answered certain questions,

6    certain responses to certain questions, his demeanor during

7    that time frame was something that for Detective Monsue was

8    significant in shedding light and reason and belief based upon

9    the totality of the circumstances that he believed that Mr.

10   Lisker had involvement and was implicated in the underlying

11   murder.

12           Another issue that was never really addressed was the

13   911 communication call.  At some point, Mr. Lister had

14   contacted -- and let me withdraw and rephrase, Your Honor.  It

15   was not a 911 at the time.  It was just a call to the police.

16   They didn't have 911 back then.  But the call was

17   tape-recorded.

18           And the initial call came in, which went -- I believe

19   goes to the fire department and then gets routed to the police

20   department.  And, in fact, I think at that time Mr. Lisker gets

21   on.  There is definitely some demeanor showing that he is

22   excited, that he is upset, those type of things.

23           He hangs the phone up, and then approximately a few

24   minutes later, there are some questions that the fire

25   department was interested in as far as the perspective of if

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  the potential murderer is still in the house, where is --

2            THE COURT:  You said the "fire department."  Did you

3  mean the police department?

4            MR. BOJORQUEZ:  No.  This is the fire department,

5  Your Honor.  They are sending the ambulance.

6            And the ambulance -- the people who are the

7  paramedics, who are arriving, contact the dispatch to say, "Can

8  we have some more information?  We're going in with our eyes

9  closed.  Is the police department there?  Is there any

10 information about whether the murderer -- or anybody is holding

11 the murderer?  Has anybody caught them or is that an unknown?"

12           And so the dispatch decides to call back the number

13 of Mr. Lisker's house.  When the phone initially rings, Mr.

14 Lisker answers the phone, but instead of being in an emotional,

15 traumatic state, it's more kind of like a very matter of fact

16 answering the phone of, "Hello."

17           And then there's some information saying, "Yes.  This

18 is the fire department."

19           He's like, "Okay.  Fire department?"

20           And then at some point there's a question where the

21 dispatch says, "Yeah.  I mean, did you call about somebody

22 being stabbed at your house?"

23           And then immediately the tyrant and the demeanor

24 changed from the perspective of Mr. Lisker on the actual audio

25 tape.

```
 1          THE COURT:  So at the upcoming trial, would that --
 2   I'm not trying to pin you down.
 3          MR. BOJORQUEZ:  Sure.
 4          THE COURT:  I'm not trying to elicit discovery on
 5   behalf of either side that hasn't been provided or sought even,
 6   but I just want to understand where we are heading here.
 7          At the trial that's upcoming in this courtroom, I
 8   take it from what you are explaining to me now, Mr. Bojorquez,
 9   that Monsue would say he relied on these things, but you might
10   also be in a position to put on the dispatcher who made that
11   second call to follow up on the fire department's inquiry?
12          MR. BOJORQUEZ:  Yes, Your Honor.  I mean, that's --
13   in that particular area, I mean, that's something that would
14   potentially happen, yes.
15          I mean, the crux of it is is if we are looking at the
16   case from the perspective of what was tried, as the Court has
17   indicated, that was something that exists but wasn't argued as
18   vehemently.
19          I think there are some other things, also, Your
20   Honor, with respect to some experts that, you know, obviously
21   weren't used at the time of the underlying criminal trial
22   because neither party really made an issue of them.  I mean,
23   there's a lot of experts that are out there that would be able
24   to testify to certain things that --
25          THE COURT:  Experts who conducted some kind of
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    inquiry or wrote some kind of report but were not actually

2    called to trial or experts that would be newly retained?

3          MR. BOJORQUEZ:  Experts that would be newly retained.

4    I mean, experts -- because that's the crux of a little bit of

5    the case, which I think goes into some of the other motions in

6    limine, that there was a significant issue on the defendants'

7    part of ineffective assistance of counsel.

8          The case, as we see it, Your Honor, is not a case of

9    the fact that there was deliberately falsified testimony or

10   some type of evidence withheld, but rather that all the

11   documentation has been and was provided and disclosed to the

12   defense.  But it was what the defense did with that information

13   that ultimately led to the violation of Mr. Lisker's due

14   process rights.

15         THE COURT:  Okay.  Let's pick up on that.

16         MR. BOJORQUEZ:  Sure.

17         THE COURT:  And please listen carefully, because

18   there is no doubt that Judge Zarefsky made findings -- and I

19   think they were amply supported -- about Mulcahey's

20   deficiencies.

21         In this motion relating now to the first one,

22   relating to Ryan, it's my current understanding that some of

23   the evidence that the plaintiff wants to put on in the upcoming

24   trial and that is the specified subject of this motion was not

25   disclosed to Mulcahey.

```
 1            And putting aside for a moment whether there is any

 2   legitimacy to your legal theory that if it was disclosed to the

 3   lawyer, then it's irrelevant to pursue on claims against Monsue

 4   or the other detective, I really wonder whether the very basis

 5   for your sweeping assertion that this is irrelevant, that it's

 6   not probative, that it doesn't reflect any invidious intent on

 7   behalf of your clients because it was all out there back in '83

 8   and back in '85, I wonder if that's true.

 9            So I'm going to ask you -- and it may be hard for you

10   because you didn't see these questions coming.  And I can

11   understand why you wouldn't have all of the underlying evidence

12   right at your fingertips, but are you aware of any evidence

13   that Mulcahey was told what Robert Lisker, this plaintiff's

14   father, had said to Monsue and Langdon about Ryan being at the

15   house the day before the murder?

16            MR. BOJORQUEZ:  My understanding is any of the

17   interviews had notes, and those notes would have been provided

18   to defense counsel.

19            Obviously, I think the other issue about it is that

20   Mr. Lisker, Robert Lisker Sr., was, you know, basically working

21   with Mulcahey.  I mean, they were working in tandem.

22            THE COURT:  Now, we are now just asking what came --

23   what your clients or the prosecutive and investigative team

24   made available to Mulcahey, and are you telling me for sure

25   that the notes of Monsue and Langdon's interview of Lisker were
```

1  turned over?

2          MR. BOJORQUEZ:  When we say Lisker, are we talking

3  about the father, Robert Lisker?

4          THE COURT:  Robert Lisker.

5          MR. BOJORQUEZ:  I believe they were.  I wouldn't want

6  to represent at this time.  As the Court had correctly stated,

7  I believe that any interviews -- my understanding, Your Honor,

8  is that any interviews that -- there's not an issue here that

9  there were any interviews of any individual that were not

10  turned over.

11          THE COURT:  All right.  Well, maybe I can shortcut

12  this.

13          Mr. -- you can stay where you are, Mr. Bojorquez,

14  because I am not finished with you.

15          But you can answer me from counsel table, although

16  I'd appreciate it if you rise, Mr. Genego.

17          The following exhibits were attached to Mr. Litt's

18  declaration in support of specified areas that you want to get

19  in on this Ryan issue.

20          MR. GENEGO:  Correct.

21          THE COURT:  Exhibit 34 was relating to Robert Lisker.

22          Turned over to Mulcahey or not?

23          MR. GENEGO:  Your Honor, that was included in the

24  murder book, and our understanding is that Mr. Mulcahey had

25  that murder book, so the answer to that would be yes.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            THE COURT:  And that's true with the notes --
 2   Monsue's notes of the Lisker interview, Exhibit 37?
 3            MR. GENEGO:  That was also in the murder book, yes,
 4   that's our understanding.
 5            THE COURT:  And Monsue's notes of the interview with
 6   Linda Cohen, Exhibit 38?
 7            MR. GENEGO:  Correct.
 8            THE COURT:  And Monsue's notes of the interview with
 9   Ryan's father, Exhibit 40?
10            MR. GENEGO:  Yes.
11            THE COURT:  Monsue's handwritten notes of the
12   interview with Zeilan --
13            MR. GENEGO:  Yes.
14            THE COURT:  -- or Zeilan, 42?
15            MR. GENEGO:  Yes.
16            THE COURT:  Landgren's notes of the phone call
17   with Langford, Exhibit 79?
18            MR. GENEGO:  That is not a document that was included
19   in the murder book that we were provided, so that one, I don't
20   think that we can say that that was turned over.
21            Our position would be that that was not included in
22   the murder book, and unless and until it's documented that it
23   was, our position would be that that was not included.
24            THE COURT:  Exhibit 43, Langford's notes of the
25   interview with Ryan?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. GENEGO:  That was included in the murder book,

 2    yes.

 3              THE COURT:  Exhibit 9, Monsue's notes from the murder

 4    book?

 5              MR. GENEGO:  That was included.  That was turned

 6    over.

 7              THE COURT:  The motel registration card, Exhibit 44?

 8              MR. GENEGO:  That was also included.

 9              THE COURT:  The transcript of Monsue's interview with

10    Ryan?

11              MR. GENEGO:  That's not part of the murder book, but

12    our understanding is that that was provided to Mr. Mulcahey.

13              THE COURT:  Is Mulcahey around to testify at this

14    upcoming trial?

15              MR. GENEGO:  He testified at -- the answer is yes.

16              THE COURT:  I know he testified before Judge

17    Zarefsky.

18              MR. GENEGO:  My understanding is that he is still a

19    commissioner and --

20              THE COURT:  He's a commissioner?

21              MR. GENEGO:  Correct.

22              THE COURT:  In the L.A. Superior Court?

23              MR. GENEGO:  Correct.

24              THE COURT:  And one thing that I am pretty sure you

25    are going to say was not turned over was evidence of the armed
```

1    robbery conviction in Ventura County.

2            MR. GENEGO:  That is correct.  In fact, there is a

3    notation in the murder book that said "no record."  So there

4    was an affirmative statement that he didn't have a record in

5    addition to it not being turned over.

6            THE COURT:  Okay.  Well, what Mr. Genego has just

7    asserted, Mr. Bojorquez, is that two of the specified items

8    were not even disclosed to Mulcahey back in the day:

9    Landgren's notes of the phone call, they weren't in the murder

10   book, and the evidence about the Ventura County conviction.

11           So if your principal basis for trying to persuade me

12   that all the other evidence -- all this evidence, including the

13   other evidence that was part of the murder book, is not

14   probative, shouldn't be permitted to be admitted in the

15   upcoming trial, how do you deal with those two exceptions?

16   What's the basis for excluding those?

17           MR. BOJORQUEZ:  Well, Your Honor, I believe that with

18   respect to the notes -- as counsel stated, he wasn't exactly

19   sure.  I believe that, Number 1, we'd have to look at the

20   significance -- I believe it was Number 44 that the Court had

21   inquired about -- and see what significance does this have; is

22   there anything within this particular Exhibit 44, which appears

23   to be Detective Landgren's notes, that somehow wasn't

24   incorporated into a report, somehow was left out.  What is the

25   significance of that piece of evidence to the information

1    regarding John Michael Ryan is Number 1.

2            And I believe that these notes are incorporated into

3    a summary of reports that are contained within the --

4            THE COURT:  You are talking about Exhibit 79?

5            MR. BOJORQUEZ:  Let me see, Your Honor.

6            THE COURT:  The Landgren notes?  Is that what you are

7    looking at now?

8            MR. BOJORQUEZ:  I was looking at -- oh, I'm sorry.

9    I'm referring to -- it's written Exhibit 44, but, yes, correct,

10   Your Honor, it's Exhibit 79 in a Bates stamp.

11           THE COURT:  And you think it was turned over?

12           MR. BOJORQUEZ:  I have a belief that it was.  And my

13   other argument, though, would be in the event that it wasn't,

14   it was incorporated into the murder book, and so this

15   information --

16           THE COURT:  Incorporated how?

17           MR. BOJORQUEZ:  Into a report that would have been

18   provided.

19           THE COURT:  I see.

20           MR. BOJORQUEZ:  So that's the information here.

21           I mean, if we look at it -- you know, this particular

22   information in looking at it, this was all information that was

23   presented in reports by Detective Monsue, because I'm looking

24   at it very quickly and I can see it.

25           I think the other issue becomes the fact that -- as

1    far as -- so that's as to the one, Exhibit 79.

2         And I think you'd have to look at and see what

3    information within this document is nowhere -- or was, in fact,

4    not disclosed and determine the value of that to determine

5    whether or not it really makes a difference one way or another

6    if it's so -- something of significance that it would have made

7    a difference regarding whether the Ryan information could have

8    been potentially admitted at the underlying criminal trial.

9         With respect to the additional information of the

10   prior Ventura County -- I guess it was an assault.  That

11   particular information -- and it's documented that when

12   Detective Monsue ran the criminal rap sheet for John Michael

13   Ryan, he had one birthdate off.  So when he ran that

14   information, it came back with no information on the basis that

15   the birthdate was not the correct date.

16        THE COURT:  Okay.  And let's step back a minute.

17        I think that goes to the weight of whether or not

18   that's probative in favor of the position that the plaintiff is

19   asserting here.

20        But putting aside the distinction between the

21   admissibility and weight, you tell me in plain language, common

22   sense terms, if you can, why there is a fundamental reason why

23   something that was disclosed and that can fairly and properly

24   be argued by you, if I admit it, to counter the plaintiff's

25   view that your clients proceeded with a single-minded objective

1    to convict him and utterly to disregard and intentionally turn

2    away from exonerating evidence.

3         You could say, "That's BS.  They turned it over.

4    Their state of mind was benign and neutral and professional and

5    fine."  All of that would be something you could certainly

6    point to at the trial.

7         But you want to keep that out altogether because you

8    think the very fact that it was turned over precludes somebody

9    from finding that there was an invidious intent, and I need to

10   understand how that can be.

11        Suppose, for example, Mr. Bojorquez, that -- and

12   there won't be any dispute.  Mr. Genego just confirmed this

13   stuff was turned over to Mulcahey.

14        Suppose there was a basis for the plaintiff to try to

15   prove or argue that the very fact that it was turned over,

16   under the circumstances in which it was turned over, was

17   designed to provide a sanitized record that would conceal that

18   single-minded attempt to frame or convict Lisker.

19        Sort of like a document dump in a civil litigation

20   case where the party that's required to produce information

21   does produce some of the most incriminating or best evidence

22   for the other side but buries it, taking advantage of the

23   weaker resources of the other side to sift through this dump of

24   documents -- you've heard this phrase.  You are an experienced

25   litigator, you know what I am referring to -- and then argues,

1    "Look, we didn't conceal anything because we turned it over."

2              Or suppose the theory of the plaintiff's case was the

3    defense knew -- the prosecution knew -- and I know you weren't

4    the prosecutor, so I'm not attributing this to you; don't take

5    it personally -- but the prosecution knew that the lawyer was

6    lousy or lazy or burdened or dealing with a disastrous personal

7    crisis at home, or for some other reason, and had no

8    compunction of letting him know because they knew that it

9    wasn't going to be followed up on.

10             Why is that not a permissible basis to put before the

11   jury, to let the jury decide what was the intent and the state

12   of mind of your clients?

13             MR. BOJORQUEZ:  Well, I think -- it's a twofold

14   answer.  I think the initial portion is this wasn't an

15   overwhelming information --

16             THE COURT:  It wasn't a document dump.

17             MR. BOJORQUEZ:  Correct.

18             THE COURT:  I grant you that.  It was a discrete

19   amount of material, very limited, straightforward case, not

20   complicated.

21             MR. BOJORQUEZ:  And none of it was doctored or given

22   in a certain way that was trying to hide what the actual

23   documents spoke for.

24             Then I think the other issue becomes we start getting

25   into an area where we're putting the detectives who are now

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    defendants in this case into the role of the prosecutor and the

 2    judge who is sitting at the case --

 3              THE COURT:  How so?  How are we doing that?

 4              MR. BOJORQUEZ:  Well, because the only obligation

 5    that the detectives have at the time is to basically go about

 6    providing the information for the interviews that they conduct.

 7              At this point in the time of the actual prosecution,

 8    Mr. Lisker had already been arrested.

 9              A few days later, he then called Detective Monsue to

10    meet with him and had written a letter regarding the fact that

11    he believed that he had information about who potentially was

12    involved in the actual murder.

13              THE COURT:  Right.  That was the 30th.

14              MR. BOJORQUEZ:  Correct.  And so at that point

15    Detective Monsue went through the process of conducting the

16    interview.

17              THE COURT:  Or 23rd, whatever it was.  Go ahead.

18              MR. BOJORQUEZ:  And if you look at it, when they

19    located and found him, he was in Mississippi, meaning John

20    Michael Ryan.

21              At that point they ask Detective Langford to

22    basically conduct the interview to determine what information

23    they had.

24              Now, at that point, Detective Monsue did what any

25    detective would do.  He ended up taking the information that
```

1    Langford had provided him, and he actually then went to follow

2    up at the motel and check the alibi of -- or the information

3    provided by Mr. Ryan.

4            So he's gone to do that.  I mean, the information --

5    a lot of the information they're relying upon regarding John

6    Michael Ryan and the inconsistencies was information that was

7    taken and determined by Detective Monsue.

8            Detective Monsue is the one who went to that motel.

9    He is the one that basically found out that -- although John

10   Michael Ryan had been allegedly in the location and checked in

11   at 10 o'clock, it was Monsue who was the one who actually

12   determined that he didn't check in until in the afternoon at

13   3:00.

14           And the significance for many purposes is, Number 1,

15   because there's no documentation to support that.  That was

16   Detective Monsue who provided that information.

17           If Detective Monsue was attempting to try to somehow

18   hide information or try to perjure himself or try to help John

19   Michael Ryan and focus his attention on the plaintiff in this

20   particular matter, he didn't have to say that.  He didn't have

21   to say that there was an inconsistency about the 10 o'clock and

22   3 o'clock.

23           So that was information that Detective Monsue --

24   there is no actual document that actually reveals that, Your

25   Honor.  That's just Monsue himself, who in the interview when

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    he went to question John Michael Ryan personally, he brought

2    that out in order to try to get him to -- you know, as a ruse

3    to try to see whether or not you are actually lying and you had

4    done that.  So all the --

5            THE COURT:  You know, the -- I think the fact that

6    this information was turned over to the lawyer at the time is

7    undoubtedly helpful to your clients.  The question is whether

8    or not the information --

9            MR. BOJORQUEZ:  And I apologize, Your Honor.  I will

10   get to that portion.  So what I was --

11           THE COURT:  -- should be considered by the jury,

12   because along with the factors that you are pointing to, which

13   is if Monsue was out to get this defendant -- the then

14   defendant, the plaintiff now, no matter what, come hell or high

15   water, he was going to hang or fry Lisker, then he wouldn't

16   have done some of these things because if used properly or

17   understood fully, it could only help Lisker at the time.

18           But then there's the fact that there are at least two

19   other pieces of evidence that I'm aware of -- there are

20   probably more, but I may not be remembering off the top of my

21   cuff (sic) -- that suggests something 180 degrees the opposite,

22   which is the testimony about the weather conditions that Monsue

23   gave and the letter that he wrote to the Board of Parole.

24           I realize that the latter comes a long time later,

25   but they -- I think you would acknowledge -- would be relevant,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    probative, admissible evidence of his state of mind.

2            You are not disputing that, are you?

3            MR. BOJORQUEZ:  I would dispute the issue regarding

4    the letter on the basis that it was so far beyond the time

5    period, that typical information would be somehow relevant to

6    somebody's state of mind back in 1985, plus I don't believe

7    it's conclusive that it was a lie or it was untrue.

8            THE COURT:  First of all, I wasn't suggesting

9    anything as being conclusive.  The question I am trying to

10   answer is what should be placed before the jury, may be placed

11   before the jury, and let them decide what it proves or fails to

12   prove.

13           I don't buy the notion at all -- I will just let you

14   know right up front -- that something that was done in 1998

15   cannot under any circumstances be probative of somebody's state

16   of mind in '83 or '85, particularly under these circumstances,

17   so on that I don't agree with you at all.

18           MR. BOJORQUEZ:  And as far as the other issue

19   regarding the portion of what you could or could not see,

20   again, I don't know exactly how -- you know, where that is

21   going to lie in the evidentiary aspect, because for purposes of

22   just generally asking me if it would be relevant, I mean, of

23   course -- obviously, I wouldn't sit here and say that it's not

24   relevant because I think that there's arguments on both sides.

25           You know, there's experts on both sides who are

1    saying that, ultimately, you could have seen information, and

2    the weather was, in fact -- could produce the glare.  And then

3    they have an expert on the other side saying, "Well, it

4    wouldn't have produced a glare, at least not the glare he's

5    talking about."

6            So that's kind of like it's a he-said, she-said type

7    of situation that, again -- I mean, you know, the only concern

8    that I have regarding the whole re-creation investigation

9    process would be outside the realms of the motion in limine

10   meaning that that was done for purposes of presentation at

11   trial which Monsue would be entitled to absolute immunity under

12   the fact that he was doing that for purposes of trial

13   presentation purposes as opposed to it wasn't part of his

14   investigation.

15           THE COURT:  Monsue is not a prosecutor.

16           MR. BOJORQUEZ:  I agree with that, but --

17           THE COURT:  There's no such concept of absolute

18   immunity that he would be able to claim.

19           MR. BOJORQUEZ:  Well, Your Honor, I mean, that's

20   something that we're going to probably brief.  But, I mean,

21   there is a concept of --

22           THE COURT:  Well, I want to find out before this

23   hearing ends just what is coming down the road for me.

24           But let me ask you this question.

25           To what extent would your opposition to this motion

```
 1    in limine relating to the testimony about Ryan be affected, or

 2    maybe even negated, if I change my order about the sequence of

 3    the trial and allow you fully and fairly to put on, in the same

 4    phase that this evidence was supposedly coming in on the state

 5    of mind of your clients, to come in on the question of guilt or

 6    innocence?  And you could put in all this new evidence that you

 7    told me about, the tape-recorded interview, the --

 8              MR. BOJORQUEZ:  And there's more than that, Your

 9    Honor.  I just --

10              THE COURT:  I don't want you to think I'm boxing you

11    in.  I told you I wouldn't and I'm not.  But if it all comes

12    out at the same time, the plaintiff is out there trying to

13    prove that your clients were utterly indifferent and recklessly

14    in disregard of clear evidence that somebody else did it, and

15    you want to say, "Not so, and by the way, we can prove that

16    it's not so because I have a lot of evidence.  Not even all of

17    it came out of the trial.  This is the guy who did it, and they

18    believed it in good faith and they still do."

19              If that's the way this trial goes down, to what

20    extent do you have a basis to oppose admitting the evidence

21    that is the subject of this motion in limine?

22              MR. BOJORQUEZ:  Well, again, the only difference

23    would be -- I mean, that would be great, but the only

24    difference would be that with respect to the John Michael Ryan

25    issue, what I was going to argue to the Court a little further,
```

```
 1    was at some point, once the detective had given all the
 2    information to the prosecutor, everything lied with that
 3    prosecutor at that time, not to mention the fact that defense
 4    counsel could have hired somebody and gone and conducted their
 5    own investigation.
 6              But irrespective of that, the fact that the
 7    prosecutor himself had the information in his hands, it really
 8    wasn't a determination as to whether or not Detective Monsue or
 9    Landgren would have had the ability to have it admissible at
10    trial.
11              That wasn't a decision within their ability.  It
12    wasn't a decision that they had any involvement in.
13              I could see the point of having it admissible, Your
14    Honor, had Detective Monsue at the underlying 401 hearing been
15    brought to court and took the stand --
16              THE COURT:  What's a 401 hearing?
17              MR. BOJORQUEZ:  I'm sorry, 402.  I think it's the
18    relevancy.  I haven't done state prosecutor work for a long
19    time.
20              THE COURT:  Is that referring to a state Penal
21    Code --
22              MR. BOJORQUEZ:  Correct, Your Honor.  I apologize.
23              -- in the underlying criminal trial to challenge the
24    admissibility of the actual John Michael Ryan information.
25              Had Monsue been a witness to that particular hearing
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   and basically took the stand and offered testimony to minimize

2   John Michael Ryan's involvement, and then the Court heard that

3   information, relied upon that information and then made a

4   determination based upon, in portion, Detective Monsue's

5   testimony as to what his belief regarding John Michael Ryan's

6   involvement, I could see that that would be something that

7   Detective Monsue legitimately should be held to question for

8   because he had some purpose and some involvement, and he took

9   that evidence and swayed it into a manner that benefited -- if

10   he was trying to railroad Mr. Lisker at the time of the

11   hearing, which really would have affected whether this

12   information would have come in or not.

13          But that wasn't the case.  What happened was the

14   prosecutor, Mr. Mulcahey, defense counsel for the plaintiff --

15   and the judge had a typical 402 motion hearing in state court,

16   criminal case, to determine whether or not the information had

17   some probative value, just like a 352 analysis.

18          THE COURT:  Okay.  So you are talking -- when you

19   refer to these Penal Code provisions, you are talking to the

20   two rulings that the judge made keeping out the evidence about

21   Ryan?  That's what you are referring to?

22          MR. BOJORQUEZ:  Correct, Your Honor.

23          THE COURT:  What Judge Zarefsky referred to as a

24   supression hearing?

25          MR. BOJORQUEZ:  That's correct, Your Honor.

```
 1                THE COURT:  Okay.

 2                MR. BOJORQUEZ:  And so with that, we just believe

 3     that had Detective Monsue or Landgren testified at the hearing,

 4     I think that plaintiff would have a good position at the time,

 5     but I don't think that happened.

 6                The information was just in a raw form, and I don't

 7     think you can hold Monsue and Landgren responsible or somehow

 8     involved on the basis that they had a certain interpretation of

 9     the particular evidence or they had a certain belief about the

10     particular evidence to sway it one way or another, because

11     there was nothing in the record that demonstrates that they in

12     any way were swaying the evidence one way or another.

13                THE COURT:  That, I don't understand how you can

14     argue.  There was a prosecution team.  The reality, as I really

15     believe it must have been, Mr. Bojorquez, is there's a

16     prosecution team.  Rabachow is the -- or Robachow.  I don't

17     know how to pronounce it.

18                MR. BOJORQUEZ:  Rabachow, I believe, Your Honor.

19                THE COURT:  Rabachow.  Okay.  I don't know him.

20                So he's the prosecutor, and he's telling the judge,

21     "Keep this stuff about Ryan out."

22                Sitting next to him is Monsue, maybe the other guy as

23     well.  And the fact that they want to keep it out, as opposed

24     to letting the jury even consider whether the wrong man was

25     sitting in the dock, is a piece of evidence that I would think
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    the plaintiff will love.

2            You want to posit the professional work of

3    Rabachow --

4            Did I pronounce his name right?

5            MR. BOJORQUEZ:  Yes, you did.

6            THE COURT:  -- of Rabachow, coupled with the ruling

7    of the trial judge, which I really question -- I just find that

8    mind-boggling every time I think about it.

9            You want to have those basically be treated as if

10   they are independent, intervening factors that immunize or

11   exonerate your current clients from any responsibility at all.

12   But that ignores the reality of what was going on at the time

13   in '83 and '85, which is that they are trying to keep out

14   evidence of Ryan.

15           It isn't just that they got evidence and turned it

16   over to Mulcahey.  But Mulcahey in his faltering, incomplete,

17   constitutionally deficient way -- and I'm referring to what

18   Judge Zarefsky found and what Judge Phillips approved --

19   doesn't even appreciate and doesn't even bother telling the

20   judge about all of the other damning evidence -- damning from

21   the point of view of Ryan and your client and Rabachow -- who

22   Zarefsky in other respects, particularly in terms of the shoe

23   print evidence, didn't even know about some of the exonerating

24   evidence -- exonerating to Mr. Lisker and incriminating as to

25   somebody else.  They sit by there and let the judge, for

1   whatever reasons this judge had, proceed down the path of

2   keeping it out, which is what he did.

3         To me, you can argue -- and you will be given every

4   opportunity to argue if it comes in -- that Lisker should be

5   suing his lawyer or he should be suing the district attorney or

6   he should be suing the judge.

7         I mean, we may have a lot of legal instructions and

8   limitations and rulings and the like about who's subject to

9   suit and who isn't, but that doesn't mean it can't be

10  considered.

11        MR. BOJORQUEZ:  Well, Your Honor, I would agree with

12  you in the damage phase, but I don't agree with respect to the

13  underlying liability phase because --

14        THE COURT:  Well, then, let me stop you there --

15        MR. BOJORQUEZ:  Sure.

16        THE COURT:  -- because I owe it to you and I owe it

17  to the lawyers for the plaintiff to say, as I alluded to at the

18  beginning of this hearing, that I have really been thinking

19  through my September -- or August 11th order, or whatever it

20  was, and I don't think it's workable.

21        I don't think we can have three phases, and here's

22  why.  And this will go a long way to addressing your concern.

23        This piece of salami can't be cut so nicely and

24  thinly.  There can't be and would never be a clear distinction

25  between Phase 1 and Phase 2.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              There is going to be overlapping evidence once you
 2    get to Phase 2, assuming the verdict was for plaintiff, whether
 3    special findings were for plaintiff in Phase 1.
 4              There is going to be a huge problem that I'm going to
 5    have dealing with lawyers on both sides -- you are all
 6    proceeding in good faith.  I like the way you are handling it,
 7    both sides.  It's a pleasure to be here with the lawyers.  But
 8    you are going to have good faith disputes about what is
 9    admissible in Phase 1 and what has to be reserved for Phase 2,
10    and I'm not going to be able to know exactly who is going to be
11    asked what question and purport to give or start to give what
12    answer that, if I stuck to the tripartite structure that I came
13    up with, would belong in a different phase.
14              The jury is going to be confused.  The work of the
15    jury is going to be lengthened because they are going to hear
16    more than -- they are going to hear some things more than once
17    in different phases.
18              And as I step back and look at what really -- and I
19    know more about this case than I did in August.  As I step back
20    and look at what is really going on here, it's much simpler
21    than I had originally perceived.
22              The plaintiff wants to prove that he was railroaded.
23    The defense wants to prove that he wasn't railroaded and, in
24    fact, he is the guilty party.
25              The evidence that would establish that he was
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   railroaded includes this evidence about Ryan.

2           And I'm putting aside the issues of Monell for a

3   minute.

4           And the evidence that would prove he wasn't

5   railroaded would be a lot of what you are arguing -- and there

6   is a strong basis for you to argue that, Mr. Bojorquez, about

7   what was turned over anyway to the lawyer -- and the additional

8   evidence that they may not have for sound reasons -- I mean,

9   maybe your clients are going to testify to the truth about

10  these phone calls and the like because they didn't need it;

11  they had such a strong case.  And, boy, they had a pretty good

12  case if there was nobody else who might be the suspect and Ryan

13  was out of the picture.

14          Why can't we do it all in one phase?  Why should I

15  stick to that ruling?

16          And if I don't, then a lot of your concerns, which I

17  understand to be legitimate, or at least in good faith, are

18  alleviated.

19          Mr. Genego?

20          MR. GENEGO:  Thank you, Your Honor.

21          The reason we ask that you not do that is because it

22  really would, I think, impede the jury's ability to make the

23  threshold determination about whether Mr. Lisker's original

24  trial was based and his conviction was based on false evidence.

25          I have an alternative solution, and that's --

1        THE COURT:  Well, wait a second.  Let me just clarify

2    something.

3        MR. GENEGO:  Sure.

4        THE COURT:  You can give me your alternative

5    solution, and I'm not necessarily utterly intent on changing my

6    ruling, but I think I will, because I'm capable -- I think an

7    experienced judge ought to be capable -- of clarifying to the

8    jury what the different burdens of proof are in a single phase.

9        You have a burden of proving by a preponderance that

10   the convictions were procured as a result of these

11   constitutional violations using the framework and the theories

12   of the cases you cite relating to the -- I will call it the

13   railroading nature of what Monsue and Landgren did.

14       And at the outset, the jury will be instructed -- the

15   instructions in this case will not wait until the end of the

16   trial; they are going to be given at the beginning of the

17   trial, and we're going to have to settle them in advance --

18   that at the same time that the defendant has the right to put

19   on evidence or use cross-examination and the like to refute the

20   showing you will make on that burden of proof, the defendant is

21   being given the opportunity to prove not only that there was an

22   absence of bad faith, but, in fact, there was an overwhelming

23   presence of good faith, and he can only do it fully if he

24   proves that your client committed the murder.

25       But he has to prove that beyond a reasonable doubt.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    And we have specified findings, verdict forms, clear

 2    instructions, and let the jury sort it out.  That's what I now

 3    contemplate.

 4              What's your response to that?

 5              MR. GENEGO:  Again, I would still urge the Court not

 6    to reconsider its earlier ruling or consider an alternative for

 7    the following reasons.  A large body of the evidence that they

 8    are going to introduce to try to prove that Mr. Lisker is

 9    guilty are his statements after he was convicted to the parole

10    board and when he went to the youth evaluation.  And I think

11    that while Your Honor would be able to separate out that

12    evidence and understand that they can't consider that when

13    they're considering about whether his trial was fair, that it

14    really will be tough for a lay jury and make it very

15    complicated for them to have to try to separate that out and

16    for them not to be influenced by that.

17              The alternative that I was going to propose, if the

18    Court is considering doing that, is to really just not bring up

19    the Ryan evidence in the first phase.

20              I mean, we wanted to use that for state of mind and

21    to show that they deliberately disregarded the truth.

22              Now, we can leave that for the second phase, if that

23    is what the Court is thinking, and just keep the first phase

24    about the trial evidence itself.

25              And that will be simple, straightforward and it will
```

```
 1   avoid, I think, the unfair potential prejudice to Mr. Lisker
 2   where he is having statements that he made after he was
 3   convicted where he admitted it be used against him in a way
 4   that really will have a potential for serious, serious unfair
 5   prejudice.  And we'll be able to keep the first phase very
 6   short and succinct and just limit it to the evidence that was
 7   introduced at the trial, and we will withdraw the motion about
 8   introducing the Ryan evidence.
 9         THE COURT:  The evidence about the shoe prints and
10   the weather conditions and what else?
11         MR. GENEGO:  There were -- that's -- in large part
12   what they had was no one else was there, and Mr. Lisker lied.
13   And so our effort would be to prove that someone else was
14   there, which is the shoe print evidence, and he didn't lie,
15   which was the sight -- the line of sight and the weather and
16   some of the other physical evidence.
17         That really is what it would come down to, which was
18   largely what the evidentiary hearing was.  It was just limited
19   to those issues.
20         THE COURT:  You mean the evidentiary hearing before
21   Judge Zarefsky?
22         MR. GENEGO:  Correct.
23         THE COURT:  Well, I don't think that's true.  I have
24   now read both of his orders and there was much more than that.
25         The Ryan thing was a huge amount.
```

```
 1            MR. GENEGO:  I'm sorry.  There was the ineffective

 2  assistance of counsel claim about the Ryan evidence, so that

 3  did come in, and that was a large part of certainly the second

 4  hearing.  That's what it was about.

 5            So what I am talking about, though, is that we would

 6  not ask the Court to permit us to introduce the Ryan evidence

 7  in the first phase for the purpose that we were seeking to do

 8  it.  We would just leave that out because it was not introduced

 9  in the trial.

10            We didn't want to introduce it to say to the jury,

11  "And the jury never heard about the Ryan evidence."  That was

12  not what our purpose was.  What we wanted to be able to do --

13  for example, when he interviews Mr. Zealand, Detective Monsue

14  writes down that Mr. Zealand said to him that Ryan pulled a

15  knife on a woman at one of the meetings at the Palmer

16  drug program.  When he prepares the written statement, he

17  leaves that fact out.

18            When he goes to question Ryan, which he waits a month

19  to do after finding out where he is -- when he goes to question

20  Ryan, he asked him about that.

21            He specifically asked him about pulling the knife on

22  the girl at the Palmer drug abuse program, but yet he leaves

23  that -- so that was the reason we wanted to do that, but if the

24  Court is considering bringing everything together --

25            THE COURT:  With all due respect, I don't think your
```

1    comments sufficiently acknowledge what you have to prove.

2                You have to do more than prove that the shoe print

3    evidence was an unreliable basis, and you have to prove more

4    than your client didn't lie, and you have to prove more than

5    that the weather conditions permitted, which is a way of

6    addressing the notion that your client was lying, somebody to

7    see the body inside.

8                You have to prove that those things were part of an

9    intentional or willfully indifferent and intentional disregard

10   of the truth.

11               And so, you know, it seems to me, if I understand

12   what the elements are that you have to prove, if Mr. Bojorquez

13   stipulated to all that you want to prove about the weather

14   conditions and the shoe prints, and that's all you had before

15   the jury, you'd lose.

16               And if I'm wrong about that, then tell me.  But if I

17   am right about that, then I don't see how you can approach this

18   trial by reserving to Phase 2 under the framework I previously

19   came up with this evidence of invidious intent.

20               You also have to prove prejudice.  A Brady violation

21   clearly requires that.

22               Now, I wasn't permitting an ultimate verdict without

23   that coming in.  That was going to be reserved to Phase 2.

24               That was what Mr. Bojorquez was going to establish in

25   Phase 2, that you weren't prejudiced because, however bad the

```
 1    trial was, the guy was guilty anyway -- your client was guilty
 2    anyway.
 3            But that has to come in as part of what you are
 4    proving, and I don't now understand why it can't come in all at
 5    once.  It will be much more comprehensible to the jury and much
 6    easier to manage, and we can try the case in a more efficient
 7    basis.
 8            In addition, I will only note this, I don't buy what
 9    you're saying about the prejudice to Mr. Lisker if Mr.
10    Bojorquez in this single phase about whether or not he did it,
11    putting aside Monell issues for a minute -- I don't buy that
12    you would be prejudiced if Mr. Bojorquez is permitted -- and he
13    would be -- to put in evidence of the confessions.
14            We've got seasoned jurors.  We've got very good
15    lawyers representing Mr. Lisker.
16            Whatever you want to say about the circumstances and
17    the reasons for those confessions, you'll be -- if there is an
18    evidentiary basis for it, you will be permitted to point to it.
19    Again, I think that's something the jury can sort through.
20            MR. GENEGO:  Your Honor, I think that, with all due
21    respect, in addition to the weather evidence and the shoe print
22    evidence, there is an element of the weather evidence which is
23    a line-of-sight evidence, and I think that is extremely
24    powerful evidence about how they falsified the evidence because
25    of the photographs they took.  And I think that we will be able
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   to prove that, and I think that that would be sufficient to

 2   allow a jury to find that the defendants actually acted in

 3   deliberate disregard for the truth.

 4        An alternative would be to just have the first phase

 5   be about whether there was false evidence and whether it wasn't

 6   disclosed -- whether there was exculpatory evidence that wasn't

 7   disclosed, and we can leave for the second phase the deliberate

 8   disregard.

 9        THE COURT:  But the problem I'm having is that I

10   don't even think it's going to be comprehensible to do it that

11   way.  I thought it was.  I think I made a mistake.

12        I don't see how a jury can understand what the

13   dynamics were of what happened 25 years ago, and then some, by

14   trying to compartmentalize the different issues in this case.

15        MR. GENEGO:  The way that I really -- the way that I

16   think about it, Your Honor, is that I look at the trial

17   transcript.  It's 900 pages.  That was the evidence they used

18   to convict Mr. Lisker.

19        And what we want to do in the first phase is point

20   out that the evidence that the prosecution relied on when Mr.

21   Rabachow in his closing argument said, "The most damning piece

22   of evidence in this case is Mr. Lisker's lie when he said he

23   could see his mother, because he couldn't.  You heard the

24   detective testify his line of sight was blocked."

25        We want to be able to prove that the evidence in
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    those 900 pages was false and that the defendants knew that it

2    was false and allowed Mr. Rabachow to present it.  And I

3    don't --

4           THE COURT:  How can you prove they knew it was false

5    when they want to tell you that they didn't know it was false

6    and, in fact, they had a whole lot of other additional evidence

7    to show that it was true?

8           MR. GENEGO:  I think that the photographs they took

9    will enable us to prove that they knew that it was false and

10   they basically changed the --

11          THE COURT:  I'm not your client's lawyer.  I'm only

12   aware of what other -- a very astute, very highly respected

13   judge -- I'm referring to Zarefsky -- had to say about those

14   photographs and about the later-developed dispute about what

15   the photographs showed and what the technology permitted the

16   photographs to prove or fail to prove.

17          The point that I'm making is this.  I'm not going to

18   make a final ruling to reverse my ruling.  It could depend on

19   what you parties agree on the stipulation, because my ultimate

20   criteria -- not the only one, but the single most important one

21   will be what will be fair and comprehensible to both sides and

22   the jury.

23          And I want to see -- and you better get -- and I'm

24   ordering you to provide to Mr. Bojorquez this week your final

25   version of this proposed stipulation.

1          I want him to respond to you by one week after that.

2          These are rulings that will go out from today's

3    minutes.

4          And I want the parts that are agreed upon to be filed

5    with me and the parts that are disagreed upon to be specified

6    in a single Joint Status Report by the following week.

7          You need to know, and so do I, how this trial will be

8    conducted.

9          And in terms of this pending motion in limine

10   relating to Ryan, I'm going to admit it, but I'm not sure at

11   what phase.  It's coming in.  It's far from dispositive.

12         All this stuff that does seem to point the finger at

13   Ryan, the defendants in this case will have a right to say they

14   considered and didn't think it required a different conclusion

15   and in any event turned over.

16         I think it's probably going to come in in the same

17   basket as all of the evidence, but I will hold off a ruling on

18   that.

19         So to move this case along -- I've got other things

20   today I've got to prepare for.  I am granting the motion in

21   limine, but I am reserving a final ruling as to when it comes

22   in and under what circumstance.

23         Now, turning to the Monell issue, the second motion

24   in limine, what's the crux of the Monell theory?  That the

25   shutting down of Gavin's investigation proves that this

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    department was intent on ratifying a practice of crippling the

2    Internal Affairs division and preventing it from conducting

3    fair-minded and thorough investigations of claimed police

4    misconduct, and that the letter Bratton wrote sometime later

5    withdrawing Monsue's letter but saying there was credible

6    evidence is further proof of that?

7              Is that the gist of it?

8              MR. LITT:  I wouldn't phrase it quite that way.

9    There are really two Monell theories.

10             Ratification is distinct from custom and policy.  So

11   the first Monell theory is that they ratified the conduct of

12   the original investigation and approved it, and that has two

13   consequences.  The first is that the act of ratification under

14   Ninth Circuit law establishes independently that they have

15   accepted that as policy, but in addition --

16             THE COURT:  Wait a minute.  You're already confusing

17   me, Mr. Litt.  I've got to interrupt you.

18             MR. LITT:  Okay.

19             THE COURT:  I don't know what -- who the "they" is

20   and what the policy is.

21             What was being wrongfully ratified here?  Was it the

22   conviction back in the '80s?

23             MR. LITT:  No.

24             THE COURT:  Was it the inadequate work of the

25   Internal Affairs Division?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. LITT:  No, it was the false evidence.

 2              The Internal Affairs investigation -- there was a

 3    complaint that included -- there was false evidence presented

 4    against me.

 5              From the beginning to the end, on the way that it was

 6    handled -- and this is relevant to both ratification and custom

 7    and policy -- in a variety of ways, they violated standard

 8    practice.

 9              They classified this as unbecoming conduct, even

10    though it was -- there was an allegation of false evidence and

11    unbecoming conduct, and we have evidence to show this, that,

12    historically, unbecoming conduct was the category that was used

13    for the least amount of discipline.  So from the beginning they

14    misclassified this in a way that had significance.  But most

15    importantly was that the investigation itself uncovered false

16    evidence.

17              Sergeant Gavin made a determination that the weather

18    conditions differed from what Monsue and Landgren testified to

19    and reported in their reports.

20              He determined that the shoe prints were incorrect and

21    that there were two shoe prints.

22              All of this was presented up the chain, and it went

23    all the way to Bratton and to Berkow.  And Berkow was delegated

24    by Bratton, so we have two policymakers here, because under the

25    LAPD policy, the final policymaker on personnel matters is the
```

1    chief of police.

2            In this case, it's conceded by Bratton that he

3    delegated that responsibility in this particular case to Deputy

4    Chief Berkow.

5            So the ratification is that they ratified -- by

6    failing to take any action in the light of undisputed evidence

7    that false evidence was presented in these proceedings, they

8    ratified the actions of Monsue and Landgren in having presented

9    that false evidence.

10           Regardless of whether they believed it was false or

11   anything else, because they never, frankly, got to that stage,

12   the evidence was false.

13           From a police perspective, from an internal affairs

14   perspective, the idea that your officers are presenting false

15   evidence at a minimum has to be followed up and pursued.  They

16   never did that, so --

17           THE COURT:  So to get back to the question I asked

18   you, your Monell theory is ratification --

19           MR. LITT:  That's the first theory.

20           THE COURT:  -- and you said a few moments ago that it

21   was ratification of two things.  The first thing that was

22   wrongfully ratified was the use of false evidence.

23           That's what you said so far, right?

24           MR. LITT:  The crux of the ratification is that they

25   ratified these defendants' use of false evidence, and you

1    demonstrate the ratification by the way they classified it, by

2    how they handled it, et cetera, et cetera.  That's ultimately a

3    question for the jury.

4             THE COURT:  Wasn't that classification of unbecoming

5    conduct, or whatever it was, the pigeon hole that they assigned

6    the complaint to at the outset of the investigation as opposed

7    to --

8             MR. LITT:  Yes, despite the fact that there was a

9    claim of false evidence when they had a category for that.

10            And we have evidence.  It goes back to the '80s.

11   This goes to the custom and policy piece.  We have evidence

12   going back to the '80s that this was a standard practice, that

13   over 25 percent of allegations made against police were put

14   into two categories, unbecoming conduct and neglect of duty,

15   and that those are the two categories that had the least

16   consequence in the way the discipline occurred; and that by

17   virtue -- so the first theory is they ratified it, and under

18   the Ninth Circuit jury instruction, it's basically did a

19   policymaker ratify it, and if so, the City is liable.  That's

20   sort of really the end of the inquiry under the Ninth Circuit

21   law.

22            The second one is a more classic Monell custom and

23   policy claim in which the actions that occurred during the

24   Internal Affairs investigation are a reflection of a pattern

25   going back to the 1980s, and we start with evidence of the way

1    that complaints were handled in the early '80s.  And I don't

2    know if you ever had the opportunity to have Jim Fyfe testify

3    in any case in which you were sitting, but I used him on

4    several occasions.  He's dead now, but he testified -- he was

5    the expert in the Larez case.

6              THE COURT:  Yes.

7              MR. LITT:  And the evidence that he developed for the

8    Larez case demonstrated that there was this pattern.  So we

9    intend --

10             THE COURT:  Which pattern?

11             MR. LITT:  A pattern of -- and this is where it

12   shifts.  It's of condoning false evidence and -- but, more

13   broadly, misconduct by police officers by an internal affairs

14   system in which discipline imposed on officers was virtually

15   nonexistent unless the complaint came from another officer.

16             THE COURT:  Okay.  So I don't have unlimited time

17   here.  Let me just see if I can distill what you are trying to

18   tell me.

19             Your Monell theory has two parts.  Ratification is

20   the first part.  Custom and policy is the second part.  The

21   ratification is Bratton and Berkow's insistence that the

22   evidence was properly obtained -- that the conviction was

23   properly obtained and the evidence was sound.  That's specific

24   to this trial at this point.

25             The second custom and practice policy claim -- these

1    are my words, but I think they are what you are, essentially,

2    saying -- is the LAPD for a long time has had an Internal

3    Affairs department or division that was in name only.

4        It didn't conduct investigations of claimed

5    misconduct in good faith, particularly unless the claim was

6    made by a fellow police officer, and it buried a lot of police

7    misconduct for a long period of time, and that's proven in this

8    case because of the way Gavin was shut down.

9        MR. LITT:  Well, of the way Gavin was shut down, but

10   even aside from Gavin being shut down, the fact that it went

11   all the way up the chain and that their conclusion was that

12   they manipulated the classification by calling it "Other

13   Judicial Review," which -- but by virtue of their own policy,

14   that was a blatant misclassification, so that was a cover-up.

15       THE COURT:  Okay.  When I issued my management ruling

16   in August, I didn't address where the Monell fits in.  These

17   are discrete issues.

18       I'm going to in this case bifurcate -- or separate at

19   least -- and I don't know if it's bi- or tri- or quadricate the

20   Monell theory until we get through the underlying issues about

21   Monsue and Landgren.

22       Now --

23       MR. LITT:  Your Honor, may I be --

24       THE COURT:  Just a second.

25       You can answer what I -- you can respond to what I --

1   well, why don't you do it now.  Maybe you are going to

2   anticipate.

3            MR. LITT:  Well -- because I think that I anticipated

4   that this would be an issue, and we did, but there's a lot of

5   that evidence that's going to come in anyway.

6            First of all, there were --

7            THE COURT:  The evidence of the false letter that

8   Monsue sent is going to come in to go to his state of mind.

9            MR. LITT:  The evidence of the false letter, the

10  investigation by Sergeant Gavin, the fact that Sergeant Gavin

11  was able to make all these determinations very readily goes to

12  the state of mind of the officers and the way that they

13  conducted the investigation.

14           The 1991 letter and the relationship to the 1998

15  letter --

16           THE COURT:  Okay.  So what -- you're saying you don't

17  want to bifurcate it or delay it?

18           MR. LITT:  No.  We think that Monell -- we think that

19  as a practical management issue that the evidence from the

20  Internal Affairs investigation is so intertwined with the

21  evidence against the individual officers that it would be much

22  more efficient to do them together.

23           This is not a situation -- this is not a Heller

24  situation because Heller is really a non-state-of-mind

25  proposition, so here, we -- this is what we were talking about

1    before.  Here we have to prove state of mind.

2              A lot of the evidence that comes in from the Internal

3    Affairs investigation is evidence that is relevant to the

4    jury's determination of the officers' state of mind at the

5    time.

6              And so we think that, leaving aside what you just

7    raised about sort of combining guilt, innocence and liability,

8    that it makes no sense to have a separate Monell phase.

9              THE COURT:  Okay.  I understand your position and I

10   will take it under consideration, but there are parts of what

11   you have to prove for Monell that are not going to come in in

12   the -- well, I will call it the underlying case.

13             Now, let me ask you something now, and if you decline

14   to answer because you don't want to reveal your tactical views,

15   I guess I will accept that, but if you were to prevail in an

16   earlier phase and established liability for these

17   constitutional violations on the part of Landgren and/or

18   Monsue, would you still be intent on proceeding on the Monell

19   claim?

20             MR. LITT:  Yes.  And the reasons for that are

21   twofold.  One is sort of a practical, tactical reason and one

22   is sort of a protective reason.

23              Monell doesn't have a state-of-mind element.

24   There's no state-of-mind element to prove.

25             THE COURT:  But I am assuming you've already won.

```
 1          MR. LITT:  I understand, but I'm assuming that we

 2    have to sort of prepare for appeals.  So from our point of

 3    view, the more alternative theories on which we have won, the

 4    better.  So as a practical -- so that's the one consideration.

 5          The other consideration is that I believe that,

 6    ultimately, potentially settling this case, which I at the

 7    moment am not terribly optimistic about accomplishing

 8    pre-trial, in part is interrelated to the fact that what would

 9    ultimately be on trial in this case is not just two officers

10    but the handling by the LAPD institutionally, so we believe

11    that for a variety of reasons, Monell should proceed at some

12    stage.

13          THE COURT:  Okay.  So now you mentioned the prospect

14    of settlement, and we explored that at the last hearing, and

15    now I find it more mind-boggling than I originally was inclined

16    to that the only effort was before Judge Chapman at an early

17    phase and for a brief period of time, and that's not

18    acceptable.

19           And I told you that I wasn't going to permit you to

20    establish compliance with Local Rule 16-15 on that basis, so

21    that I already explained to you.

22          So what has been discussed between your team and Mr.

23    Bojorquez about how you are going to comply with that?

24          MR. LITT:  Well, we have had a discussion with Mr.

25    Bojorquez.  We have given them both a settlement letter and we
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    have made a specific demand because we think that that might be

2    the best way to sort of get to a settlement conference.

3           We are -- Mr. Bojorquez was out sick.  So this

4    actually happened a couple of weeks ago, but he has been ill so

5    we have not had a follow-up conversation.

6           He can advise the Court where things stand from his

7    perspective, but we have been trying to follow up on that to

8    see whether --

9           THE COURT:  Have you talked about who the mediator

10   would be?

11          MR. LITT:  We have not gotten to that stage because

12   when we discussed it with Mr. Bojorquez, I came away without

13   any real sense that the City was prepared to seriously pursue

14   this.  I'm not blaming anybody, and maybe that's just

15   premature, but -- so we didn't get to that stage.

16          At this point, obviously, if we are going to go into

17   a settlement conference --

18          THE COURT:  You are going to go into a settlement

19   conference.  There is no if about it.

20          MR. LITT:  Then we should discuss it.  I know that

21   the last time we were here, we --

22          THE COURT:  We talked about Judge Woehrle, and I

23   haven't spoken to her, and I told you not to.

24          MR. LITT:  And I haven't, but I still think that --

25          THE COURT:  What about Judge Wistrich?  He is now the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  magistrate judge on this case, right?

2          MR. LITT:  Uh-huh.  I have never done a settlement

3  conference with him.

4          THE COURT:  He's a very fine judge.

5          MR. LITT:  We would be open to him.  I don't know

6  what the City's view is.

7          THE COURT:  Let's hear from --

8          MR. LITT:  One of the reasons, just so that I can

9  say, that I focused on Judge Woehrle is that I know from past

10  experience that at the management level in the City Attorney's

11  Office they have a high regard for her, and I sort of felt like

12  somebody that has that cache with them going in would be

13  helpful.

14          THE COURT:  And I think you're right about what you

15  said, but whether it is feasible is something I have yet to

16  determine.

17          Where do things stand on settlement?

18          MR. BOJORQUEZ:  We did discuss that.  What they have

19  done thus far, Your Honor, is they did provide what I would

20  consider a demand letter, so I have an obligation to present

21  that to, you know, my office, but -- not only my office but

22  City Council, so obviously it's going to get --

23          THE COURT:  No, don't go to the City Council with

24  just the original demand.  You respond to that with a counter.

25          MR. BOJORQUEZ:  Well, I'm required, no matter what,

```
 1   just as a process, to present -- I have an obligation to

 2   present that -- even without any countering or anything, I have

 3   an obligation to present whatever the demand was.

 4           But what I was going to address to the Court is -- I

 5   mean, obviously if the Court orders us, then that's what's

 6   going to happen.

 7           THE COURT:  If I order you to proceed to mediation?

 8           MR. BOJORQUEZ:  Of course.

 9           THE COURT:  I'm ordering that.

10           MR. BOJORQUEZ:  Okay.

11           THE COURT:  And I just want to make sure that you do

12   it on a timely basis, which means very soon, and before a

13   promising mediator, and Judge Woehrle is great.  And she may or

14   may not be available, but she is not the only one who could be

15   of assistance.

16           This case calls out for settlement.  There are risks

17   that both sides have.  I understand this case a lot better than

18   I did in August, and I'll just stop with that commentary.

19           Now, what other motions in limine are coming?

20           I need to -- don't think that this is the only case

21   that I'm grappling with in the short term.  You have a February

22   28th trial date, and I have certain trials before then, and

23   they are not easy ones.  So what's coming?

24           MR. LITT:  Well, there are two that are on

25   calendar -- two more that are on calendar now --
```

```
 1              THE COURT:  Right.

 2              MR. LITT:  -- that the replies are being filed today.

 3              And without going into detail, I think that we have

 4     filed the ones that are the most complex, except potentially

 5     for some expert ones, but there is a list of other motions in

 6     limine.  There are probably another nine or ten.  Some of them

 7     are quite short.  They're not like these.

 8              THE COURT:  This was before me?

 9              MR. LITT:  Are these before you?

10              THE COURT:  No.  Is this list that you say -- there's

11     a list.

12              MR. LITT:  No, you don't have the list at this point.

13              THE COURT:  Well, file the list.  You don't

14     necessarily have to go ahead and file the motions in limine,

15     and I hope you won't, but I need to know what's coming.

16              MR. LITT:  Okay.

17              THE COURT:  And that's true for you.

18              And I want the list filed this week --

19              MR. BOJORQUEZ:  Yes, Your Honor.  We can do that.

20              THE COURT:  -- with a proposed list as to when they

21     will be filed and in what sequence they should be addressed.

22              MR. LITT:  Okay.

23              THE COURT:  I will probably rule on the remaining two

24     motions on the papers, but I have to look into them.  I can't

25     really comment on them.  They're not even fully briefed and I
```

1    don't know what my ruling would be, but to complete this

2    hearing -- because it's really late -- I am going to admit

3    evidence of the post-conviction Internal Affairs.

4            Whether or not I am going to permit Fischer to

5    testify in a conclusory way that there was or was not

6    ratification is doubtful.  I don't think I will, but I would

7    permit Fischer to testify about the factors that someone with

8    his claimed expertise posits as the relevant and necessary

9    factors to determine -- for a fact finder to determine what

10   constitutes ratification and what falls short of it.  Not the

11   conclusion but what the factors are.  That's my likely ruling.

12           And I will get out a ruling on that part as soon as I

13   can and that will probably be this week.

14           On the issue about Ryan, I've already said this stuff

15   is coming in but I will wait to hear and evaluate this

16   stipulation.

17           I really need to see that quickly.

18           You guys -- notwithstanding the holidays are coming,

19   you guys really have your work cut out for you.

20           Anything else?

21           MR. BOJORQUEZ:  Yes, Your Honor.  On the motion in

22   limine 2 for Monell, is the Court inclined to bifurcate or

23   trifurcate or quadricate, whatever the Court ultimately does?

24           THE COURT:  I don't know what I will do, Mr.

25   Bojorquez, because I want to see that stipulation.  I want to

1 | see what is going to work.

2 |          MR. BOJORQUEZ:  Oh, I see.

3 |          THE COURT:  But I've already done my best to tell you

4 | what is going to be the paramount driving consideration, which

5 | is what makes managerial sense from the point of view of the

6 | jury that is also at the same time fair to both sides.

7 |          I'm not particularly persuaded, although I may have

8 | been previously, by what Mr. Genego said.

9 |          Okay.  We are adjourned.

10 |          MR. BOJORQUEZ:  Thank you, Your Honor.

11 |          MR. LITT:  Thank you.

12 |          MS. PODBERESKY:  Thank you, Your Honor.

13 |          MR. GENEGO:  Thank you, Your Honor.

14 |      *(Proceedings concluded.)*

15 |                          --oOo--

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1

2

3                          CERTIFICATE

4

5        I hereby certify that pursuant to Section 753,

6   Title 28, United States Code, the foregoing is a true and

7   correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date: DECEMBER 29, 2011

13

14

15

16                   /s/  Cindy L. Nirenberg, CSR No. 5059

17                        Official Court Reporter

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**'**

**'80s [4]**  43/22 46/10 46/12 47/1
**'83 [3]**  12/7 24/16 30/13
**'85 [3]**  12/8 24/16 30/13

**–**

**--oOo [1]**  57/15

**/**

**/s [1]**  58/16

**1**

**10 [2]**  22/11 22/21
**1055 [1]**  2/8
**11:10 [2]**  1/18 4/2
**11th [2]**  6/25 31/19
**12 [2]**  1/17 4/1
**15 [1]**  51/20
**16-15 [1]**  51/20
**180 [1]**  23/21
**1880 [1]**  2/9
**1980s [1]**  46/25
**1985 [2]**  7/13 24/6
**1991 [1]**  49/14
**1998 [2]**  24/14 49/14

**2**

**200 [1]**  2/15
**2011 [3]**  1/17 4/1 58/12
**2115 [1]**  2/5
**213-386-3114 [1]**  2/10
**213-978-7023 [1]**  2/16
**23rd [2]**  5/13 21/17
**25 [2]**  40/13 46/13
**28 [1]**  58/6
**28th [1]**  54/22
**29 [1]**  58/12

**3**

**30th [1]**  21/13
**310-399-3259 [1]**  2/6
**3114 [1]**  2/10
**312 [1]**  1/24
**3259 [1]**  2/6
**34 [1]**  13/21
**352 [1]**  28/17
**37 [1]**  14/2
**38 [1]**  14/6
**3:00 [1]**  22/13

**4**

**40 [1]**  14/9
**401 [2]**  27/14 27/16
**402 [2]**  27/17 28/15
**42 [1]**  14/14
**43 [1]**  14/24
**44 [4]**  15/7 16/20 16/22 17/9

**5**

**5059 [2]**  1/23 58/16

**6**

**6th [1]**  2/15

**7**

**7023 [1]**  2/16
**753 [1]**  58/5
**79 [4]**  14/17 17/4 17/10 18/1

**9**

**900 [2]**  40/17 41/1
**90012 [2]**  1/24 2/16
**90017 [1]**  2/9

**90405 [1]**  2/5
**911 [3]**  8/11 8/13 8/15
**9374 [1]**  4/4

**A**

**A.M [2]**  1/18 4/2
**ability [3]**  27/9 27/11 33/22
**able [9]**  10/23 25/18 32/10 35/11 36/5 37/12
 39/25 40/25 49/11
**about [66]**
**above [1]**  58/8
**above-entitled [1]**  58/8
**absence [1]**  34/22
**absolute [2]**  25/11 25/17
**abuse [1]**  37/22
**accept [1]**  50/15
**acceptable [1]**  51/18
**accepted [1]**  43/15
**accomplishing [1]**  51/7
**acknowledge [2]**  23/25 38/1
**act [1]**  43/13
**acted [1]**  40/2
**action [1]**  45/6
**actions [2]**  45/8 46/23
**actual [7]**  7/2 9/24 20/22 21/7 21/12 22/24
 27/24
**actually [7]**  11/1 22/1 22/11 22/24 23/3
 40/2 52/4
**addition [4]**  16/5 39/8 39/21 43/15
**additional [2]**  18/9 33/7 41/6
**address [3]**  5/10 48/16 54/4
**addressed [2]**  8/12 55/21
**addressing [2]**  31/22 38/6
**adjourned [1]**  57/9
**admissibility [2]**  18/21 27/24
**admissible [4]**  24/1 27/9 27/13 32/9
**admit [3]**  18/24 42/10 56/2
**admitted [3]**  16/14 18/8 36/3
**admitting [1]**  26/20
**adopted [1]**  6/5
**advance [1]**  34/17
**advantage [1]**  19/22
**advise [1]**  52/6
**affairs [10]**  43/2 43/25 44/2 45/13 46/24
 47/13 48/3 49/20 50/3 56/3
**affected [2]**  26/1 28/11
**affirmative [1]**  16/4
**after [5]**  8/1 35/9 36/2 37/19 42/1
**afternoon [1]**  22/12
**again [6]**  6/10 24/20 25/7 26/22 35/5 39/19
**against [5]**  12/3 36/3 44/4 46/13 49/21
**ago [3]**  40/13 45/20 52/4
**agree [5]**  24/17 25/16 31/11 31/12 41/19
**agreed [1]**  42/4
**ahead [2]**  21/17 55/14
**AHM [1]**  1/9
**AJWx [1]**  1/9
**al [2]**  1/10 4/5
**alibi [1]**  22/2
**all [35]**  4/18 4/19 6/21 11/10 12/7 12/11
 13/11 16/12 16/12 17/22 19/5 23/4 24/8
 24/13 24/17 26/6 26/11 26/16 27/1 30/11
 30/20 32/5 33/14 37/25 38/13 38/14 39/4
 39/20 42/12 42/17 44/22 44/23 48/11 49/6
 49/11
**allegation [1]**  44/10
**allegations [1]**  46/13
**allegedly [1]**  22/10
**alleviated [1]**  33/18
**allow [2]**  26/3 40/2
**allowed [1]**  41/2
**alluded [1]**  31/17
**along [2]**  23/12 42/19

**A**

**already [6]**   21/8 43/16 50/25 51/21 55/9
57/3
**also [6]**   10/10 10/19 14/3 15/8 38/20 57/6
**alternative [6]**   33/25 34/4 35/6 35/17 40/4
51/3
**although [3]**   13/15 22/9 57/7
**altogether [1]**   19/7
**am [12]**   13/14 15/24 19/25 24/9 37/5 38/17
42/20 42/21 50/25 51/7 56/2 56/4
**ambulance [2]**   9/5 9/6
**amount [3]**   20/19 36/25 44/13
**amply [1]**   11/19
**analysis [1]**   28/17
**and recklessly [1]**   26/13
**and/or [1]**   50/17
**ANGELES [8]**   1/10 1/16 1/24 2/9 2/13 2/16
4/1 4/5
**another [6]**   8/12 18/5 29/10 29/12 47/15
55/6
**answer [8]**   13/15 13/25 15/15 20/14 24/10
32/12 48/25 50/14
**answered [1]**   8/5
**answering [1]**   9/16
**answers [1]**   9/14
**anticipate [1]**   49/2
**anticipated [1]**   49/3
**any [22]**   6/3 6/9 9/9 12/1 12/6 12/12 12/16
13/7 13/8 13/9 13/9 19/12 21/24 24/15 27/12
29/12 30/11 42/15 45/6 47/3 52/13 54/2
**anybody [3]**   9/10 9/11 52/14
**anything [7]**   5/24 16/22 20/1 24/9 45/11
54/2 56/20
**anyway [4]**   33/7 39/1 39/2 49/5
**apologize [2]**   23/9 27/22
**appeals [1]**   51/2
**appearances [2]**   2/1 4/6
**appears [1]**   16/22
**appreciate [2]**   13/16 30/19
**approach [1]**   38/17
**appropriate [1]**   7/3
**approved [2]**   30/18 43/12
**approximately [1]**   8/23
**are [89]**
**area [2]**   10/13 20/25
**areas [1]**   13/18
**argue [6]**   19/15 26/25 29/14 31/3 31/4 33/6
**argued [2]**   10/17 18/24
**argues [1]**   19/25
**arguing [2]**   5/6 33/5
**argument [2]**   17/13 40/21
**arguments [1]**   24/24
**armed [1]**   15/25
**around [1]**   15/13
**arrest [1]**   7/15
**arrested [1]**   21/8
**arriving [1]**   9/7
**as [45]**   5/15 6/6 6/8 6/11 6/15 8/25 8/25
10/16 10/17 11/8 13/6 16/18 17/25 18/1 18/1
23/2 24/9 24/18 24/18 25/13 27/8 28/5 28/23
29/14 29/22 29/23 30/9 30/24 31/17 32/18
32/19 34/10 39/3 42/17 42/21 43/15 44/9
46/6 49/19 51/4 54/1 55/20 56/8 56/12 56/12
**aside [6]**   12/1 18/20 33/2 39/11 48/10 50/6
**ask [7]**   5/4 12/9 21/21 25/24 33/21 37/6
50/13
**asked [4]**   32/11 37/20 37/21 45/17
**asking [3]**   6/13 12/22 24/22
**aspect [1]**   24/21
**assault [1]**   18/10
**asserted [1]**   16/7
**asserting [1]**   18/19

**assertion [1]**   12/5
**assistance [3]**   11/7 37/2 54/15
**assuming [3]**   32/2 50/25 51/1
**astute [1]**   41/12
**at what [1]**   32/18
**attached [1]**   13/17
**attempt [1]**   19/18
**attempting [1]**   22/17
**attention [1]**   22/3
**attorney [8]**   2/3 2/4 2/8 2/13 2/13 2/14
7/12 31/5
**Attorney's [1]**   53/10
**attributing [1]**   20/4
**audio [1]**   9/24
**August [6]**   6/25 6/25 31/19 32/19 48/16
54/18
**available [2]**   12/24 54/14
**avoid [1]**   36/1
**aware [3]**   12/12 23/19 41/12
**away [2]**   19/2 52/12

**B**

**back [17]**   6/23 7/13 8/16 9/12 12/7 12/8
16/8 18/14 18/16 24/6 32/18 32/19 43/22
45/17 46/10 46/12 46/25
**background [2]**   5/15 5/16
**bad [2]**   34/22 38/25
**BARRETT [1]**   2/8
**Barry [1]**   4/10
**based [4]**   8/8 28/4 33/24 33/24
**basically [8]**   12/20 21/5 21/22 22/9 28/1
30/9 41/10 46/18
**basis [15]**   12/4 16/11 16/16 18/14 19/14
20/10 24/4 26/20 29/8 33/6 38/3 39/7 39/18
51/20 54/12
**basket [1]**   42/17
**Bates [1]**   17/10
**be [108]**
**because [41]**   6/17 10/22 11/4 11/17 12/7
12/10 13/14 17/23 19/7 20/1 20/8 21/4 22/15
23/12 23/16 24/21 24/24 26/16 28/8 29/10
31/13 31/16 32/15 33/10 33/21 34/6 37/8
38/25 39/24 40/23 41/19 44/24 45/11 48/8
49/3 49/24 50/14 52/1 52/11 56/2 56/25
**becomes [2]**   17/25 20/24
**been [19]**   7/10 7/10 7/11 7/12 10/5 11/11
12/17 17/17 18/8 21/8 22/10 27/14 27/25
29/15 31/18 51/22 52/4 52/7 57/8
**before [14]**   12/15 15/16 20/10 24/10 24/11
25/22 36/20 38/14 50/1 51/16 54/12 54/22
55/8 55/9
**beginning [4]**   31/18 34/16 44/5 44/13
**behalf [6]**   4/8 4/11 4/14 4/17 10/5 12/7
**being [10]**   5/3 9/14 9/22 12/14 16/5 24/9
34/21 43/21 48/10 55/2
**belief [4]**   8/8 17/12 28/5 29/9
**believe [14]**   6/8 8/18 13/5 13/7 16/17 16/19
16/20 17/2 24/6 29/2 29/15 29/18 51/5 51/10
**believed [4]**   8/9 21/11 26/18 45/10
**belong [1]**   32/13
**benefited [1]**   28/9
**benign [1]**   19/4
**Berkow [4]**   44/23 44/23 45/4
**Berkow's [1]**   47/21
**best [3]**   19/21 52/2 57/3
**better [3]**   41/23 51/4 54/17
**between [3]**   18/20 31/25 51/22
**beyond [3]**   7/6 24/4 34/25
**bi [1]**   48/19
**bifurcate [3]**   48/18 49/17 56/22
**big [2]**   7/19 7/23
**Bill [1]**   4/7

**B**

**binding [1]** 6/14
**birthdate [2]** 18/13 18/15
**bit [2]** 5/1 11/4
**blaming [1]** 52/14
**blatant [1]** 48/14
**blocked [1]** 40/24
**board [2]** 23/23 35/10
**body [2]** 35/7 38/7
**boggling [2]** 30/8 51/15
**BOJORQUEZ [23]** 2/14 3/5 3/7 3/10 4/17 5/25
6/22 10/8 13/13 16/7 19/11 29/15 33/6 38/12
38/24 39/10 39/12 41/24 51/23 51/25 52/3
52/12 56/25
**book [12]** 13/24 13/25 14/3 14/19 14/22 15/1
15/4 15/11 16/3 16/10 16/13 17/14
**both [10]** 24/24 24/25 32/5 32/7 36/24 41/21
44/6 51/25 54/17 57/6
**bother [1]** 30/19
**Boulevard [1]** 2/8
**boxing [1]** 26/10
**boy [1]** 33/11
**Brady [1]** 38/20
**Bratton [5]** 43/4 44/23 44/24 45/2 47/21
**brief [2]** 25/20 51/17
**briefed [1]** 55/25
**bring [1]** 35/18
**bringing [1]** 37/24
**broadly [1]** 47/13
**brought [3]** 7/10 23/1 27/15
**BRUCE [2]** 1/7 4/4
**BS [1]** 19/3
**burden [2]** 34/9 34/20
**burdened [1]** 20/6
**burdens [1]** 34/8
**buried [1]** 48/6
**buries [1]** 19/22
**buy [3]** 24/13 39/8 39/11

**C**

**CA [3]** 2/5 2/9 2/16
**cache [1]** 53/12
**calendar [2]** 54/25 54/25
**CALIFORNIA [4]** 1/2 1/16 1/24 4/1
**call [8]** 8/13 8/15 8/16 8/18 9/12 9/21
10/11 14/16 16/9 34/12 50/12
**called [2]** 11/2 21/9
**calling [2]** 4/4 48/12
**calls [2]** 33/10 54/16
**came [8]** 8/18 12/22 18/14 26/17 32/12 38/19
47/15 52/12
**can [33]** 5/10 7/17 9/7 12/10 13/11 13/13
13/15 14/20 17/24 18/22 18/23 19/10 26/15
29/7 29/13 31/3 31/21 34/4 34/23 35/22
38/17 39/6 39/19 40/7 40/12 41/4 47/17
48/25 48/25 52/6 53/8 55/19 56/13
**can't [7]** 31/9 31/23 31/24 33/14 35/12 39/4
55/24
**cannot [1]** 24/15
**capable [2]** 34/6 34/7
**card [1]** 15/7
**carefully [1]** 11/17
**carmen [1]** 2/13
**case [37]** 4/23 5/10 7/9 10/16 11/5 11/8
11/8 19/20 20/2 20/19 21/1 21/2 28/13 28/16
32/19 33/11 33/12 34/15 39/6 40/14 40/22
42/13 42/19 45/2 45/3 47/3 47/5 47/8 48/8
48/18 50/12 51/6 51/9 53/1 54/16 54/17
54/20
**cases [1]** 34/12
**categories [2]** 46/14 46/15
**category [2]** 44/12 46/9

**caught [1]** 9/11
**CENTRE [1]** 1/3
**certain [8]** 8/5 8/6 8/6 10/24 20/22 29/8
29/9 54/22
**certainly [2]** 19/5 37/3
**CERTIFICATE [1]** 58/3
**certify [1]** 58/5
**cetera [2]** 46/2 46/2
**chain [2]** 44/22 48/11
**challenge [1]** 27/23
**change [1]** 26/2
**changed [2]** 9/24 41/10
**changing [1]** 34/5
**Chapman [1]** 51/16
**check [2]** 22/2 22/12
**checked [1]** 22/10
**chief [2]** 45/1 45/4
**CHRISTIAN [1]** 2/14 4/17
**CINDY [1]** 1/23 58/16
**Circuit [3]** 43/14 46/18 46/20
**circumstance [1]** 42/22
**circumstances [5]** 8/9 19/16 24/15 24/16
39/16
**cite [1]** 34/12
**city [10]** 1/10 2/13 2/13 2/14 4/5 46/19
52/13 53/10 53/22 53/23
**City's [1]** 53/6
**civil [1]** 19/19
**claim [7]** 25/18 37/2 46/9 46/23 47/25 48/5
50/19
**claimed [3]** 43/3 48/4 56/8
**claims [1]** 12/3
**clarify [1]** 34/1
**clarifying [1]** 34/7
**classic [1]** 46/22
**classification [2]** 46/4 48/12
**classified [2]** 44/9 46/1
**clear [3]** 26/14 31/24 35/1
**clearly [1]** 38/21
**client [5]** 30/21 34/24 38/4 38/6 39/1
**client's [1]** 41/11
**clients [9]** 12/7 12/23 18/25 20/12 23/7
26/5 26/13 30/11 33/9
**closed [1]** 9/9
**closing [1]** 40/21
**Code [3]** 27/21 28/19 58/6
**Cohen [1]** 14/6
**collateral [1]** 6/15
**combining [1]** 50/7
**come [11]** 23/14 26/5 28/12 36/17 37/3 39/3
39/4 42/16 49/5 49/8 50/11
**comes [5]** 23/24 26/11 31/4 42/21 50/2
**coming [10]** 12/10 25/23 26/4 38/23 42/11
54/19 54/23 55/15 56/15 56/18
**comment [1]** 55/25
**commentary [1]** 54/18
**comments [2]** 3/3 38/1
**commissioner [2]** 15/19 15/20
**committed [1]** 34/24
**common [1]** 18/21
**communication [1]** 8/13
**compartmentalize [1]** 40/14
**compiling [1]** 5/13
**complaint [3]** 44/3 46/6 47/15
**complaints [1]** 47/1
**complete [3]** 5/20 5/22 56/1
**completed [1]** 5/19
**complex [1]** 55/4
**compliance [1]** 51/20
**complicated [2]** 20/20 35/15
**comply [1]** 51/23
**comprehensible [3]** 39/5 40/10 41/21
**compunction [1]** 20/8

**C**

conceal **[2]**   19/17 20/1
conceded **[1]**   45/2
concept **[2]**   25/17 25/21
concept of **[1]**   25/21
concern **[2]**   25/7 31/22
concerns **[1]**   33/16
concluded **[2]**   4/22 57/14
conclusion **[3]**   42/14 48/11 56/11
conclusive **[2]**   24/7 24/9
conclusory **[1]**   56/5
conditions **[5]**   23/22 36/10 38/5 38/14 44/18
condoning **[1]**   47/12
conduct **[9]**   21/6 21/22 43/11 44/9 44/11
   44/12 46/5 46/14 48/4
conducted **[4]**   10/25 27/4 42/8 49/13
conducting **[2]**   21/15 43/2
conference **[6]**   5/12 52/2 52/17 52/19 53/3
   58/10
confessions **[2]**   39/13 39/17
confirmed **[1]**   19/12
conformance **[1]**   58/9
confused **[1]**   32/14
confusing **[1]**   43/16
consequence **[1]**   46/16
consequences **[1]**   43/13
consider **[4]**   29/24 35/6 35/12 53/20
considerable **[1]**   4/21
consideration **[4]**   50/10 51/4 51/5 57/4
considered **[3]**   23/11 31/10 42/14
considering **[3]**   35/13 35/18 37/24
constitutes **[1]**   56/10
constitutional **[2]**   34/11 50/17
constitutionally **[1]**   30/17
contact **[1]**   9/7
contacted **[1]**   8/14
contained **[1]**   17/3
contemplate **[1]**   35/3
context **[1]**   5/17
conversation **[1]**   52/5
convict **[3]**   19/1 19/18 40/18
convicted **[2]**   35/9 36/3
conviction **[6]**   16/1 16/10 33/24 43/22 47/22
   56/3
convictions **[1]**   34/10
correct **[15]**   6/20 13/20 14/7 15/21 15/23
   16/2 17/9 18/15 20/17 21/14 27/22 28/22
   28/25 36/22 58/7
correctly **[1]**   13/6
could **[17]**   7/20 7/20 18/7 19/3 19/5 23/17
   24/19 24/19 25/1 25/2 26/6 27/4 27/13 28/6
   40/23 41/18 54/14
couldn't **[1]**   40/23
Council **[2]**   53/22 53/23
counsel **[9]**   2/1 4/6 11/7 12/18 13/15 16/18
   27/4 28/14 37/2
counter **[2]**   18/24 53/24
countering **[1]**   54/2
County **[3]**   16/1 16/10 18/10
couple **[1]**   52/4
coupled **[1]**   30/6
course **[2]**   24/23 54/8
court **[22]**   1/1 1/23 5/15 10/16 13/6 15/22
   16/20 26/25 27/15 28/2 28/15 35/5 35/18
   35/23 37/6 37/24 52/6 54/4 54/5 56/22 56/23
   58/17
courtroom **[1]**   10/7
cover **[1]**   48/14
cover-up **[1]**   48/14
creation **[1]**   25/8
credibility **[1]**   7/20
credible **[1]**   43/5

criminal **[6]**   7/13 10/21 18/8 18/12 27/23
   28
crippling **[1]**   43/1
crisis **[1]**   20/7
criteria **[1]**   41/20
cross **[1]**   34/19
cross-examination **[1]**   34/19
crux **[5]**   4/23 10/15 11/4 42/24 45/24
CSR **[2]**   1/23 58/16
cuff **[1]**   23/21
current **[3]**   6/24 11/22 30/11
currently **[1]**   7/3
custom **[6]**   43/10 44/6 46/11 46/22 47/20
   47/25
cut **[2]**   31/23 56/19
CV09 **[2]**   1/9 4/4
CV09-9374 **[1]**   4/4
CV09-9374-AHM **[1]**   1/9

**D**

damage **[1]**   31/12
damning **[3]**   30/20 30/20 40/21
date **[3]**   18/15 54/22 58/12
day **[2]**   12/15 16/8
days **[1]**   21/9
dead **[1]**   47/4
deal **[2]**   7/23 16/15
dealing **[2]**   20/6 32/5
DECEMBER **[3]**   1/17 4/1 58/12
decide **[2]**   20/11 24/11
decides **[1]**   9/12
decision **[4]**   4/23 7/14 27/11 27/12
decisions **[1]**   9/12
declaration **[1]**   13/18
decline **[1]**   50/13
defendant **[4]**   23/13 23/14 34/18 34/20
defendants **[9]**   1/11 2/12 4/17 6/18 7/14 21/1
   40/2 41/1 42/13
defendants' **[2]**   11/6 45/25
defense **[7]**   11/12 11/12 12/18 20/3 27/3
   28/14 32/23
deficiencies **[1]**   11/20
deficient **[1]**   30/17
definitely **[1]**   8/21
degrees **[1]**   23/21
delay **[1]**   49/17
delegated **[2]**   44/23 45/3
deliberate **[2]**   40/3 40/7
deliberately **[2]**   11/9 35/21
demand **[4]**   52/1 53/20 53/24 54/3
demeanor **[3]**   8/6 8/21 9/23
demonstrate **[1]**   46/1
demonstrated **[1]**   47/8
demonstrates **[1]**   29/11
department **[11]**   8/19 8/20 8/25 9/2 9/3 9/4
   9/9 9/18 9/19 43/1 48/3
department's **[1]**   10/11
depend **[1]**   41/18
dependent **[1]**   4/23
deputy **[2]**   2/14 45/3
described **[1]**   6/24
designed **[1]**   19/17
despite **[1]**   46/8
detail **[1]**   55/3
details **[1]**   7/9
detective **[24]**   7/25 8/7 12/4 16/23 17/23
   18/12 21/9 21/15 21/21 21/24 21/25 22/7
   22/8 22/16 22/17 22/23 27/1 27/8 27/14 28/4
   28/7 29/3 37/13 40/24
detectives **[3]**   6/18 20/25 21/5
determination **[6]**   7/15 27/8 28/4 33/23 44/17
   50/4
determinations **[1]**   49/11

**D**

determine [7]  18/4 18/4 21/22 28/16 56/16
56/9 56/9
determined [3]  22/7 22/12 44/20
developed [2]  41/14 47/7
devoted [1]  4/21
did [19]  9/2 9/21 11/12 21/24 26/14 26/17
30/4 30/5 31/2 32/19 34/13 37/3 39/10 45/16
46/18 49/4 53/18 53/19 54/18
didn't [18]  6/10 8/16 12/10 16/4 20/1 22/12
22/20 22/20 30/23 33/10 36/14 37/10 38/4
41/5 42/14 48/4 48/16 52/15
differed [1]  44/18
difference [4]  18/5 18/7 26/22 26/24
different [5]  32/13 32/17 34/8 40/14 42/14
direct [1]  6/22
directed [1]  5/13
disagreed [1]  42/5
disastrous [1]  20/6
discipline [3]  44/13 46/16 47/14
disclosed [8]  11/11 11/25 12/2 16/8 18/4
18/23 40/6 40/7
discovery [1]  10/4
discrete [2]  20/18 48/17
discuss [2]  52/20 53/18
discussed [3]  6/24 51/22 52/12
discussion [1]  51/24
dispatch [3]  9/7 9/12 9/21
dispatcher [1]  10/10
dispositive [1]  42/11
dispute [3]  19/12 24/3 41/14
disputes [1]  32/8
disputing [1]  24/2
disregard [5]  19/1 26/14 38/9 40/3 40/8
disregarded [1]  35/21
distill [1]  47/17
distinct [1]  43/10
distinction [2]  18/20 31/24
district [5]  1/1 1/2 1/3 7/12 31/5
divide [1]  5/8
division [4]  1/2 43/2 43/25 48/3
do [28]  5/9 5/11 5/20 5/22 6/7 7/18 16/15
21/25 22/4 26/18 26/20 33/14 33/21 34/23
37/7 37/12 37/19 37/23 38/2 40/10 40/19
42/7 49/1 49/22 53/17 54/11 55/19 56/24
dock [1]  29/25
doctored [1]  20/21
document [5]  14/18 18/3 19/19 20/16 22/24
documentation [2]  11/11 22/15
documented [2]  14/22 18/11
documents [2]  19/24 20/23
does [4]  16/21 19/21 42/12 56/23
doesn't [5]  12/6 30/19 30/19 31/9 50/23
doing [4]  6/17 21/3 25/12 35/18
don't [40]  14/19 20/4 24/6 24/13 24/17
24/20 26/10 29/5 29/6 29/13 29/16 29/19
31/12 31/20 31/21 33/16 36/23 37/25 38/17
39/4 39/8 39/11 40/10 40/12 41/3 43/19 47/1
47/16 48/19 49/1 49/16 50/14 53/5 53/23
54/20 55/12 55/13 56/1 56/6 56/24
done [10]  5/18 5/23 23/4 23/16 24/14 25/10
27/18 53/2 53/19 57/3
doubt [2]  11/18 34/25
doubtful [1]  56/6
down [10]  10/2 25/23 26/19 31/1 36/17 37/14
42/25 48/4 48/9 48/10
draft [1]  5/25
driving [1]  57/4
drug [2]  37/16 37/22
drug program [1]  37/16
due [3]  11/13 37/25 39/20
dump [3]  19/19 19/23 20/16
during [3]  8/3 8/6 46/23
duty [1]  40/13
dynamics [1]  40/13

**E**

earlier [2]  35/6 50/16
early [2]  47/1 51/16
easier [1]  39/6
easy [1]  54/23
effect [1]  6/9
efficient [2]  39/6 49/22
effort [3]  4/21 36/13 51/16
either [1]  10/5
element [3]  39/22 50/23 50/24
elements [1]  38/12
elicit [1]  10/4
else [8]  26/14 30/25 33/12 36/10 36/12
36/13 45/11 56/20
emotional [1]  9/14
enable [1]  41/9
end [3]  34/15 44/5 46/20
ended [1]  21/25
ends [1]  25/23
entitled [2]  25/11 58/8
essentially [1]  48/1
establish [3]  32/25 38/24 51/20
established [1]  50/16
establishes [1]  43/14
estoppel [1]  6/15
Estuar [1]  2/7
et [4]  1/10 4/5 46/2 46/2
evaluate [1]  56/15
evaluation [1]  35/10
even [15]  5/25 7/16 10/5 16/8 26/2 26/16
29/24 30/19 30/19 30/23 40/10 44/9 48/10
54/2 55/25
event [2]  17/13 42/15
ever [1]  47/2
every [2]  30/8 31/3
everything [2]  27/2 37/24
evidence [97]
evidentiary [4]  24/21 36/18 36/20 39/18
exactly [4]  6/16 16/18 24/20 32/10
examination [1]  34/19
example [3]  7/25 19/11 37/13
examples [1]  7/17
except [1]  55/4
exceptions [1]  16/15
excited [1]  8/22
excluding [1]  16/16
exculpatory [1]  40/6
Exhibit [14]  5/15 13/21 14/2 14/6 14/9
14/17 14/24 15/3 15/7 16/22 17/4 17/9 17/10
18/1
exhibits [1]  13/17
exists [1]  10/17
exonerate [1]  30/11
exonerating [3]  19/2 30/23 30/24
expect [2]  5/20 5/22
experience [1]  53/10
experienced [2]  19/24 34/7
expert [3]  25/3 47/5 55/5
expertise [1]  56/8
experts [7]  10/20 10/23 10/25 11/2 11/3
11/4 24/25
explain [1]  4/25
explained [1]  51/21
explaining [1]  10/8
explored [1]  51/14
extent [3]  6/3 25/25 26/20
extremely [1]  39/23
eyes [1]  9/8

**F**

**factors [5]**   23/12 30/10 56/7 56/9 56/10
**facts [2]**   6/7 6/12
**fail [1]**   41/16
**failing [1]**   45/6
**fails [1]**   24/11
**fair [4]**   35/13 41/21 43/3 57/6
**fair-minded [1]**   43/3
**fairly [2]**   18/23 26/3
**faith [7]**   26/18 32/6 32/8 33/17 34/22 34/23 48/5
**falls [1]**   56/10
**false [22]**   33/24 40/5 41/1 41/2 41/4 41/5 41/9 44/1 44/3 44/10 44/15 45/7 45/9 45/10 45/12 45/14 45/22 45/25 46/9 47/12 49/7 49/9
**falsified [2]**   11/9 39/24
**faltering [1]**   30/16
**far [7]**   8/25 18/1 24/4 24/18 42/11 45/23 53/19
**father [3]**   12/14 13/3 14/9
**favor [1]**   18/18
**FCRR [1]**   1/23
**feasible [1]**   53/15
**February [1]**   54/21
**fellow [1]**   48/6
**felt [1]**   53/11
**few [3]**   8/23 21/9 45/20
**file [2]**   55/13 55/14
**filed [6]**   4/21 42/4 55/2 55/4 55/18 55/21
**final [4]**   41/18 41/24 42/21 44/25
**find [4]**   25/22 30/7 40/2 51/15
**finder [1]**   56/9
**finding [2]**   19/9 37/19
**findings [5]**   6/3 6/8 11/18 32/3 35/1
**fine [2]**   19/5 53/4
**finger [1]**   42/12
**fingertips [1]**   12/12
**finished [1]**   13/14
**fire [7]**   8/19 8/24 9/2 9/4 9/18 9/19 10/11
**first [15]**   11/21 24/8 35/19 35/23 36/5 37/7 40/4 40/19 43/11 43/13 45/19 45/21 46/17 47/20 49/6
**Fischer [2]**   56/4 56/7
**fits [1]**   48/16
**floor [1]**   2/15
**focus [2]**   22/19
**focused [1]**   53/9
**follow [5]**   6/10 10/11 22/1 52/5 52/7
**follow-up [1]**   52/5
**followed [2]**   20/9 45/15
**following [3]**   13/17 35/7 42/6
**foregoing [1]**   58/6
**form [2]**   5/25 29/6
**format [1]**   58/9
**forms [1]**   35/1
**found [3]**   21/19 22/9 30/18
**frame [2]**   8/7 19/18
**framework [5]**   6/6 6/12 6/24 34/11 38/18
**frankly [1]**   45/11
**front [1]**   24/14
**fry [1]**   23/15
**fully [4]**   23/17 26/3 34/23 55/25
**fundamental [1]**   18/22
**further [2]**   26/25 43/6
**Fyfe [1]**   47/2

**G**

**gave [1]**   23/23
**Gavin [6]**   44/17 48/8 48/9 48/10 49/10 49/10
**Gavin's [1]**   42/25
**Genego [13]**   2/2 2/3 3/4 3/6 3/8 4/7 5/7

6/23 13/16 16/6 19/12 33/19 57/8
**generally [5]**   6/24 8/23 30/22 56/13 57/22
**get [13]**   6/23 13/18 23/2 23/10 23/13 32/2 41/23 45/17 48/20 52/2 52/15 53/22 56/12
**gets [2]**   8/19 8/20
**getting [1]**   20/24
**girl [1]**   37/22
**gist [1]**   43/7
**give [4]**   7/17 32/11 32/11 34/4
**given [8]**   5/2 5/2 20/21 27/1 31/3 34/16 34/21 51/25
**glare [3]**   25/2 25/4 25/4
**go [10]**   5/6 21/5 21/17 31/22 42/2 49/8 52/16 52/18 53/23 55/14
**goes [9]**   8/19 11/5 18/17 26/19 37/18 37/19 46/10 46/11 49/11
**going [54]**   5/9 5/11 7/8 9/8 12/9 15/25 20/9 23/15 24/21 25/20 26/25 30/12 32/1 32/4 32/4 32/8 32/10 32/10 32/14 32/15 32/15 32/16 32/20 33/9 34/16 34/17 35/8 35/17 38/23 38/24 40/10 41/17 42/10 42/16 46/12 46/25 48/18 49/1 49/5 49/8 50/11 51/19 51/23 52/16 52/18 53/12 53/22 54/4 54/6 55/3 56/2 56/4 57/1 57/4
**gone [2]**   22/4 27/4
**good [17]**   4/7 4/9 4/10 4/12 4/13 4/15 4/16 4/18 26/18 29/4 32/6 32/8 33/11 33/17 34/23 39/14 48/5
**got [7]**   30/15 39/14 39/14 42/19 42/20 43/17 45/11
**gotten [1]**   52/11
**grant [1]**   20/18
**GRANTED [1]**   3/13
**granting [1]**   42/20
**grappling [1]**   54/21
**great [2]**   26/23 54/13
**guess [2]**   18/10 50/15
**guidance [1]**   5/2
**guilt [3]**   7/3 26/5 50/7
**guilty [4]**   32/24 35/9 39/1 39/1
**guy [3]**   26/17 29/22 39/1
**guys [2]**   56/18 56/19

**H**

**had [44]**   8/1 8/10 8/13 12/14 12/17 13/6 13/24 16/20 18/13 20/7 21/8 21/10 21/11 21/23 22/1 22/10 22/3 27/1 27/7 27/9 27/12 27/14 27/25 28/8 28/15 28/16 29/3 29/8 29/9 31/1 32/21 33/11 33/11 36/12 38/14 41/6 41/13 44/14 46/15 47/2 48/2 51/24 52/5
**handled [3]**   44/6 46/2 47/1
**handling [2]**   32/6 51/10
**hands [1]**   27/7
**handwritten [1]**   14/11
**hang [1]**   23/15
**hangs [1]**   8/23
**happen [2]**   10/14 54/6
**happened [4]**   28/13 29/5 40/13 52/4
**hard [1]**   12/9
**has [16]**   4/21 9/11 10/16 11/11 16/6 32/9 34/18 34/25 39/3 43/12 45/15 47/19 48/2 51/22 52/4 53/12
**hasn't [1]**   10/5
**have [97]**
**haven't [4]**   5/24 27/18 52/23 52/24
**having [5]**   6/9 27/13 36/2 40/9 45/8
**he [77]**
**he's [8]**   9/19 15/20 22/4 25/4 29/20 29/20 47/4 53/4
**he-said [1]**   25/6
**headed [1]**   5/5
**heading [1]**   10/6
**hear [4]**   32/15 32/16 53/7 56/15

**H**

**heard [4]** 19/24 28/2 37/11 40/23
**hearing [14]** 25/23 27/14 27/16 27/25 28/11 28/15 28/24 29/3 31/18 36/18 36/20 37/4 51/14 56/2
**held [2]** 28/7 58/8
**hell [1]** 23/14
**Heller [2]** 49/23 49/24
**Hello [1]** 9/16
**help [2]** 22/18 23/17
**helpful [2]** 23/7 53/13
**her [2]** 52/23 53/11
**here [14]** 4/20 10/6 13/8 17/20 18/19 24/23 32/7 32/20 43/21 44/24 47/17 49/25 50/1 52/21
**here's [1]** 31/21
**hereby [1]** 58/5
**hide [2]** 20/22 22/18
**high [2]** 23/14 53/11
**highly [1]** 41/12
**him [16]** 19/1 20/8 21/10 21/19 22/1 23/2 29/19 29/22 36/3 37/14 37/20 37/21 42/1 47/3 53/3 53/5
**himself [4]** 8/4 22/18 22/25 27/7
**hired [1]** 27/4
**Hirsch [1]** 2/2
**his [19]** 8/6 22/19 24/1 25/13 27/7 28/5 30/4 30/16 31/5 33/24 35/9 35/13 36/24 40/21 40/23 40/24 49/8 52/6 56/8
**historically [1]** 44/12
**hold [2]** 29/7 42/17
**holding [1]** 9/10
**hole [1]** 46/5
**holidays [1]** 56/18
**home [1]** 20/7
**Honor [37]** 4/7 4/10 4/13 4/16 5/20 7/5 8/14 9/5 10/12 10/20 11/8 13/7 13/23 16/17 17/5 17/10 22/25 23/9 25/19 26/9 27/14 27/22 28/22 28/25 29/18 31/11 33/20 35/11 39/20 40/16 48/23 53/19 55/19 56/21 57/10 57/12 57/13
**HONORABLE [1]** 1/3
**hope [1]** 55/15
**house [5]** 7/21 9/1 9/13 9/22 12/15
**how [16]** 4/25 16/15 17/16 19/10 21/3 21/3 24/20 29/13 29/17 38/17 39/24 40/12 41/4 42/7 46/2 51/23
**HOWARD [1]** 1/3
**however [1]** 38/25
**huge [2]** 32/4 36/25
**huh [1]** 53/2

**I**

**I'd [1]** 13/16
**I'll [2]** 4/25 54/18
**I'm [35]** 10/2 10/4 12/9 17/8 17/9 17/23 20/4 23/19 26/10 26/11 27/17 30/17 32/4 32/10 33/2 34/5 34/6 37/1 38/16 40/9 41/11 41/11 41/13 41/17 41/17 41/23 42/10 42/10 48/18 51/1 52/14 53/25 54/9 54/21 57/7
**I've [8]** 4/21 5/2 5/20 42/19 42/20 43/17 56/14 57/3
**idea [1]** 45/14
**ignores [1]** 30/12
**ill [1]** 52/4
**immediately [2]** 8/1 9/23
**immunity [2]** 25/11 25/18
**immunize [1]** 30/10
**impede [1]** 33/22
**implicated [1]** 8/10
**important [1]** 41/20
**importantly [1]** 44/15

**imposed [1]** 47/14
**inability [1]** 42/10
**incident [1]** 8/2
**inclined [2]** 51/15 56/22
**included [8]** 13/23 14/18 14/21 14/23 15/1 15/5 15/8 44/3
**includes [1]** 33/1
**including [1]** 16/12
**incomplete [1]** 30/16
**inconsistencies [1]** 22/6
**inconsistency [1]** 22/21
**incorporated [4]** 16/24 17/2 17/14 17/16
**incorrect [1]** 44/20
**incriminating [2]** 19/21 30/24
**independent [1]** 30/10
**independently [1]** 43/14
**indicated [1]** 10/17
**indifferent [1]** 26/13 38/9
**individual [3]** 7/13 13/9 49/21
**ineffective [2]** 11/7 37/1
**influenced [1]** 35/16
**information [41]** 5/17 9/8 9/10 9/17 11/12 16/25 17/15 17/20 17/22 17/22 18/3 18/7 18/9 18/11 18/14 18/14 19/20 20/15 21/6 21/11 21/22 21/25 22/2 22/4 22/5 22/6 22/16 22/18 22/23 23/6 23/8 24/8 25/1 27/2 27/7 27/24 28/3 28/3 28/12 28/16 29/6
**initial [2]** 8/18 20/14
**initially [1]** 9/13
**innocence [2]** 26/6 50/7
**inquired [1]** 16/21
**inquired about [1]** 16/21
**inquiry [3]** 10/11 11/1 46/20
**inside [1]** 38/7
**insistence [1]** 47/21
**instead [1]** 9/14
**institutionally [1]** 51/10
**instructed [1]** 34/14
**instruction [1]** 46/18
**instructions [3]** 31/7 34/15 35/2
**intend [3]** 6/8 7/2 47/9
**intent [7]** 12/6 19/9 20/11 34/5 38/19 43/1 50/18
**intentional [2]** 38/9 38/9
**intentionally [1]** 19/1
**interested [1]** 8/25
**internal [10]** 43/2 43/25 44/2 45/13 46/24 47/13 48/2 49/20 50/2 56/3
**interpretation [1]** 29/8
**interrelated [1]** 51/8
**interrupt [1]** 43/17
**intertwined [1]** 49/20
**intervening [1]** 30/10
**interview [15]** 7/25 8/2 8/3 8/5 12/25 14/2 14/5 14/8 14/12 14/23 15/9 21/16 21/22 22/25 26/7
**interviews [6]** 12/17 13/7 13/8 13/9 21/6 37/13
**introduce [5]** 6/8 7/2 35/8 37/6 37/10
**introduced [3]** 7/7 36/7 37/8
**introducing [1]** 36/8
**investigation [13]** 25/8 25/14 27/5 42/25 43/12 44/2 44/15 46/6 46/24 49/10 49/13 49/20 50/3
**investigation as [1]** 46/6
**investigations [2]** 43/3 48/4
**investigative [1]** 12/23
**invidious [3]** 12/6 19/9 38/19
**involved [2]** 21/12 29/8
**involvement [5]** 8/10 27/12 28/2 28/6 28/8
**irrelevant [2]** 12/3 12/5
**irrespective [1]** 27/6
**is [161]**

**I**

**isn't [2]** 30/15 31/9
**issue [16]** 7/19 8/12 10/22 11/6 12/19 13/8
13/19 17/25 20/24 24/3 24/18 26/25 42/23
49/4 49/19 56/14
**issued [1]** 48/15
**issues [9]** 4/23 5/3 5/10 33/2 36/19 39/11
40/14 48/17 48/20
**it [151]**
**it's [30]** 6/25 9/15 11/22 12/3 12/5 14/22
17/9 17/10 18/6 18/11 20/13 24/7 24/23 25/6
26/16 27/17 31/20 32/7 32/20 40/10 40/17
42/11 42/11 42/16 45/2 46/18 47/12 48/19
53/22 56/2
**Item [1]** 4/4
**items [1]** 16/7
**its [1]** 35/6
**itself [2]** 35/24 44/15

**J**

**Jim [1]** 47/2
**John [11]** 17/1 18/12 21/19 22/5 22/9 22/18
23/1 26/24 27/24 28/2 28/5
**Joint [1]** 42/6
**Jr [1]** 2/3
**judge [27]** 1/3 6/3 6/5 11/18 15/16 21/2
28/15 28/20 28/23 29/20 30/7 30/18 30/18
30/20 30/25 31/1 31/6 34/7 36/21 41/13
51/16 52/22 52/25 53/1 53/4 53/9 54/13
**judge's [1]** 6/11
**Judicial [2]** 48/13 58/10
**jurors [2]** 5/17 39/14
**jury [23]** 20/11 20/11 23/11 24/10 24/11
29/24 32/14 32/15 34/8 34/14 35/2 35/14
37/10 37/11 38/15 39/5 39/19 40/2 40/12
41/22 46/3 46/18 57/6
**jury's [2]** 33/22 50/4
**just [33]** 7/17 8/15 10/6 12/22 16/6 19/12
22/25 24/13 24/22 25/23 26/9 28/17 29/2
29/6 30/7 30/15 34/1 35/18 35/23 36/6 36/18
37/8 40/4 47/17 48/24 50/6 51/9 52/14 53/8
53/24 54/1 54/11 54/18

**K**

**keep [6]** 19/7 29/21 29/23 30/13 35/23 36/5
**keeping [2]** 28/20 31/2
**Khero [1]** 2/2
**kind [4]** 9/15 10/25 11/1 25/6
**Kitson [1]** 2/7
**knew [7]** 20/3 20/3 20/5 20/8 41/1 41/4 41/9
**knife [2]** 37/15 37/21
**know [32]** 10/20 12/20 15/16 17/21 19/25
20/3 20/8 23/2 23/5 24/14 24/20 24/20 24/25
25/7 29/17 29/19 30/23 32/10 32/19 38/11
41/5 42/7 43/19 47/2 48/19 52/20 53/5 53/9
53/21 55/15 56/1 56/24

**L**

**L.A [1]** 15/22
**Landgren [9]** 17/6 27/9 29/3 29/7 34/13
44/18 45/8 48/21 50/17
**Landgren's [3]** 14/16 16/9 16/23
**Langdon [1]** 12/14
**Langdon's [1]** 12/25
**Langford [3]** 14/17 21/21 22/1
**Langford's [1]** 14/24
**language [1]** 18/21
**LAPD [3]** 44/25 48/2 51/10
**Larez [2]** 47/5 47/8
**large [3]** 35/7 36/11 37/3
**largely [1]** 36/18
**last [2]** 51/14 52/21
**late [1]** 56/2

**later [6]** 5/1 8/24 21/9 23/24 41/14 43/4
**latter [1]** 19/23
**latter [1]** 23/24
**law [5]** 2/3 2/4 2/8 43/14 46/21
**lawyer [6]** 12/3 20/5 23/6 31/5 33/7 41/11
**lawyers [4]** 31/17 32/5 32/7 39/15
**lay [1]** 35/14
**lazy [1]** 20/6
**least [6]** 23/18 25/4 33/17 44/13 46/15
48/19
**leave [3]** 35/22 37/8 40/7
**leaves [2]** 37/17 37/22
**leaving [1]** 50/6
**lectern [2]** 5/6 5/11
**led [1]** 11/13
**left [1]** 16/24
**legal [2]** 12/2 31/7
**legitimacy [1]** 12/2
**legitimate [1]** 33/17
**legitimately [1]** 28/7
**lengthened [1]** 32/15
**let [12]** 8/14 17/5 20/11 24/11 24/13 25/24
30/25 31/14 34/1 35/2 47/17 50/13
**let's [3]** 11/15 18/16 53/7
**letter [11]** 21/10 23/23 24/4 43/4 43/5 49/7
49/9 49/14 49/15 51/25 53/20
**letting [2]** 20/8 29/24
**level [1]** 53/10
**liability [3]** 31/13 50/7 50/16
**liable [1]** 46/19
**lie [5]** 24/7 24/21 36/14 38/4 40/22
**lied [2]** 27/2 36/12
**light [3]** 7/10 8/8 45/6
**like [12]** 5/3 9/15 9/19 19/19 25/6 28/17
31/8 32/6 33/10 34/19 53/11 55/7
**likely [1]** 56/11
**limine [3]** 3/13 4/20 11/6 25/9 26/1 26/21
42/9 42/21 42/24 54/19 55/6 55/14 56/22
**limit [1]** 36/6
**limitations [1]** 31/8
**limited [2]** 20/19 36/18
**Linda [1]** 14/6
**line [3]** 36/15 39/23 40/24
**line-of-sight [1]** 39/23
**LISKER [34]** 1/7 4/5 4/8 4/11 4/14 7/15 8/1
8/4 8/10 8/20 9/14 9/24 12/12 12/20 12/20
12/25 13/2 13/3 13/4 13/21 14/2 19/18 21/8
23/15 23/17 28/10 30/24 31/4 35/8 36/1
36/12 39/9 39/15 40/18
**Lisker's [4]** 9/13 11/13 33/23 40/22
**list [7]** 55/5 55/10 55/11 55/12 55/13 55/18
55/20
**listen [1]** 11/17
**Lister [1]** 8/13
**litigation [1]** 19/19
**litigator [1]** 19/25
**Litt [6]** 2/7 2/8 3/9 4/10 5/22 43/17
**Litt's [1]** 13/17
**little [3]** 5/1 11/4 26/25
**Local [1]** 51/20
**located [1]** 21/19
**location [1]** 22/10
**long [5]** 23/24 27/18 31/22 48/2 48/7
**look [9]** 16/19 17/21 18/2 20/1 21/18 32/18
32/20 40/16 55/24
**looking [5]** 10/15 17/7 17/8 17/22 17/23
**los [8]** 1/10 1/16 1/24 2/9 2/13 2/16 4/1
4/5
**lose [1]** 38/15
**lot [11]** 10/23 22/5 26/16 31/7 33/5 33/16
41/6 48/6 49/4 50/2 54/17
**lousy [1]** 20/6
**love [1]** 30/1

**L**

**lying [2]**   23/3 38/6

**M**

**made [17]**   5/20 6/4 7/14 7/23 10/10 10/22
11/18 12/24 18/6 28/3 28/20 36/2 40/11
44/17 46/13 48/6 52/1
**magistrate [1]**   53/1
**Main [1]**   2/5 2/15
**make [6]**   33/22 34/20 35/14 41/18 49/11
54/11
**makes [3]**   18/5 50/8 57/5
**making [1]**   41/17
**man [1]**   29/24
**manage [1]**   39/6
**management [6]**   4/24 5/3 5/10 48/15 49/19
53/10
**managerial [1]**   57/5
**manipulated [1]**   48/12
**manner [3]**   8/4 8/5 28/9
**many [2]**   7/16 22/14
**marked [1]**   5/15
**material [1]**   20/19
**matter [6]**   4/17 9/15 22/20 23/14 53/25 58/8
**matters [1]**   44/25
**MATZ [1]**   1/3
**may [12]**   4/19 7/11 7/11 12/9 23/20 24/10
31/7 33/8 48/23 54/13 54/14 57/7
**maybe [6]**   13/11 26/2 29/22 33/9 49/1 52/14
**me [24]**   8/14 10/8 12/24 13/15 16/11 17/5
18/21 24/22 25/23 25/24 26/7 31/3 31/14
34/1 34/4 38/11 38/16 42/5 43/17 44/4 47/17
47/18 50/13 55/8
**mean [21]**   9/3 9/21 10/12 10/13 10/15 10/22
11/4 12/21 17/21 22/4 24/22 25/7 25/19
25/20 26/23 31/7 31/9 33/8 35/20 36/20 54/5
**meaning [2]**   21/19 25/10
**means [1]**   54/12
**mediation [1]**   54/7
**mediator [2]**   52/9 54/13
**meet [1]**   21/10
**meetings [1]**   37/15
**mention [1]**   27/3
**mentioned [1]**   51/13
**Michael [11]**   17/1 18/12 21/20 22/6 22/10
22/19 23/1 26/24 27/24 28/2 28/5
**might [3]**   10/9 33/12 52/1
**mind [16]**   19/4 20/12 24/1 24/6 24/16 26/5
30/8 35/20 49/8 49/12 49/24 50/1 50/4 50/23
50/24 51/15
**mind-boggling [2]**   30/8 51/15
**minded [3]**   18/25 19/18 43/3
**minimize [1]**   28/1
**minimum [1]**   45/15
**minute [4]**   18/16 33/3 39/11 43/16
**minutes [2]**   8/24 42/3
**misclassification [1]**   48/14
**misclassified [1]**   44/14
**misconduct [4]**   43/4 47/13 48/5 48/7
**Mississippi [1]**   21/19
**mistake [1]**   40/11
**moment [2]**   12/1 51/7
**moments [1]**   45/20
**MONDAY [2]**   1/17 4/1
**Monell [18]**   33/2 39/11 42/23 42/24 43/9
43/11 45/18 46/22 47/19 48/16 48/20 49/18
50/8 50/11 50/18 50/23 51/11 56/22
**Monica [1]**   2/5
**Monsue [36]**   7/25 8/7 10/9 12/3 12/14 12/25
17/23 18/12 21/9 21/15 21/24 22/7 22/8
22/11 22/16 22/17 22/23 22/25 23/13 23/22
25/11 25/15 27/8 27/14 27/25 28/7 29/3 29/7

29/22 34/13 37/13 44/18 45/8 48/21 49/8
28/4 43/5
**Monsue's [8]**   14/2 14/5 14/8 14/11 15/3 15/9
**month [1]**   37/18
**more [20]**   4/24 9/8 9/15 23/20 26/8 32/16
32/16 32/19 36/24 38/2 38/3 38/4 39/5 39/6
46/22 47/12 49/22 51/3 51/15 54/25
**morning [8]**   4/7 4/9 4/10 4/12 4/13 4/15
4/16 4/18
**most [6]**   7/24 19/21 40/21 41/20 44/14 55/4
**motel [3]**   15/7 22/2 22/8
**mother [1]**   40/23
**motion [12]**   3/13 11/21 11/24 25/9 25/25
26/21 28/15 36/7 42/9 42/20 42/23 56/21
**motions [9]**   4/20 4/22 5/9 7/1 11/5 54/19
55/5 55/14 55/24
**move [1]**   42/19
**MR [69]**
**Ms [1]**   5/21
**much [5]**   32/20 36/24 39/5 39/5 49/21
**Mulcahey [13]**   11/25 12/13 12/21 12/24 13/22
13/24 15/12 15/13 16/8 19/13 28/14 30/16
30/16
**Mulcahey's [1]**   11/19
**murder [17]**   7/15 8/11 12/15 13/24 13/25
14/3 14/19 14/22 15/1 15/3 15/11 16/3 16/9
16/13 17/14 21/12 34/24
**murderer [3]**   9/1 9/10 9/11
**must [1]**   29/15
**my [20]**   5/3 6/24 11/22 12/16 13/7 15/18
17/12 23/20 26/2 31/19 34/5 41/18 41/19
48/1 48/15 53/21 53/21 56/1 56/11 57/3

**N**

**name [2]**   30/4 48/3
**Nasatir [1]**   2/2
**nature [1]**   34/13
**necessarily [2]**   34/5 55/14
**necessary [2]**   5/16 56/8
**need [6]**   19/9 33/10 42/7 54/20 55/15 56/17
**negated [1]**   26/2
**neglect [1]**   46/14
**neither [1]**   10/22
**neutral [1]**   19/4
**never [7]**   7/16 8/12 31/24 37/11 45/11 45/16
53/2
**new [2]**   7/2 26/6
**newly [2]**   11/2 11/3
**next [2]**   6/21 29/22
**nicely [1]**   31/23
**nine [1]**   55/6
**Ninth [3]**   43/14 46/18 46/20
**NIRENBERG [2]**   1/23 58/16
**no [24]**   1/9 3/13 6/1 9/4 11/18 16/3 18/14
20/7 22/15 22/24 23/14 25/17 36/12 43/23
44/1 49/18 50/8 50/24 52/19 53/23 53/25
55/10 55/12 58/16
**nobody [1]**   33/12
**non [1]**   49/24
**non-state-of-mind [1]**   49/24
**none [1]**   20/21
**nonexistent [1]**   47/15
**North [2]**   1/24 2/15
**not [90]**
**not the [1]**   23/8
**notation [1]**   16/3
**note [1]**   39/8
**notes [16]**   12/17 12/17 12/25 14/1 14/2 14/5
14/8 14/11 14/16 14/24 15/3 16/9 16/18
16/23 17/2 17/6
**nothing [1]**   29/11
**notion [2]**   24/13 38/6

## N

**notwithstanding [1]**  56/18
**now [26]**  5/2 7/23 10/8 11/21 12/22 12/22 17/7 20/25 21/24 23/14 35/2 35/22 36/24 38/22 39/4 42/23 47/4 48/22 49/1 50/13 50/13 51/13 51/15 52/25 54/19 54/25
**nowhere [1]**  18/3
**number [8]**  4/4 5/9 5/9 9/12 16/19 16/20 17/1 22/14

## O

**o'clock [3]**  22/11 22/21 22/22
**objective [1]**  18/25
**obligation [4]**  21/4 53/20 54/1 54/3
**obtained [2]**  47/22 47/23
**obviously [6]**  10/20 12/19 24/23 52/16 53/22 54/5
**obviously it's [1]**  53/22
**occasions [1]**  47/4
**occurred [2]**  46/16 46/23
**of the [1]**  4/17
**off [3]**  18/13 23/20 42/17
**offered [1]**  28/1
**office [4]**  2/13 53/11 53/21 53/21
**officer [2]**  47/15 48/6
**officers [6]**  45/14 47/13 47/14 49/12 49/21 51/9
**officers' [1]**  50/4
**Official [2]**  1/23 58/17
**oh [2]**  17/8 57/2
**Okay [17]**  9/19 11/15 16/6 18/16 28/18 29/1 29/19 43/18 47/16 48/15 49/16 50/9 51/13 54/10 55/16 55/22 57/9
**once [4]**  27/1 32/1 32/16 39/5
**one [23]**  11/21 14/19 15/24 18/1 18/5 18/13 22/8 22/9 22/11 29/10 29/12 33/14 36/12 37/15 41/20 41/20 42/1 46/22 50/21 50/21 51/4 53/8 54/14
**ones [3]**  54/23 55/4 55/5
**only [15]**  21/4 23/17 25/7 26/22 26/23 34/21 34/23 39/8 41/11 41/20 48/3 51/16 53/21 54/14 54/20
**oOo [1]**  57/15
**open [1]**  53/5
**opinion [1]**  6/11
**opportunity [3]**  31/4 34/21 47/2
**oppose [1]**  26/20
**opposed [3]**  25/13 29/23 46/6
**opposite [1]**  23/21
**opposition [2]**  7/1 25/25
**optimistic [1]**  51/7
**order [5]**  6/25 23/2 26/2 31/19 54/7
**ordering [2]**  41/24 54/9
**orders [2]**  36/24 54/5
**original [3]**  33/23 43/12 53/24
**originally [2]**  32/21 51/15
**other [27]**  7/6 10/19 11/5 12/4 12/19 16/12 16/13 17/13 17/25 19/22 19/23 20/7 20/24 23/19 24/18 25/3 29/22 30/20 30/22 36/16 41/6 41/12 42/19 48/12 51/5 54/19 55/5
**ought [1]**  34/7
**our [12]**  5/8 7/9 7/13 9/8 13/24 14/4 14/21 14/23 15/12 36/13 37/12 51/2
**out [30]**  7/24 10/23 12/7 16/24 19/7 22/9 23/2 23/13 25/22 26/12 26/12 26/17 28/20 29/21 29/23 30/13 31/2 33/13 35/2 35/11 35/15 37/8 37/17 37/19 40/20 42/2 52/3 54/16 56/12 56/19
**outset [2]**  34/14 46/6
**outside [1]**  25/9
**over [19]**  13/1 13/10 13/22 14/20 15/6 15/25 16/5 17/11 19/3 19/8 19/13 19/15 19/16 20/1 23/6 30/16 33/7 42/15 46/13
**overwhelming [2]**  20/15 34/22
**owe [2]**  31/16 31/16
**own [2]**  27/5 48/13

## P

**page [2]**  3/3 58/9
**pages [2]**  40/17 41/1
**Palmer [2]**  37/15 37/22
**papers [1]**  55/24
**paramedics [1]**  9/7
**paramount [1]**  57/4
**parole [2]**  23/23 35/9
**part [15]**  6/6 6/12 11/7 15/11 16/13 25/13 36/11 37/3 38/8 39/3 47/20 47/20 50/17 51/8 56/12
**particular [11]**  6/2 8/3 10/13 16/22 17/21 18/11 22/20 27/25 29/19 29/10 45/3
**particularly [4]**  24/16 30/22 48/5 57/7
**parties [3]**  5/13 6/18 41/19
**parts [4]**  42/4 42/5 47/19 50/10
**party [3]**  10/22 19/20 32/24
**past [1]**  53/9
**path [1]**  31/1
**pattern [5]**  46/24 47/8 47/10 47/11
**Penal [2]**  27/20 28/19
**pending [1]**  42/9
**people [1]**  9/6
**perceived [1]**  32/21
**percent [1]**  46/13
**period [3]**  24/5 48/7 51/17
**perjure [1]**  22/18
**permissible [1]**  20/10
**permit [4]**  37/6 51/19 56/4 56/7
**permitted [5]**  16/14 38/5 39/12 39/18 41/15
**permitting [1]**  38/22
**personal [1]**  20/6
**personally [2]**  20/5 23/1
**personnel [1]**  44/25
**perspective [6]**  8/25 9/24 10/16 45/13 45/14 52/7
**persuade [1]**  16/11
**persuaded [1]**  57/7
**phase [30]**  7/3 7/4 26/4 31/12 31/13 31/25 31/25 32/2 32/3 32/9 32/9 32/13 33/14 34/8 35/19 35/22 35/23 36/5 37/7 38/18 38/23 38/25 39/10 40/4 40/7 40/19 42/11 50/8 50/16 51/17
**phases [2]**  31/21 32/17
**Phillips [2]**  6/5 30/18
**phone [7]**  8/23 9/13 9/14 9/16 14/16 16/9 33/10
**photographs [5]**  39/25 41/8 41/14 41/15 41/16
**phrase [2]**  19/24 43/8
**physical [1]**  36/16
**pick [1]**  11/15
**picture [1]**  33/13
**piece [5]**  16/25 29/25 31/23 40/21 46/11
**pieces [1]**  23/19
**pigeon [1]**  46/5
**pin [1]**  10/2
**placed [2]**  24/10 24/10
**plain [1]**  18/21
**plaintiff [16]**  1/8 2/2 4/21 11/23 18/18 19/14 22/19 23/14 26/12 28/14 29/4 30/1 31/17 32/2 32/3 32/22
**plaintiff's [3]**  12/13 18/24 20/2
**please [4]**  4/6 5/11 7/18 11/17
**pleasure [1]**  32/7
**plus [1]**  24/6
**Podberesky [4]**  2/2 2/4 4/14 5/21
**point [19]**  8/13 9/20 19/6 21/7 21/14 21/21

**P**

**point...** **[13]**  21/24 27/1 27/13 30/21
40/19 41/17 42/12 47/24 51/2 52/16 55/12
57/5
**pointing** **[1]**  23/12
**police** **[11]**  8/15 8/19 9/3 9/9 43/3 45/1
45/13 46/13 47/13 48/6 48/6
**policy** **[10]**  43/10 43/15 43/20 44/7 44/25
46/11 46/23 47/20 47/25 48/13
**policymaker** **[2]**  44/25 46/19
**policymakers** **[1]**  44/24
**portion** **[4]**  20/14 23/10 24/19 28/4
**posit** **[1]**  30/2
**position** **[6]**  10/10 14/21 14/23 18/18 29/4
50/9
**posits** **[1]**  56/8
**post** **[1]**  56/3
**post-conviction** **[1]**  56/3
**potential** **[3]**  9/1 36/1 36/4
**potentially** **[5]**  10/14 18/8 21/11 51/6 55/4
**powerful** **[1]**  39/24
**practical** **[3]**  49/19 50/21 51/4
**practice** **[4]**  43/1 44/8 46/12 47/25
**pre** **[1]**  51/8
**pre-trial** **[1]**  51/8
**precludes** **[1]**  19/8
**preclusive** **[1]**  6/9
**prejudice** **[4]**  36/1 36/5 38/20 39/9
**prejudiced** **[2]**  38/25 39/12
**premature** **[1]**  52/15
**prepare** **[2]**  42/20 51/2
**prepared** **[2]**  6/4 52/13
**prepares** **[1]**  37/16
**preponderance** **[1]**  34/9
**presence** **[1]**  34/23
**present** **[5]**  41/2 53/20 54/1 54/2 54/3
**presentation** **[2]**  25/10 25/13
**presented** **[6]**  8/4 17/23 44/3 44/22 45/7 45/8
**presenting** **[1]**  45/14
**pretty** **[2]**  15/24 33/11
**prevail** **[1]**  50/15
**preventing** **[1]**  43/2
**previously** **[2]**  38/18 57/8
**principal** **[1]**  16/11
**print** **[4]**  30/23 36/14 38/2 39/21
**prints** **[4]**  36/9 38/14 44/20 44/21
**prior** **[1]**  18/10
**probably** **[6]**  23/20 25/20 42/16 55/6 55/23
56/13
**probative** **[6]**  12/6 16/14 18/18 24/1 24/15
28/17
**problem** **[2]**  32/4 40/9
**procedural** **[1]**  5/14
**proceed** **[3]**  31/1 51/11 54/7
**proceeded** **[1]**  18/25
**proceeding** **[3]**  6/19 32/6 50/18
**proceedings** **[4]**  1/15 45/7 57/14 58/8
**process** **[5]**  5/13 11/14 21/15 25/9 54/1
**procured** **[1]**  34/10
**produce** **[3]**  19/20 19/21 25/2
**produced** **[1]**  25/4
**professional** **[2]**  19/4 30/2
**program** **[2]**  37/16 37/22
**progress** **[1]**  5/21
**promising** **[1]**  54/13
**pronounce** **[2]**  29/17 30/4
**proof** **[3]**  34/8 34/20 43/6
**proper** **[1]**  5/1
**properly** **[4]**  18/23 23/16 47/22 47/23
**propose** **[1]**  35/17
**proposed** **[2]**  41/25 55/20
**proposition** **[1]**  49/25

**prosecution** **[7]**  7/23 20/3 20/5 21/7 29/14
29/18 42/2
**prosecutive** **[1]**  12/23
**prosecutor** **[10]**  7/16 20/4 21/1 25/15 27/2
27/3 27/7 27/18 28/14 29/20
**prospect** **[1]**  51/13
**prospective** **[1]**  5/17
**protective** **[1]**  50/22
**prove** **[28]**  19/15 24/12 26/13 26/15 32/22
32/23 33/4 34/21 34/25 35/8 36/13 38/1 38/2
38/3 38/4 38/8 38/12 38/13 38/20 40/1 40/25
41/4 41/9 41/16 41/16 50/1 50/11 50/24
**proven** **[1]**  48/7
**proves** **[3]**  24/11 34/24 42/25
**provide** **[5]**  5/14 5/16 19/17 41/24 53/19
**provided** **[9]**  10/5 11/11 12/17 14/19 15/12
17/18 22/1 22/3 22/16
**providing** **[1]**  21/6
**proving** **[2]**  34/9 39/4
**provisions** **[1]**  28/19
**pulled** **[1]**  37/14
**pulling** **[1]**  37/21
**purport** **[1]**  32/11
**purpose** **[3]**  28/8 37/7 37/12
**purposes** **[5]**  22/14 24/21 25/10 25/12 25/13
**pursuant** **[1]**  58/5
**pursue** **[2]**  12/3 52/13
**pursued** **[1]**  45/15
**put** **[8]**  10/10 11/23 20/10 26/3 26/6 34/18
39/13 46/13
**putting** **[5]**  12/1 18/20 20/25 33/2 39/11

**Q**

**quadricate** **[2]**  48/19 56/23
**question** **[15]**  6/21 6/22 9/20 23/1 23/7 24/9
25/24 26/5 28/7 30/7 32/11 37/18 37/19
45/17 46/3
**questions** **[5]**  5/4 8/5 8/6 8/24 12/10
**quickly** **[2]**  17/24 56/17
**quite** **[2]**  43/8 55/7

**R**

**Rabachow** **[8]**  29/16 29/18 29/19 30/3 30/6
30/21 40/21 41/2
**railroad** **[1]**  28/10
**railroaded** **[4]**  32/22 32/23 33/1 33/5
**railroading** **[1]**  34/13
**raised** **[1]**  50/7
**ran** **[2]**  18/12 18/13
**rap** **[1]**  18/12
**rather** **[1]**  11/10
**ratification** **[12]**  43/10 43/13 44/6 45/5
45/18 45/21 45/24 46/1 47/19 47/21 56/6
56/10
**ratified** **[7]**  43/11 43/21 45/5 45/8 45/22
45/25 46/17
**ratify** **[1]**  46/19
**ratifying** **[1]**  43/1
**raw** **[1]**  29/6
**re** **[1]**  25/8
**re-creation** **[1]**  25/8
**read** **[1]**  36/24
**readily** **[1]**  49/11
**real** **[2]**  4/23 52/13
**reality** **[2]**  29/14 30/12
**realize** **[1]**  23/24
**really** **[24]**  8/12 10/22 12/4 18/5 27/7 28/11
29/14 30/7 31/18 32/18 32/20 33/22 35/14
35/18 36/4 36/17 40/15 43/9 46/20 49/24
55/25 56/2 56/17 56/19
**realms** **[1]**  25/9
**rear** **[1]**  7/21
**reason** **[7]**  8/8 18/22 20/7 33/21 37/23 50/21

**R**

reason... [1]  50/22
reasonable [1]  34/25
reasons [7]  31/1 33/8 35/7 39/17 50/20
51/11 53/8
recklessly [1]  26/13
reconsider [1]  35/6
record [4]  16/3 16/4 19/17 29/11
recorded [3]  8/2 8/17 26/7
refer [1]  28/19
reference [1]  6/25
referred [1]  28/23
referring [6]  17/9 19/25 27/20 28/21 30/17
41/13
reflect [1]  12/6
reflection [1]  46/24
refute [1]  34/19
regard [1]  53/11
regarding [10]  7/19 7/20 17/1 18/7 21/10
22/5 24/3 24/19 25/8 28/5
Regardless [1]  45/10
registration [1]  15/7
regulations [1]  58/10
relating [6]  11/21 11/22 13/21 26/1 34/12
42/10
relationship [1]  49/14
relevancy [1]  27/18
relevant [7]  23/25 24/5 24/22 24/24 44/6
50/3 56/8
relied [3]  10/9 28/3 40/20
relying [1]  22/5
remaining [1]  55/23
remembering [1]  23/20
rephrase [1]  8/14
replies [1]  55/2
report [4]  11/1 16/24 17/17 42/6
reported [2]  44/19 58/7
Reporter [2]  1/23 58/17
REPORTER'S [1]  1/15
reports [3]  17/3 17/23 44/19
represent [1]  13/6
representing [1]  39/15
required [3]  19/20 42/14 53/25
requires [1]  38/21
reserved [2]  32/9 38/23
reserving [2]  38/18 42/21
resources [1]  19/23
respect [7]  10/20 16/18 18/9 26/24 31/12
37/25 39/21
respected [1]  41/12
respects [2]  4/22 30/22
respond [3]  42/1 48/25 53/24
response [1]  35/4
responses [1]  8/6
responsibilities [1]  5/8
responsibility [2]  30/11 45/3
responsible [1]  29/7
result [1]  34/10
retained [2]  11/2 11/3
reveal [1]  50/14
reveals [1]  22/24
reverse [1]  41/18
review [2]  5/2 48/13
reviewing [1]  4/22
right [16]  4/18 5/1 6/16 6/21 12/12 13/11
21/13 24/14 30/4 34/18 38/17 42/13 45/23
53/1 53/14 55/1
rights [1]  11/14
rings [1]  9/13
rise [1]  13/16
risks [1]  54/16
road [1]  25/23

Robachow [1]  29/16
Robert [5]  12/13 12/20 13/3 13/4 13/21
role [1]  21/1
routed [1]  8/19
rule [3]  4/20 51/20 55/23
rules [1]  4/24
ruling [13]  5/1 30/6 33/15 34/6 35/6 41/18
41/18 42/21 48/15 56/1 56/11 56/12
rulings [3]  28/20 31/8 42/2
ruse [1]  23/2
Ryan [35]  11/22 12/14 13/19 14/25 15/10
17/1 18/7 18/13 21/20 22/3 22/6 22/10 22/19
23/1 26/1 26/24 27/24 28/21 29/21 30/14
30/21 33/1 33/12 35/19 36/8 36/25 37/2 37/6
37/11 37/14 37/18 37/20 42/10 42/13 56/14
Ryan's [3]  14/9 28/2 28/5

**S**

said [14]  7/1 9/2 12/14 16/3 25/6 25/6
37/14 40/21 40/22 45/20 45/23 53/15 56/14
57/8
salami [1]  31/23
same [5]  26/3 26/12 34/18 42/16 57/6
sanitized [1]  19/17
Santa [1]  2/5
say [19]  4/25 6/10 9/7 10/9 13/2 14/20
15/25 19/3 22/20 22/21 24/23 26/15 31/17
37/10 39/16 41/13 42/13 53/9 55/10
saying [7]  9/17 25/1 25/3 39/9 43/5 48/2
49/16
says [1]  9/21
seasoned [1]  39/14
seated [1]  4/19
second [10]  10/11 34/1 35/22 37/3 40/7
42/23 46/22 47/20 47/25 48/24
Section [1]  58/5
see [22]  11/8 12/10 16/21 17/5 17/19 17/24
18/2 23/3 24/19 27/13 28/6 38/7 38/17 40/12
40/23 41/23 47/17 52/8 56/17 56/25 57/1
57/2
seek [1]  6/8
seeking [1]  37/7
seem [1]  42/12
seems [1]  38/11
seen [3]  7/20 7/21 25/1
sending [1]  9/5
sense [4]  18/22 50/8 52/13 57/5
sent [1]  49/8
separate [4]  35/11 35/15 48/18 50/8
September [3]  5/12 5/12 31/19
sequence [2]  26/2 55/21
Sergeant [3]  44/17 49/10 49/10
serious [2]  36/4 36/4
seriously [1]  52/13
set [1]  7/3
settle [1]  34/17
settlement [8]  51/14 51/25 52/2 52/17 52/18
53/2 53/17 54/16
settling [1]  51/6
several [1]  47/4
she [3]  25/6 54/13 54/14
she-said [1]  25/6
shedding [1]  8/8
sheet [1]  18/12
shifts [1]  47/12
shoe [8]  30/22 36/9 36/14 38/2 38/14 39/21
44/20 44/21
short [4]  36/6 54/21 55/7 56/10
shortcut [1]  13/11
should [10]  23/11 24/10 28/7 31/4 31/5 31/6
33/14 51/11 52/20 55/21
shouldn't [1]  16/14

**S**

**show [4]**  7/2 35/21 41/7 44/11
**showed [1]**  41/15
**showing [2]**  8/21 34/20
**shown [1]**  5/21
**shut [3]**  48/8 48/9 48/10
**shutting [1]**  42/25
**sic [1]**  23/21
**sick [1]**  52/3
**side [4]**  10/5 19/22 19/23 25/3
**sides [7]**  24/24 24/25 32/5 32/7 41/21 54/17
57/6
**sift [1]**  19/23
**sight [4]**  36/15 36/15 39/23 40/24
**significance [6]**  16/20 16/21 16/25 18/6
22/14 44/14
**significant [3]**  7/24 8/8 11/6
**simple [1]**  35/25
**simpler [1]**  32/20
**single [6]**  18/25 19/18 34/8 39/10 41/20
42/6
**single-minded [2]**  18/25 19/18
**sit [2]**  24/23 30/25
**sitting [4]**  21/2 29/22 29/25 47/3
**situation [3]**  25/7 49/23 49/24
**so [67]**
**So all [1]**  23/4
**solution [2]**  33/25 34/5
**some [31]**  4/22 5/4 7/10 7/17 8/13 8/21 8/24
9/8 9/17 9/20 10/19 10/20 10/25 11/1 11/5
11/10 11/22 19/21 20/7 23/16 27/1 28/8 28/8
28/17 30/23 32/16 36/16 40/13 51/11 55/5
55/6
**somebody [7]**  9/21 19/8 26/14 27/4 30/25
38/6 53/12
**somebody's [2]**  24/6 24/15
**somehow [5]**  16/23 16/24 22/17 24/5 29/7
**someone [2]**  36/13 56/7
**something [14]**  8/7 10/13 10/17 18/6 18/23
19/5 23/21 24/14 25/20 28/6 34/2 39/19
50/13 53/15
**sometime [1]**  43/4
**soon [2]**  54/12 56/12
**sorry [3]**  17/8 27/17 37/1
**sort [10]**  19/19 35/2 39/19 46/20 50/7 50/21
50/22 51/2 52/2 53/11
**sought [2]**  6/7 10/5
**sound [2]**  33/8 47/23
**special [1]**  32/3
**specific [3]**  7/9 47/23 52/1
**specifically [1]**  37/21
**specified [5]**  11/24 13/18 16/7 35/1 42/5
**spoke [1]**  20/23
**spoken [1]**  52/23
**Spring [1]**  1/24
**Sr [1]**  12/20
**stabbed [1]**  9/22
**stage [4]**  45/11 51/12 52/11 52/15
**stamp [1]**  17/10
**stand [5]**  5/4 27/15 28/1 52/6 53/17
**standard [2]**  44/7 46/12
**start [4]**  5/13 20/24 32/11 46/25
**state [19]**  4/6 9/15 19/4 20/11 24/1 24/6
24/15 26/4 27/18 27/20 28/15 35/20 49/8
49/12 49/24 50/1 50/4 50/23 50/24
**state-of-mind [2]**  50/23 50/24
**stated [2]**  13/6 16/18
**statement [3]**  6/12 16/4 37/16
**statements [2]**  35/9 36/2
**STATES [3]**  1/1 58/6 58/10
**status [2]**  5/12 42/6
**stay [1]**  13/13

**stenographically [1]**  58/7
**step [1]**  12/2
**stick [1]**  33/15
**still [6]**  9/1 15/18 26/18 35/5 50/18 52/24
**stipulated [1]**  38/13
**stipulation [5]**  5/14 41/19 41/25 56/16 56/25
**stop [2]**  31/14 54/18
**straightforward [2]**  20/19 35/25
**Street [3]**  1/24 2/5 2/15
**strong [2]**  33/6 33/11
**structure [1]**  32/12
**stuck [1]**  32/12
**stuff [4]**  19/13 29/21 42/12 56/14
**subject [3]**  11/24 26/21 31/8
**submitted [1]**  5/24
**substantial [1]**  5/21
**succinct [1]**  36/6
**such [2]**  25/17 33/11
**sufficient [1]**  40/1
**sufficiently [1]**  38/1
**suggesting [1]**  24/8
**suggests [1]**  23/21
**suing [3]**  31/5 31/5 31/6
**suit [1]**  31/9
**Suite [1]**  2/9
**summary [3]**  5/14 6/7 17/3
**Superior [1]**  15/22
**support [2]**  13/18 22/15
**supported [1]**  11/19
**suppose [3]**  19/11 19/14 20/2
**supposedly [1]**  26/4
**supression [1]**  28/24
**sure [9]**  10/3 11/16 12/24 15/24 16/19 31/15
34/3 42/10 54/11
**suspect [1]**  33/12
**sway [1]**  29/10
**swayed [1]**  28/9
**swaying [1]**  29/12
**sweeping [1]**  12/5
**system [1]**  47/14

**T**

**table [1]**  13/15
**tactical [2]**  50/14 50/21
**take [5]**  5/3 10/8 20/4 45/6 50/10
**taken [2]**  8/1 22/7
**taking [2]**  19/22 21/25
**talked [2]**  52/9 52/22
**talking [7]**  13/2 17/4 25/5 28/18 28/19 37/5
49/25
**tandem [1]**  12/21
**tape [4]**  8/2 8/17 9/25 26/7
**tape-recorded [3]**  8/2 8/17 26/7
**task [1]**  5/19
**team [4]**  12/23 29/14 29/16 51/22
**technology [1]**  41/15
**tell [5]**  18/21 38/16 41/5 47/18 57/3
**telling [3]**  12/24 29/20 30/19
**ten [1]**  55/6
**term [1]**  54/21
**terms [3]**  18/22 30/22 42/9
**terribly [1]**  51/7
**testified [5]**  15/15 15/16 29/3 44/18 47/4
**testify [7]**  10/24 15/13 33/9 40/24 47/2
56/5 56/7
**testimony [5]**  11/9 23/22 26/1 28/1 28/5
**than [12]**  4/24 26/8 32/16 32/16 32/19 32/21
36/24 38/2 38/4 38/4 51/15 54/17
**Thank [5]**  33/20 57/10 57/11 57/12 57/13
**that [472]**
**that quickly [1]**  56/17
**that's [41]**  6/16 6/20 10/7 10/12 10/13 11/4
12/8 14/1 14/4 15/11 17/20 18/1 18/18 19/3

**T**

**that's... [27]**   19/20 22/25 25/6 25/13 28/4
28/21 28/25 33/25 35/2 36/11 36/23 37/4
38/14 39/19 45/19 45/23 46/2 46/19 47/23
48/7 49/5 51/4 51/17 52/14 54/5 55/17 56/11
**the meetings [1]**   37/15
**The motel [1]**   15/7
**their [6]**   19/4 27/4 27/11 44/19 48/11 48/13
**them [14]**   5/10 6/15 9/11 10/22 24/11 34/17
35/15 35/16 49/22 51/25 53/12 55/6 55/24
55/25
**then [26]**   6/23 8/16 8/19 8/23 9/17 9/20
9/23 12/3 19/25 20/24 21/9 22/1 23/13 23/15
23/18 25/2 28/2 28/3 31/14 33/16 38/16
38/17 40/13 52/20 54/5 54/22
**theories [3]**   34/11 43/9 51/3
**theory [11]**   7/9 7/11 12/2 20/2 42/24 43/11
45/18 45/19 46/17 47/19 48/20
**there [65]**
**there were [1]**   49/6
**there's [14]**   9/17 9/20 10/23 13/8 22/15
23/18 24/24 24/25 25/17 26/8 29/15 49/4
50/24 55/10
**these [19]**   6/17 7/1 10/9 12/10 17/2 23/16
24/16 28/19 33/10 34/10 42/2 45/7 45/25
47/25 48/16 49/11 50/16 55/7 55/9
**they [75]**
**they're [4]**   22/5 35/13 55/7 55/25
**thing [4]**   7/24 15/24 36/25 45/21
**things [15]**   5/4 5/4 7/10 7/16 8/22 10/9
10/19 10/24 23/16 32/16 38/8 42/19 45/21
52/6 53/17
**think [61]**
**thinking [2]**   31/18 35/23
**thinly [1]**   31/24
**this [100]**
**thorough [1]**   43/3
**those [13]**   4/22 6/8 8/22 12/17 16/15 16/16
30/9 36/19 38/8 39/17 41/1 41/13 46/15
**though [3]**   17/13 37/5 44/10
**thought [2]**   7/16 40/11
**three [1]**   31/21
**threshold [1]**   33/23
**through [5]**   19/23 21/15 31/19 39/19 48/20
**thus [1]**   53/19
**time [30]**   7/12 7/14 8/3 8/4 8/7 8/15 8/20
10/21 13/6 21/5 21/7 23/6 23/17 23/24 24/4
26/12 27/3 27/19 28/10 29/4 30/8 30/12
34/18 47/16 48/2 48/7 50/5 51/17 52/21 57/6
**timely [1]**   54/12
**Title [1]**   58/6
**today [2]**   42/20 55/2
**today's [1]**   42/2
**together [2]**   37/24 49/22
**told [5]**   12/13 26/7 26/11 51/19 52/23
**took [5]**   27/15 28/1 28/8 39/25 41/8
**top [1]**   23/20
**totality [1]**   8/9
**tough [1]**   35/14
**transcript [5]**   1/15 15/9 40/17 58/7 58/9
**traumatic [1]**   9/15
**treated [1]**   30/9
**treating [1]**   6/15
**tri [1]**   48/19
**trial [34]**   7/7 7/13 10/1 10/7 10/21 11/2
11/24 15/14 16/15 18/8 19/6 25/11 25/12
26/3 26/12 26/19 27/10 27/23 30/7 33/24
34/16 34/17 35/13 35/24 36/7 37/9 38/18
39/1 40/16 42/7 47/24 51/8 51/9 54/22
**trials [1]**   54/22
**tried [1]**   10/16
**trifurcate [1]**   56/23

**tripartite [1]**   32/12
**true [16]**   4/1 4/24 11/21 20/20 26/6
**trutanich [1]**   2/13
**truth [4]**   33/9 35/21 38/10 40/3
**try [9]**   19/14 22/17 22/18 22/18 23/2 23/3
35/8 35/15 39/6
**trying [11]**   10/2 10/4 16/11 20/22 24/9
26/12 28/10 30/13 40/14 47/17 52/7
**turn [1]**   19/1
**turned [13]**   1/13 13/10 13/22 14/20 15/5
15/25 16/5 17/11 19/3 19/8 19/13 19/15
19/16 20/1 23/6 30/15 33/7 42/15
**turning [1]**   42/23
**two [18]**   6/4 6/18 16/7 16/15 23/18 28/20
43/9 43/12 44/21 44/24 45/7 46/14 46/15
47/19 51/9 54/24 54/25 55/23
**twofold [2]**   20/13 50/21
**type [3]**   8/22 11/10 25/6
**typical [2]**   24/5 28/15
**tyrant [1]**   9/23

**U**

**U.S [2]**   1/3 1/23
**Uh [1]**   53/2
**Uh-huh [1]**   53/2
**ultimate [2]**   38/22 41/19
**ultimately [7]**   5/15 11/13 25/1 46/2 51/6
51/9 56/23
**unbecoming [5]**   44/9 44/11 44/12 46/4 46/14
**uncovered [1]**   44/15
**under [12]**   6/23 19/16 24/15 24/16 25/11
38/18 42/22 43/13 44/24 46/17 46/20 50/10
**underlying [13]**   7/13 7/15 7/25 8/1 8/10
10/21 12/11 18/8 27/14 27/23 31/13 48/20
50/12
**understand [13]**   7/22 10/6 12/11 19/10 29/13
33/17 35/12 38/11 39/4 40/12 50/9 51/1
54/17
**understanding [7]**   11/22 12/16 13/7 13/24
14/4 15/12 15/18
**understood [1]**   23/17
**undisputed [1]**   45/6
**undoubtedly [1]**   23/7
**unfair [2]**   36/1 36/4
**UNITED [3]**   1/1 58/6 58/10
**unknown [1]**   9/11
**unless [3]**   14/22 47/15 48/5
**unlimited [1]**   47/16
**unreliable [1]**   38/3
**until [4]**   14/22 22/12 34/15 48/20
**untrue [1]**   24/7
**up [16]**   8/23 10/11 11/15 20/9 21/25 22/2
24/14 32/13 35/18 38/19 44/22 45/15 48/11
48/14 52/5 52/7
**upcoming [5]**   10/1 10/7 11/23 15/14 16/15
**upon [6]**   8/8 22/5 28/3 28/4 42/4 42/5
**upset [1]**   8/22
**urge [1]**   35/5
**us [3]**   37/6 41/9 54/5
**use [4]**   34/19 35/20 45/22 45/25
**used [8]**   5/16 6/11 10/21 23/16 36/3 40/17
44/12 47/3
**using [4]**   6/2 6/3 6/6 34/11
**utilized [2]**   7/11 7/12
**utterly [3]**   19/1 26/13 34/5

**V**

**value [2]**   18/4 28/17
**variety [2]**   44/7 51/11
**vehemently [1]**   10/18
**Ventura [3]**   16/1 16/10 18/10
**verdict [3]**   32/2 35/1 38/22
**version [1]**   41/25

# V

**versus [1]**   4/5
**very [14]**   9/15 12/4 17/24 19/8 19/15 20/19
35/14 36/5 39/14 41/12 41/12 49/11 53/4
54/12
**VICKI [2]**   2/4 4/13
**view [5]**   18/25 30/21 51/3 53/6 57/5
**views [1]**   50/14
**violated [1]**   44/7
**violation [2]**   11/13 38/20
**violations [2]**   34/11 50/17
**virtually [1]**   47/14
**virtue [2]**   46/17 48/13

# W

**wait [4]**   34/1 34/15 43/16 56/15
**waits [1]**   37/18
**want [28]**   5/2 5/3 6/22 10/6 13/5 13/18 19/7
25/22 26/10 26/15 29/23 30/2 30/9 37/10
38/13 39/16 40/19 40/25 41/5 41/23 42/1
42/4 49/17 50/14 54/11 55/18 56/25 56/25
**wanted [3]**   35/20 37/12 37/23
**wants [3]**   11/23 32/22 32/23
**was [199]**
**was the [1]**   21/13
**wasn't [21]**   7/24 10/17 16/18 16/23 17/13
20/9 20/14 20/16 24/8 25/13 27/8 27/11
27/12 28/13 32/23 33/4 38/22 40/5 40/6 46/4
51/19
**water [1]**   23/15
**way [28]**   18/5 20/22 26/15 26/19 29/10 29/12
29/12 30/17 31/22 32/6 36/3 38/5 40/11
40/15 40/15 43/8 44/5 44/14 44/23 46/1
46/16 46/25 48/8 48/9 48/11 49/12 52/2 56/5
**ways [1]**   44/7
**we [78]**
**we'd [1]**   16/19
**we'll [1]**   36/5
**we're [6]**   4/20 6/6 9/8 20/25 25/20 34/17
**We've [2]**   39/14 39/14
**weaker [1]**   19/23
**weather [9]**   23/22 25/2 36/10 36/15 38/5
38/13 39/21 39/22 44/17
**week [7]**   5/20 5/22 41/24 42/1 42/6 55/18
56/13
**weeks [1]**   52/4
**weight [2]**   18/17 18/21
**well [23]**   7/8 13/11 16/6 16/17 20/13 21/4
25/3 25/19 25/22 26/22 29/23 31/11 31/14
34/1 36/23 48/9 49/1 49/3 50/12 51/24 53/25
54/24 55/13
**went [8]**   8/18 21/15 22/1 22/8 23/1 35/10
44/22 48/10
**were [29]**   6/4 6/18 11/1 11/19 12/21 12/25
13/5 13/9 13/9 13/17 14/19 16/8 26/13 29/12
32/3 34/10 36/11 37/7 38/8 40/13 44/20
44/21 46/13 47/1 47/3 49/6 49/25 50/15
52/21
**weren't [4]**   10/21 16/9 20/3 38/25
**WESTERN [1]**   1/2
**what [111]**
**what I [1]**   48/25
**what's [7]**   16/16 27/16 35/4 42/24 54/5
54/23 55/15
**whatever [7]**   21/17 31/1 31/19 39/16 46/5
54/3 56/23
**when [21]**   9/13 13/2 18/11 18/13 21/18 22/25
28/18 35/10 35/12 37/13 37/16 37/18 37/19
40/20 40/22 41/5 42/21 46/9 48/15 52/12
55/20
**where [16]**   5/4 5/4 9/1 9/20 10/6 13/13
19/20 20/25 24/20 36/2 36/3 37/19 47/11
48/16 52/6 53/17
**whether [18]**   11/2 12/7 18/8 18/17
23/3 23/7 27/8 28/11 28/16 29/24 32/2 33/23
35/13 39/10 40/5 40/5 40/6 45/10 52/8 53/15
56/4
**which [30]**   7/3 7/11 8/4 8/18 11/5 16/22
19/16 23/12 23/22 25/11 28/11 30/7 30/13
31/2 33/16 34/6 36/15 36/17 37/18 38/5
39/22 46/23 47/3 47/10 47/14 48/13 51/3
51/6 54/12 57/4
**while [1]**   35/11
**who [21]**   9/6 9/7 10/10 10/25 20/25 21/2
21/11 22/8 22/11 22/11 22/16 22/25 24/25
26/17 30/21 31/9 32/10 33/12 43/19 52/9
54/14
**who's [1]**   31/8
**whole [2]**   25/8 41/6
**why [10]**   4/25 12/11 18/22 18/22 20/10 31/22
33/14 33/14 39/4 49/1
**will [40]**   5/1 5/6 5/22 6/23 23/9 24/13 30/1
31/3 31/22 34/6 34/12 34/14 34/15 34/20
35/14 35/25 35/25 36/4 36/7 39/5 39/8 39/18
39/25 41/9 41/21 41/21 42/2 42/7 42/13
42/17 50/10 50/12 50/15 55/21 55/23 56/6
56/12 56/13 56/15 56/24
**willfully [1]**   38/9
**William [1]**   2/3
**Wilshire [1]**   2/8
**Wistrich [1]**   52/25
**with Langford [1]**   14/17
**withdraw [2]**   8/14 36/7
**withdrawing [1]**   43/5
**withheld [1]**   11/10
**within [4]**   16/22 17/3 18/3 27/11
**without [5]**   7/8 38/22 52/12 54/2 55/3
**witness [1]**   27/25
**Woehrle [3]**   52/22 53/9 54/13
**woman [1]**   37/15
**won [2]**   50/25 51/3
**won't [2]**   19/12 55/15
**wonder [2]**   12/4 12/8
**words [2]**   7/6 48/1
**work [6]**   27/18 30/2 32/14 43/24 56/19 57/1
**workable [1]**   31/20
**working [2]**   12/20 12/21
**would [64]**
**wouldn't [7]**   12/11 13/5 23/15 24/23 25/4
26/11 43/8
**writes [1]**   37/14
**written [3]**   17/9 21/10 37/16
**wrong [2]**   29/24 38/16
**wrongfully [2]**   43/21 45/22
**wrote [3]**   11/1 23/23 43/4
**www.cindynirenberg.com [1]**   1/25

# Y

**Yeah [1]**   9/21
**years [1]**   40/13
**yes [18]**   7/5 9/17 10/12 10/14 13/25 14/3
14/10 14/13 14/15 15/2 15/15 17/9 30/5 46/8
47/6 50/20 55/19 56/21
**yet [3]**   5/23 37/22 53/15
**you [178]**
**you'd [2]**   18/2 38/15
**you'll [1]**   39/17
**you're [5]**   6/17 39/9 43/16 49/16 53/14
**you've [2]**   19/24 50/25
**your [73]**
**youth [1]**   35/10

# Z

**Zarefsky [8]**   6/4 11/18 15/17 28/23 30/18
30/22 36/21 41/13

**Z**

| **Zealand [2]** | 37/13 | 37/14 |
| **Zeilan [2]** | 14/12 | 14/14 |