```
 1              UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3         HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

 4                          - - -

 5

 6
                                      )
 7   BRUCE LISKER,                    )
                                      )
 8                  PLAINTIFF,        )
                                      )
 9        vs.                         ) No. CV09-9374-AHM(AJWx)
                                      )
10   CITY OF LOS ANGELES, ET AL.,     )
                                      )
11                  DEFENDANTS.       )
     _____)
12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  LOS ANGELES, CALIFORNIA

17                  MONDAY, JANUARY 9, 2012

18                       11:00 A.M.

19

20

21

22        _____

23           CINDY L. NIRENBERG, CSR 5059, FCRR
                U.S. Official Court Reporter
24                312 North Spring Street
                Los Angeles, California 90012
25                www.cindynirenberg.com
```

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:
                      NASATIR HIRSCH PODBERESKY KHERO & GENEGO
 3                    BY: WILLIAM J. GENEGO, JR.,
                          ATTORNEY AT LAW
 4                        VICKI I. PODBERESKY,
                          ATTORNEY AT LAW
 5                    2115 MAIN STREET
                      SANTA MONICA, CA 90405
 6                    310-399-3259

 7
                      LITT ESTUAR & KITSON
 8                    BY: BARRETT S. LITT, ATTORNEY AT LAW
                      1055 WILSHIRE BOULEVARD
 9                    SUITE 1880
                      LOS ANGELES, CA 90017
10                    213-386-3114

11

12
     FOR THE DEFENDANTS:
13                    OFFICE OF THE LOS ANGELES CITY ATTORNEY
                      CARMEN A. TRUTANICH, CITY ATTORNEY
14                    BY: CHRISTIAN R. BOJORQUEZ,
                          DEPUTY CITY ATTORNEY
15                        ELIZABETH MITCHELL,
                          DEPUTY CITY ATTORNEY
16                    200 NORTH MAIN STREET
                      6TH FLOOR
17                    LOS ANGELES, CA 90012
                      213-978-7023
18

19

20

21

22

23

24

25
```

I N D E X

|  | Page |
|---|---|
| Motion in Limine No. 3 – granted in part | 9 |
| Motion in Limine No. 4 – granted | 12 |

```
 1            LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 9, 2012

 2                              11:00 A.M.

 3                              - - - - -

 4            THE CLERK:  Calling Item Number 1, CV09-9374, Bruce

 5   Lisker versus City of Los Angeles, et al.

 6            Counsel, state your appearances, please.

 7            MR. GENEGO:  Good morning, Your Honor.  Bill Genego

 8   on behalf of Mr. Lisker, who is present.

 9            THE COURT:  Good morning.

10            MR. LITT:  Good morning, Your Honor.  Barry Litt on

11   behalf of Mr. Lisker.

12            MS. PODBERESKY:  Good morning, Your Honor.  Vicki

13   Podberesky on behalf of Mr. Lisker.

14            THE COURT:  Good morning.

15            MS. MITCHELL:  Good morning, Your Honor.  Elizabeth

16   Mitchell for the defense.

17            THE COURT:  Hello.

18            MR. BOJORQUEZ:  And good morning, Your Honor.

19   Christian Bojorquez on behalf of the defense as well.

20            THE COURT:  All right.  And good morning to you, and

21   please be seated.

22            First I will rule on the Motions in Limine 3 and 4,

23   and then I will tell you how I want to handle some of the other

24   matters which are proliferating and coming in hot and heavy.

25            The plaintiff's Motion in Limine Number 3 was to
```

1  admit the grand jury report, and I conclude that it would be
2  permissible to do so but only in the Monell phase, which has
3  yet be to be worked out, and that's one of the things we will
4  have to deal with at another time.
5         The provisions in the grand jury report that are
6  relevant to the theories for Monell liability are specific and
7  not necessarily -- and don't necessarily require the entire
8  report.  And I contemplate that with fair-minded lawyers, a
9  stipulation could be entered into as to the key and material
10 parts of the report that have a bearing on pattern and practice
11 and ratification or compliance in violative conduct.
12         My findings that support that conclusion -- but they
13 will not come in during the initial liability phase.  I'm
14 familiar with the grand jury report, as the parties know, and I
15 looked at it again, and I find that, although it doesn't
16 specifically mention this plaintiff, these two detectives,
17 Monsue or Landgren or the witness Hughes, the conduct that
18 triggered the commission of the investigation and the return of
19 the report was long standing, one in which, according to
20 Exhibit 613, the product of jailhouse informants became a key
21 factor in several prosecutions mounted by the Los Angeles
22 Police Department in cooperation with the district attorney's
23 office.
24         Now, this Exhibit 613, Mr. Litt, I don't know the
25 precise details about its initial genesis.  Was that prepared

1   for purposes of responding to a request that you made in the
2   Goldstein case or was it prepared at a different time and
3   independently?
4           MR. LITT:  My understanding, Your Honor -- because it
5   was obtained before I came into the Goldstein case, but my
6   understanding is that it was a document prepared by the
7   district attorney's office, not for the Goldstein case.
8           It was a document prepared when there was an internal
9   investigation in the district attorney's office to see what the
10  scope of the jailhouse informant problem had been.
11          THE COURT:  Well, where does that understanding that
12  you just pointed to, Mr. Litt -- where does it come from?
13          MR. LITT:  From my discussions with Mr. Kaye, who was
14  the one who had obtained it.
15          THE COURT:  Well --
16          MR. LITT:  I mean, we can -- if the Court feels it's
17  necessary, I can find out who was the key person in the
18  district attorney's office who would have knowledge of this,
19  Your Honor.
20          THE COURT:  I think better than that -- I'm not going
21  to hold off a ruling -- or I'm not likely to change it, but I
22  wouldn't rule something out if new evidence comes to my
23  attention, but I want a declaration authenticating 613.  And
24  that declaration will have to come from either a custodian or,
25  if it's still someone who is affiliated with the district

1  attorney's office, from the actual individual who oversaw its
2  preparation and collection.
3          The report -- and I looked at 613. I think there
4  were 36 -- according to your reply declaration, the LAPD was
5  specifically identified in 36 out of the 79 cases where the law
6  enforcement agency had been identified.
7          MR. LITT: That's correct, Your Honor.
8          THE COURT: It was the single largest user of
9  informants. The notion that there might be some special
10 concern about the reliability, the accuracy, the probative
11 value and the truthfulness of informant testimony did not
12 require a grand jury report to be initiated that would result
13 in the return in 1998 of the report in question here.
14         The circumstances of using jailhouse informants
15 inherently would place a law enforcement agency and a district
16 attorney's office on the need to provide special scrutiny to
17 the circumstances in which an informant comes forth or is used
18 and to the information that individual provides.
19         So for Monell purposes, the report could have
20 probative value. It's not definitive and it may not even be
21 compelling as to the application in this case with Hughes, but
22 if by virtue of its sweeping references to law enforcement --
23 this was a Los Angeles County report. The LAPD is the single
24 largest law enforcement agency in the county, with the possible
25 exception of the sheriff, but it's the one with the largest

1   number of individuals in its jurisdiction. It's clearly --
2   "it," meaning, the LAPD -- encompassed within the term "law
3   enforcement" and had every reason to understand and know that.
4           So it's not of concern to me, and I don't think it's
5   relevant that Hughes may not have been an agent, whatever that
6   term could imply or encompass, of the Los Angeles Police
7   Department.
8           Hughes was a witness, and no one is claiming that he
9   was fished out of obscurity and set up to do whatever he wound
10  up doing by the LAPD, but no one can deny that the LAPD worked
11  with Hughes, as did the district attorney, in mounting the
12  prosecution that led to the plaintiff's conviction.
13          The deal that Hughes had may have been struck with
14  the district attorney's office, but in the real world of
15  criminal investigations and prosecutions, it's inconceivable
16  that the Los Angeles Police Department and Hughes would have
17  any other expectation.
18          The charging capacity and the deal to enter into
19  binding legal agreements about reductions and sentences or
20  other benefits to a witness are always made by the district
21  attorney's office, and the fact that it was a district
22  attorney's office in this case is neither unusual nor, I am
23  certain, at all a question that was in the minds of either
24  Hughes or the detectives in this case as to whether or not
25  there was a heightened degree of scrutiny that should be

1  attached to the completeness and accuracy of his testimony.
2          So I find that there was sufficient basis surrounding
3  and actually in the contents of the grand jury report to
4  establish that the Los Angeles Police Department was on notice
5  of informant unreliability, and for purposes of falling within
6  whatever ultimate framework for Monell theories the plaintiff
7  comes up with, it's admissible, but only in that stage.
8          That's my ruling on Number 4 (sic).
9          I want you to get the transcript of today's ruling
10 and in brief, neutral, less than narrative form -- because I'm
11 just speaking from notes I prepared and not from a text -- I
12 want you to prepare an order reflecting today's rulings.
13         And that's a direction I'm giving to you, Mr. Genego.
14         Turning to Number 4, the motion in limine that
15 plaintiff has brought numbered as Number 4 is to preclude
16 evidence or argument about the ineffective assistance of
17 plaintiff's criminal trial counsel.
18         Now, Judge Zarefsky found and Judge Phillips
19 confirmed that one of the constitutional violations was the
20 deprivation of the right to effective assistance of counsel,
21 and that triggered the proceedings that led to the habeas
22 petition being granted.
23         That, I will note, is an analysis and conclusion
24 which I think was absolutely compelling.
25         What does that have to do with a trial in this case?

1           The police detectives, the defendants in this case,
2  have a full right -- and that right will be respected -- to
3  call into -- to put into evidence before the jury whatever
4  disclosures were made to Mulcahey.
5           They have no right to have the jury informed that
6  what Mulcahey did or failed to do was found as a legal matter
7  to constitute ineffective assistance of counsel and a
8  constitutional violation, so the -- and it may even be that in
9  the first phase of the trial, on the liability phase, it's a
10 seamless story to a certain extent.  And the story fairly
11 looked at entitles the defendants to note that the information
12 was disclosed -- that's now being challenged as false -- was
13 disclosed and some of the information that was not introduced
14 was disclosed.
15          This is not including the Ryan thing.  I made my
16 ruling on Friday about Ryan.
17          So I cannot countenance and contemplate a trial in
18 this case where the police detectives or defendants would be
19 precluded from showing what information was turned over and
20 that it was in the possession of the defense attorney, but to
21 put a tag on it, a label or a finding resulting from Judge
22 Zarefsky's or Judge Phillips' finding is not permissible and
23 would be entirely unfair.  Its probative value would be
24 outweighed by its prejudicial impact.
25          There is a slight reservation I have about those last

1  words.

2          In the damages phase, if there is a finding of
3  liability for Mr. Lisker -- and then there will be a spirited
4  trial on how much money he would be entitled to -- what the
5  deprivation meant in terms of time and life, if the defense
6  does a better job -- and I don't think its papers thus far
7  really hit the point meaningfully and fully in establishing
8  that the amount of money that these defendants or the City, or
9  all of them, sitting under the Monell theory properly can be
10 found to owe to the plaintiff has to be assessed as if it was
11 akin to a medical malpractice case where there was -- or some
12 kind of negligence case where there would be a finding of
13 contributory negligence, and if contributory negligence of the
14 lawyer could be imputed to the client -- in other words, if
15 Mulcahey could be imputed to Mr. Lisker, then it might well be
16 that that kind of theory would permit a disclosure to the jury
17 that there was a contributing factor that caused the damage.
18 It's not a factor that precludes liability, however.  It's not
19 independent, it's not intervening.

20         I have some suspicions that the work of Mulcahey
21 could well have been mind boggling both to the D.A. and to
22 these detectives and, to that extent, what they're trying to do
23 now by preventing the plaintiff from seeking a full recovery
24 based upon the omissions of his lawyer really is on the verge
25 of a terrible inequity.

1           It's compounding the constitutional error that
2   Mulcahey committed by asserting Mulcahey as an independent
3   intervening factor that precludes a finding of damage,
4   particularly if it's the case that the defects in his
5   performance were so glaring that people on the prosecution team
6   back in '83 and '85 had reason to think they were getting away
7   with something.
8           They may have had a good faith belief -- I'm not
9   making a finding otherwise -- that Mr. Lisker committed the
10  crime.  They may have had a good faith belief that the evidence
11  they were introducing was sufficient, even if it had been
12  attacked appropriately, to warrant a finding of guilt, but that
13  so little was done in light of the suggested alternative
14  theories of who could be responsible or the defects in the
15  prosecution's case suggests to me that the prosecution team --
16  and this sometimes happens in cases -- may have thought, "Wow,
17  it's a good thing we're not up against a more careful lawyer."
18          Either way -- and I'm not making a finding that those
19  people thought that way.  Either way, to permit the sins of
20  Mulcahey to preclude recovery based on the damage that was
21  independent, if it's proven, would be inequitable, and I won't
22  tolerate it.
23          Those are my findings on Motion in Limine Number 4.
24          Now, the other matters that we have to deal with --
25  and I'm not going to deal with it today.  We have another

```
 1   matter on at 11:00; although, I don't see the lawyers here.
 2        (The Court and clerk confer off the record.)
 3             MS. MITCHELL:  Plaintiff's counsel's here, Your
 4   Honor.
 5             THE COURT:  Oh, so you're here on that other case,
 6   too?
 7             MS. MITCHELL:  Yes, Your Honor.
 8             THE COURT:  Oh, okay.  I forgot that.
 9             I've ruled on Motions in Limine 3 and 4.  We have
10   this ex parte application to continue the trial with a dispute
11   as to when or whether.  We have a stipulation to extend the
12   date for filing motions in limine.  I find that one puzzling,
13   so as I -- we're going to have to come back either Tuesday or
14   Wednesday to go through these various things.
15             But let me pause for a minute and say this
16   stipulation to extend the date for filing motions in limine as
17   to certain expert witnesses, I hope that the lawyers who are
18   here in court have that with them because I don't understand
19   what paragraph 8 says.
20             Do you have that there?
21             Paragraph 8 says -- neither side seems to have it.
22             Do you have it, Mr. Bojorquez?
23             MR. BOJORQUEZ:  Unfortunately, I do not.
24             THE COURT:  "A motion in limine for the deposition of
25   any expert who is not named herein shall take place no less
```

1    than 25 days prior to the pre-trial conference."

2              Is that a motion in limine to seek leave to take such

3    a deposition or is it a motion in limine about whatever would

4    have been disclosed at a deposition that was taken?

5              What's that about?

6              MR. LITT:  The intention, Your Honor, was that in the

7    event that there were going to be motions in limine for experts

8    and their deposition was going to be taken, that the motion in

9    limine not be filed until after their deposition.

10             So this was just to ensure that because the final

11   resolution of what expert depositions will be taken has not

12   been concluded.  There are listed the three in there, but --

13             THE COURT:  So this isn't about getting leave to take

14   a deposition after discovery has ended, it's about what happens

15   in light of the deposition that was taken?

16             MR. LITT:  That's correct, Your Honor, because when

17   we were in the status conference a while back, you indicated

18   that if the parties could work out taking expert depositions,

19   that was fine with you.

20             THE COURT:  That's still fine.

21             All right.  Well, I will have to figure out how that

22   will fit in.

23             I've gotten this list of motions in limine, and I

24   don't know whether, as you sit here today, there is an

25   understanding or an expectation that some of the events that

```
 1   were previously ordered and are due are not going to be met.
 2   For example, today, Motions in Limine 12 through 15 are
 3   supposed to be filed by the plaintiffs.
 4           Is that going to happen?
 5           MR. LITT:  I thought it was 12 through 14 in light of
 6   the stipulation, but 12 through 14 will be filed today.
 7           THE COURT:  And defendants' Motions in Limine 1
 8   through 15 are supposed to be filed today?  Are they going to
 9   be filed?
10           MR. BOJORQUEZ:  A majority of them will, Your Honor,
11   yes.  Others, I think we've reached some tentative stipulations
12   on portions where we have merged some of them in together
13   because there's no need to create separate --
14           THE COURT:  I noticed that from the descriptions.
15           MR. BOJORQUEZ:  Yes.
16           THE COURT:  So how many are going to be filed today,
17   Mr. Bojorquez?
18           MR. BOJORQUEZ:  The Court is putting me in an
19   uncomfortable position.  I'm assuming it's probably going to be
20   around possibly nine to ten --
21           THE COURT:  But today?
22           MR. BOJORQUEZ:  -- but don't quote me.
23           But today, correct.
24           THE COURT:  I looked at the parties' papers on the
25   core stipulation, and I am not even going to fuss with that
```

```
 1   now.  It's too soon.  I have some ideas that with optimal
 2   cooperation the lawyers can get past their kind of nit-picking
 3   disputes.
 4             I got something about a jury questionnaire.  I
 5   haven't looked at it.
 6             Have you responded to that?
 7             MR. BOJORQUEZ:  I have not, Your Honor.
 8             THE COURT:  Are you going to respond to that?
 9             MR. BOJORQUEZ:  When I have the time, yes.  It's
10   something that I haven't had the time to do.
11             We do want to look at what they have done and also
12   interpose some questions of our own, but I just, to be honest
13   with the Court, haven't had the opportunity to do so since
14   we've been trying to get motions in limine and those types of
15   things done, compounded by the holidays as well, so it's just
16   been difficult.
17             THE COURT:  You're not the only one that's
18   struggling, Mr. Bojorquez.  I'll just leave it at that.
19             MR. BOJORQUEZ:  Oh, I fully understand, Your Honor.
20             THE COURT:  I wonder.
21        (Laughter.)
22             THE COURT:  All right.  Can you come back here on
23   Wednesday morning, counsel?  Because we are going to go through
24   all these things, including the dates.  I have some ideas which
25   I have to go over with Mr. Montes as to availability.
```

```
 1              I'm not continuing the trial right now, but it may
 2   well be necessary.
 3              Where do things stand with Judge Woehrle?
 4              MR. BOJORQUEZ:  Right now, we're basically trying to
 5   set up a pre-conference -- settlement conference and so we are
 6   trying to select some dates.
 7              It's just difficult because, you know, obviously, the
 8   time frame we're going by, so we had an informal meeting with
 9   counsel with Judge Woehrle last week and there were some
10   discussions that took place.  I'm really not at liberty to
11   discuss too much.
12              THE COURT:  No, I don't -- I understand that.
13              MR. BOJORQUEZ:  But I can tell the Court that --
14              THE COURT:  Do you have another meeting scheduled
15   with her?
16              MR. BOJORQUEZ:  Yes.
17              THE COURT:  This week?  Next week?
18              MR. BOJORQUEZ:  No, it's going to be weeks -- a few
19   weeks because of trying to get everybody together.
20              THE COURT:  Okay.  So today is the 9th.  Well, let's
21   meet tomorrow afternoon.
22              Are you available tomorrow afternoon?
23              MR. BOJORQUEZ:  Yes, Your Honor.
24              MR. LITT:  Yes.
25              MR. GENEGO:  Yes.
```

```
 1              THE COURT:  Okay.  So come by tomorrow afternoon at
 2     2:30.
 3              Is that available, Steve?
 4              THE CLERK:  Yes.
 5              THE COURT:  All right.  We'll go over some of these
 6     other matters at 2:30 tomorrow afternoon.
 7              We're adjourned.
 8         (Proceedings concluded.)
 9                              --oOo--
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: JANUARY 12, 2012

/s/  Cindy L. Nirenberg, CSR No. 5059
Official Court Reporter