UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DIVISION

- - -

HONORABLE A. HOWARD MATZ
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

BRUCE E. LISKER, )
)
PLAINTIFF, )
) CV 09-09374-AHM(AJWX)
VS. )
)
CITY OF LOS ANGELES, ET AL., )
)
DEFENDANT. )
________________________________)

***DEFENDANTS' MOTION IN LIMINE HEARING***

LOS ANGELES, CALIFORNIA

JANUARY 30, 2012

ROSALYN ADAMS, CSR 11794
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 410
LOS ANGELES, CALIFORNIA 90012
(213) 894-2665

**APPEARANCES:**

**ON BEHALF OF THE PLAINTIFF:**

NASATIR, HIRSCH, PODBERESKY & GENEGO
BY: WILLIAM J. GENEGO
VICKI I. PODBERESKY
2115 MAIN STREET
SANTA MONICA, CALIFORNIA 90405
(310) 399-3259

LITT ESTUAR & KITSON, LLP
BY: BARRETT S. LITT
1055 WILSHIRE BOULEVARD
SUITE 1880
LOS ANGELES, CALIFORNIA 90017
(213) 386-1114

**ON BEHALF OF DEFENDANT:**

LOS ANGELES CITY ATTORNEY'S OFFICE
DEPUTY CITY ATTORNEY
BY: CHRISTIAN R. BOJORQUEZ
ELIZABETH MITCHELL
200 NORTH MAIN STREET
6TH FLOOR
LOS ANGELES, CALIFORNIA 90012
(213) 978-7023

LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 30, 2012; 10:00 A.M.

--OOO--

10:14:47 THE CLERK: CALLING ITEM NUMBER 2, CV 09-09374-AHM: *BRUCE LISKER V. CITY OF LOS ANGELES, ET AL.*

COUNSEL, STATE YOUR APPEARANCES.

MR. GENEGO: GOOD MORNING, YOUR HONOR.

BILL GENEGO ON BEHALF OF MR. LISKER, WHO'S PRESENT.

10:15:01 MR. LITT: GOOD MORNING, YOUR HONOR.

BARRY LITT ON BEHALF OF BRUCE LISKER.

MS. PODBERESKY: GOOD MORNING, YOUR HONOR.

VICKI PODBERESKY ON BEHALF OF MR. LISKER.

THE COURT: OKAY. GOOD MORNING, ALL THREE OF YOU.

10:15:01 MS. MITCHELL: GOOD MORNING, YOUR HONOR.

ELIZABETH MITCHELL FOR THE DEFENSE.

MR. BOJORQUEZ: AND, GOOD MORNING, YOUR HONOR.

CHRISTIAN BOJORQUEZ ON BEHALF OF DEFENSE AS WELL.

THE COURT: OKAY. GOOD MORNING TO BOTH OF YOU.

10:15:22 I FIRST WANT TO BEGIN THIS HEARING BY ASKING SOME QUESTIONS AND THEN YOU'LL SEE WHAT'S GOING TO HAPPEN, STARTING WITH THE DEFENDANT'S MOTION IN LIMINE 14 TO TRIFURCATE THE CASE. SO I THINK SOMETIMES ALL THREE OF THE PLAINTIFF'S LAWYERS ASK TO BE HEARD, DEPENDING ON WHAT THE

10:15:42 QUESTION IS. BUT LET'S ASK YOU -- I'M GOING TO ASK YOU, MR.

GENEGO, TO GO TO THE LECTERN, PLEASE, AND ANSWER THE QUESTIONS, AND YOU'LL SEE WHY LATER ON IN THIS HEARING I'M STARTING WITH THESE QUESTIONS.

I HAVE BEFORE ME DOCKET 251, WHICH WAS YOUR RESPONSE TO A PREVIOUS QUESTION WHERE I ORDERED YOU TO TELL ME WHAT THE DUE PROCESS *BRADY* EVIDENCE WAS THAT YOU PLANNED TO PROFFER IN PHASE 1, AS I THEN HAD STRUCTURED THE ANTICIPATED TRIAL.

I DON'T KNOW IF YOU HAVE THAT BEFORE YOU.

MR. GENEGO: I DO, YOUR HONOR.

THE COURT: OKAY. SO AT PAGE 2, BEGINNING WITH ITEM A, AND CONTINUING OVER TO PAGE 3, ITEM K, YOU LISTED THE DUE PROCESS *BRADY* EVIDENCE THAT AT THAT POINT YOU INTENDED TO PROFFER IN PHASE 1. AND MY QUESTION TO YOU IS: HOW WERE YOU GOING TO PROVE THOSE THINGS? I DON'T MEAN THAT YOU HAVE TO TELL ME EVERY SINGLE WITNESS, BUT I WANT YOU TO GIVE ME A MEANINGFUL DESCRIPTION BECAUSE IT WILL BE AT SOME PHASE IN THE TRIAL.

HOW DO YOU INTEND TO PROVE THAT MARCH 10TH WASN'T BRIGHT AND SUNNY, THAT PLAINTIFF COULD, IN FACT, HAVE SEEN THE BODY AND ALL OF THE OTHER ITEMS THAT I'VE JUST REFERRED TO?

MR. GENEGO: AS TO THE FIRST ONE, YOUR HONOR, THAT MARCH 10TH, 1983 WAS NOT A BRIGHT AND SUNNY DAY, WE HAVE A METEOROLOGIST, AN EXPERT WITNESS, KENNETH CLARK, WHO

TESTIFIED AT THE EVIDENTIARY HEARING AS WELL. HE HAS WEATHER CHARTS. HE HAS SATELLITE PHOTOGRAPHS THAT WERE TAKEN ACTUALLY FROM THE SKY ON THAT DAY IN MARCH 10TH, 1983. AND HE ALSO HAS COMPARATIVE SATELLITE PHOTOS FOR MARCH 23RD AND THE WEATHER CHARTS FOR MARCH 23RD.

10:17:39

THE COURT: OKAY. THAT'S A VERY PITHY, GOOD EXPLANATION. YOU DON'T HAVE TO EMBELLISH IT.

HOW ABOUT ITEM B?

MR. GENEGO: WE HAVE AN EXPERT WITNESS NAMED FRANK CAIRO (PHONETIC), WHO WAS AN ACCIDENT RECONSTRUCTION EXPERT, AND USING PHOTOGRAMMETRY WHICH IS BASICALLY TRIGONOMETRY, HE'S ABLE TO DETERMINE BASED ON SOME ORIGINAL PHOTOGRAPHS THAT WE HAVE WHAT THE DIMENSIONS WERE OF THE HOUSE. WE'VE RECONSTRUCTED THE SCENE AND THEN TOOK OBSERVATIONS FROM OUTSIDE THE WINDOW LOOKING IN.

10:17:51

10:18:09

THE COURT: IS THAT HOUSE STILL SITUATED THERE?

MR. GENEGO: THE HOUSE IS STILL SITUATED. IT IS SOMEWHAT DIFFERENT INSIDE, BUT WE HAD BOTH AN ACCIDENT RECONSTRUCTION EXPERT FROM THE ATTORNEY GENERAL AND FROM OUR SIDE WHO WENT OUT TO THE SCENE, REBUILT THE PLANTER, REBUILT THE TABLE, PUT THE CHAIRS IN THE SAME POSITION, WENT BACK OUTSIDE; AND SO EVERYTHING IS SUPPORTED BY THE DIMENSIONS AND THE EXPERT TESTIMONY THAT WAS ALSO PRESENTED AT THE EVIDENTIARY HEARING.

10:18:22

THE COURT: OKAY. I HOPE AND EXPECT THAT ONE OR

10:18:32

BOTH SIDES -- THIS REALLY NEEDS TO BE A COLLABORATIVE EFFORT

IF IT'S GOING TO BE MEANINGFUL -- WILL ACTUALLY CREATE --

THIS IS JUST AN ASIDE THINKING OF WHAT IT WILL BE LIKE FOR

THE JURY BECAUSE I -- I KNOW BETTER THAN ANYBODY, I THINK,

NOT BECAUSE OF ANY GREAT ACHIEVEMENTS AS A LAWYER, BUT

BECAUSE OF HAVING SERVED AS A JUDGE.

          IN ANY EVENT, I ASSUME THERE'S GOING TO BE A RATHER

SIZABLE MODEL THAT'S GOING TO BE ON DISPLAY THAT WILL ENABLE

THE JURORS ALWAYS TO KEEP IN MIND WHERE THE ENTRANCE WAS,

WHAT WAS EAST AND WHAT WAS WEST, WHERE THE DRIVEWAY WAS -- A

MODEL CREATED BY A CARPENTER OR SOMEBODY.  I DON'T MEAN OF

EVERY DETAIL IN THE HOUSE, BUT KEY POINTS.  BECAUSE I'VE READ

ABOUT THIS A LOT AND I HAVE AN IDEA, BUT I'M TELLING YOU THAT

WHATEVER YOU WERE PLANNING TO USE FOR THE RECONSTRUCTION

TESTIMONY WON'T DO IT, SO KEEP THAT IN MIND.

          MR. GENEGO:  WE WILL.

          THE COURT:  AND IF YOU CAN AGREE AND STIPULATE TO

THE ACCURACY OF THE MODEL, THAT WILL BE A TREMENDOUS SERVICE

TO THE FACT-FINDER.

          OKAY.  ITEM C, IS THIS THE SAME RECONSTRUCTION

EXPERT?

          MR. GENEGO:  IT IS, YOUR HONOR.

          THE COURT:  D?

          MR. GENEGO:  WE HAVE A CRIMINALIST WHO IS RETIRED

FROM THE LAPD, RON RAQUEL, WHO EXAMINED THE SHOE PRINTS, THE

PHOTOGRAPHS THAT WERE TAKEN BACK IN 1983, AND HAS DETERMINED THAT THEY WERE GOING IN BOTH DIRECTIONS.

THE COURT: OKAY. AND THAT -- HE WOULD BE THE SAME KEY WITNESS AND BASIS FOR YOUR PROVING ITEM E AS WELL, AND ITEM F?

10:20:27

MR. GENEGO: THAT IS CORRECT, AS WELL AS G AND H.

THE COURT: OKAY. AND THEN ITEM I?

MR. GENEGO: DETECTIVE MARCY WHO TESTIFIED TO THAT FACT IN HIS DEPOSITION.

10:20:41

THE COURT: AND ITEM J?

MR. GENEGO: THAT WOULD, AGAIN, BE THE EXPERT WITNESS, KENNETH CLARK, METEOROLOGIST, AS WELL AS AN EXPERT NAMED PAUL KAYFETZ, ABOUT THE PHOTOGRAPHS THAT WERE TAKEN AND HOW THEY ARE DIFFERENT ON THE TWO DAYS.

10:21:01

THE COURT: THAT METEOROLOGIST'S NAME IS CLARK?

MR. GENEGO: KENNETH CLARK, CORRECT.

THE COURT: AND HE WOULD BE TESTIFYING AS TO ITEM J?

DID YOU JUST SAY SOMEBODY ELSE WOULD AS WELL?

10:21:12

MR. GENEGO: A GENTLEMAN NAMED PAUL KAYFETZ, K-A-Y-F-E-T-Z.

THE COURT: AND WHAT'S HIS BACKGROUND?

MR. GENEGO: HE IS AN EXPERT PHOTOGRAPHER AND ALSO A PHOTOGRAMMETRIST AND IS FAMILIAR AND HAS EXAMINED THE PHOTOGRAPHS THAT WERE TAKEN ON THOSE DAYS AND HAS FILED A

10:21:32

REPORT.

THE COURT: AND ITEM K?

WILL HUGHES BE A WITNESS?

MR. GENEGO: WE DO NOT ANTICIPATE CALLING MR. HUGHES, YOUR HONOR. I THINK THAT THE WAY WE GO ABOUT PROVING HIS STATEMENTS WERE FALSE IS CIRCUMSTANTIALLY BY A NUMBER OF SOURCES, INCLUDING HIS TESTIMONY IN THE CRIMINAL TRIAL, PART OF WHICH WE'VE ASKED THE COURT TO ADMIT FOR THE TRUTH AS WELL AS OTHER CIRCUMSTANTIAL FACTS SHOWING THAT WHAT HE SAID COULD NOT BE TRUE. AN EXAMPLE IS: HE TESTIFIED THAT MR. LISKER TOLD HIM THAT HIS ALIBI WAS THAT HE MADE UP THE STORY AFTERWARDS, THAT HE SAW HIS MOTHER, AND THEN CLIMBED THROUGH THE WINDOW. WELL, THOSE TWO THINGS, IN FACT, ARE NOT TRUE AND THAT MEANS THAT IT WASN'T AN ALIBI. MR. LISKER COULD SEE HIS MOTHER, AND THEREFORE, HUGHES HAD TO BE LYING. SO IT'S GOING TO BE CIRCUMSTANTIAL. THERE'S NOT GOING TO BE SOMEONE WHO'S GOING TO TESTIFY OF THAT.

THE COURT: OKAY. YOU'RE NOT GOING TO TRY TO PROVE K BY REFERENCE TO A GRAND JURY REPORT, FOR EXAMPLE?

MR. GENEGO: WE WANTED TO DO THAT. THE COURT DENIED THE MOTION AND WE HAVE ACCEPTED THAT RULING.

THE COURT: OKAY. SO STICKING JUST WITH ITEMS A THROUGH K, AND I DON'T NECESSARILY THINK THAT YOU'RE CONFINED AND RESTRICTED FOREVER TO THOSE ITEMS THAT YOU LISTED AS BEING ONES THAT YOU THINK FALL WITHIN THE DUE PROCESS *BRADY*

THEORY OF YOUR CASE. BUT STICKING TO THOSE, FROM WHAT YOU'VE TOLD ME NOW, IT DOESN'T SOUND LIKE YOU INTEND TO USE TRIAL TRANSCRIPTS. AND I KNOW THERE ARE PENDING MOTIONS, WHICH I'LL TALK TO YOU ABOUT LATER ABOUT THE ADMISSIBILITY OF THAT.

10:23:41 BUT YOU'RE TALKING ABOUT PUTTING ON LIVE TESTIMONY. YOU MAY HAVE TO PROVE THAT HUGHES WAS LYING ABOUT PROVING WHAT YOU'VE SAID USING THE TRANSCRIPT. YOU MAY HAVE TO PROVE THAT MONSUE WAS LYING BY PROVING WHAT HE SAID AT THE TRIAL, AND THEN -- IF IT WAS DIFFERENT FROM HIS DEPOSITION, BUT YOU'RE NOT

10:24:01 TALKING ABOUT USING TRIAL TRANSCRIPTS, RIGHT?

MR. GENEGO: YOUR HONOR, NOT TO PROVE THAT -- NOT TO PROVE THESE ITEMS, BUT WE HAVE TO PROVE WHAT OCCURRED IN THE TRIAL TO PROVE THAT IT WAS FALSE. SO WE DID ANTICIPATE INTRODUCING IN SOME MANNER THE PRIOR TESTIMONY AT THE TRIAL.

10:24:21 WE WOULD DO THAT --

THE COURT: THAT'S WHAT THIS STIPULATION THAT I HAVE DECLINED TO TALK TO THE LAWYERS ABOUT UNTIL I MAKE ALL THESE RULINGS WILL DO AND CAN DO BECAUSE THERE WON'T BE ANY BASIS THAT I CAN THINK OF TO QUESTION THE FACT OF WHAT WAS

10:24:52 SAID. SO YOU GUYS FILED THIS AGREED-TO THING AND IT WAS TOTALLY DEFICIENT AND I HAVEN'T EVEN COME BACK TO IT YET BECAUSE IT WILL BE DONE LATER.

ALL RIGHT. NOW, OTHER THAN THAT STIPULATION WHICH WILL BE A COURT EXHIBIT AND WHICH WILL BE EXPLAINED AND

10:25:12 PROVIDED TO THE JURORS AS A ROADMAP, AS THEY SIT THERE, SO

THEY KNOW WHAT THE TRIAL TESTIMONY WAS, ONCE I RULE WHAT'S ADMISSIBLE, SOME OF THE TRIAL TESTIMONY, AND IT'S GOING TO HAVE TO BE PRESENTED IN NARRATIVE FASHION, NOT QUESTION AND ANSWER.

10:25:33 WHAT TIME OF DAY DID YOU DO GO IN? 11:00 O'CLOCK. WAS THE SUN SHINING? YES. DID YOU LOOK IN THE WINDOW? YES. THAT'S THREE QUESTIONS AND THREE ANSWERS. THAT'S NOT WHAT THIS STIPULATION IS GOING TO BE. IT'S GOING TO SAY THE WITNESS SAID HE WENT THERE AT 11:00 O'CLOCK. THE SUN WAS 10:25:51 SHINING AND HE LOOKED IN THE WINDOW, THAT KIND OF THING, TO HAVE A STORY TOLD THAT IS ROOTED IN PRECISE FACTS AS TO WHAT THE TRIAL SAID AND WHAT THE TRIAL TESTIMONY WERE. NO SIDE CAN POSSIBLY BE PREJUDICED BY THAT, DEPENDING ON WHETHER OR NOT THE TESTIMONY IN THE STIPULATION IS -- OTHERWISE, IT'S 10:26:11 RELEVANT AND PROBATIVE. SO YOU DON'T INTEND TO RELY -- AND I DON'T THINK YOU POSSIBLY COULD -- ON JUDGE ZAREFSKY'S FINDINGS, RIGHT?

MR. GENEGO: THAT'S CORRECT, YOUR HONOR.

THE COURT: NO REFERENCE TO THAT, OTHER THAN THE 10:26:22 COURT-ORDERED STIPULATION, WHICH I'VE BEEN JUST REFERRING TO THE LAST COUPLE OF MINUTES, YOU DON'T INTEND TO RELY ON STIPULATIONS?

MR. GENEGO: WE HAVE PROPOSED IN AN EARLIER -- EARLY MEETING OF COUNSEL A LONG LIST OF PROPOSED STIPULATED 10:26:42 FACTS. WE, AS I RECALL, HAVE NOT RECEIVED A RESPONSE OF

THOSE PROPOSED STIPULATED FACTS, BUT I THINK WE HAVE ANOTHER EARLY MEETING OF COUNSEL COMING UP AND HOPEFULLY WE'LL BE ABLE TO ACCOMPLISH THAT. BUT WE WOULD LIKE TO -- WE THINK THERE'S MANY FACTS THAT CAN BE STIPULATED TO, QUITE HONESTLY.

10:27:01 THE COURT: OKAY. NOW, TELL ME THIS, MR. GENEGO -- DIFFERENT ISSUE --

MR. GENEGO: BEFORE WE LEAVE THAT, YOUR HONOR -- I DON'T WANT TO INTERRUPT YOU -- BUT I JUST WANTED TO ADD MAYBE A FOOTNOTE THAT WAS ONE OF MY EARLIER COMMENTS, ABOUT THE 10:27:13 TRIAL TRANSCRIPTS. THERE ARE ASPECTS OF THOSE TRIAL TRANSCRIPTS THAT WE WANT TO INTRODUCE FOR THE TRUTH AND --

THE COURT: AND I HAVEN'T LOOKED AT THOSE YET.

MR. GENEGO: OKAY. I JUST WANTED TO MAKE SURE THAT --

10:27:21 THE COURT: IN FAIRNESS TO BOTH SIDES, WHATEVER YOU WOULD SAY, MR. BOJORQUEZ, IS UNDERSTANDABLE. WE WON'T RESPOND TO IT. I HAVEN'T EVEN LOOKED.

MR. GENEGO: THAT'S FINE.

I JUST WANTED TO MAKE SURE THE COURT WAS AWARE THAT 10:27:32 THERE IS AN ADDITIONAL USE FOR THE TRIAL TRANSCRIPTS.

THE COURT: I AM AWARE --

MR. GENEGO: THANK YOU.

THE COURT: -- THERE'S A TON OF STUFF OUT THERE, INCLUDING THAT.

10:27:42 NOW, THE NEXT QUESTION IS: WHAT IS YOUR *MONELL*

THEORY AND WHAT WOULD BE THE EVIDENCE THAT SUPPORTS IT? AS FAR AS I'M ABLE TO GLEAN, THE PATTERN AND PRACTICE AND THE CONDUCT OF THE CITY THAT TRIGGERS OSTENSIBLE *MONELL* LIABILITY IS THE POLICY AND RATIFICATION AND FOCUSES ON THE USE OF INFORMANTS, WHICH GETS TO THE GRAND JURY REPORT AND ON THE ALLEGED PRACTICE OF THE INTERNAL AFFAIRS DIVISION TO COVER UP POLICE MISCONDUCT, WHAT IT DID TO GAVIN IN THE COURSE OF HIS DUTIES? IS THAT PRETTY MUCH IT?

10:28:11

MR. GENEGO: IT IS. I DON'T THINK THAT IT NECESSARILY IS THE RETALIATION AGAINST LIEUTENANT GAVIN, BUT THERE ARE THREE DISTINCT THEORIES, AND TWO OF THEM HAVE TO DO WITH THE INTERNAL AFFAIRS INVESTIGATION. THE FIRST AND PROBABLY THE MOST CONFINED, FACTUALLY, IS THE RATIFICATION *MONELL* THEORY; THAT IS, THAT THE CHIEF POLICYMAKER, WHO WOULD HAVE BEEN CHIEF BRATTON AT THE TIME, WAS AWARE OF THE ILLEGAL ACTS AND RATIFIED THEM IN SOME FASHION, AND WE INTEND TO PROVE THAT BY THE FAILURE OF DISCIPLINE AND ALSO THE LETTER THAT WAS SENT AFTERWARDS. SO -- AND THE -- WE WOULD ALSO HAVE TO PROVE ALL OF THE FACTS THAT --

10:28:32

10:28:51

THE COURT: CLASSIFICATION OF THE VARIOUS CLAIMS ACT --

10:29:02

MR. GENEGO: THAT'S EXACTLY RIGHT.

THE COURT: -- I UNDERSTAND A LITTLE BIT ABOUT THAT. BUT IT --

MR. GENEGO: THE POLICY AND CUSTOM PRACTICE ABOUT

10:29:12

THE IA CLAIM REALLY HAS TO DO WITH HISTORICAL OVERVIEW PREDATING THE INVESTIGATION OF MR. LISKER'S CASE. AND CONTINUING ON UP TILL THE PRESENT TIME AND THE CONSENT TO CREATE -- AND WE, I THINK, HAVE IDENTIFIED THREE SORT OF -- THREE FUNDAMENTAL ASPECTS OF THE POLICY THAT WAS ONGOING DURING THOSE YEARS THAT CONSTITUTE A CUSTOMER PRACTICE THAT WAS A SUBSTANTIAL FACTOR IN CAUSING POLICE OFFICERS TO BELIEVE THAT THEY COULD GET AWAY WITH LYING, WHICH IS WHAT HAPPENED HERE. AND SIGNIFICANT TO THAT IS EVIDENCE THAT WE HAVE ABOUT THE INTERNAL AFFAIRS PROCEDURES RIGHT AT THE TIME OF MR. LISKER'S CASE THAT WE'VE BEEN ABLE TO GET FROM A PROFESSOR AT UNOY IN NEW YORK, WHICH IS THE -- WHICH ARE THE ORIGINAL REPORTS.

MR. FISCHER, WHO IS OUR EXPERT -- IA EXPERT, WILL TESTIFY TO THAT EVIDENCE. SO THAT IS A BROADER CLAIM THAN JUST THE RATIFICATION, OBVIOUSLY, BUT IT HAS TO DO WITH A NUMBER OF FEATURES ABOUT THE IA SYSTEM.

THE COURT: HOW WOULD YOU LINK -- IF YOU WERE ABLE TO PROVE WHAT YOU'VE JUST DESCRIBED, HOW WOULD YOU BE ABLE TO ESTABLISH THAT THEY CAUSED DAMAGE, TRIGGERING THE RIGHT TO CAUSE INJURY, TRIGGERING THE RIGHT TO RECOVER DAMAGES TO MR. LISKER?

MR. GENEGO: BECAUSE I THINK THE EVIDENCE WILL SHOW THAT BACK IN 1983, AT THE TIME OF THIS CASE, THE LAPD OFFICERS REALLY FELT AS IF THEY WERE ABLE TO FABRICATE

EVIDENCE. IF THEY GOT -- AND IF THEY -- AND IF THEY DID THAT AND GOT CAUGHT, NOTHING WOULD HAPPEN TO THEM. AND THERE WAS A VARIETY OF WAYS THAT THEY WENT ABOUT DOING THAT AND THERE'S DIFFERENT DEGREES OF DETAIL THAT I CAN PROVIDE, BUT -- BUT -- AND THE CULMINATING FACTOR OF THAT, YOUR HONOR, AND WHAT IS REALLY UNUSUAL WITH THIS CASE IS WHEN DETECTIVE MONSUE INTERVIEWED ABOUT THIS CASE, WHAT HE SAID WAS --

THE COURT: INTERVIEWED BY WHOM?

MR. GENEGO: *THE LOS ANGELES TIMES*.

AND WHAT -- AND HE REPEATED IT IN HIS DEPOSITION, BY THE WAY, SO WE DON'T NEED THE REPORTERS TO PROVE THIS. BUT WHAT HE SAID IN HIS DEPOSITION WAS THAT WHEN HE WAS ASKED ABOUT THIS 30 YEARS AFTER IT OCCURRED, WHEN IT FIRST BROKE AND HE WAS BEING ACCUSED OF FABRICATING EVIDENCE, HE SAID, "WHO DO YOU THINK PEOPLE ARE GOING TO BELIEVE? A LYING, MURDERING -- EXPLETIVE DELETED -- PERSON IN PRISON, OR AN OFFICER?" IN SO MANY WORDS. AND THAT REALLY REFLECTS THE MINDSET, WE BELIEVE, THAT EXISTED IN OFFICERS IN LAPD BECAUSE THEY NEVER GOT DISCIPLINED FOR THAT AND THERE WAS A SYSTEM SET UP TO PROTECT THEM. AND YOU SEE THAT IN THIS CASE BECAUSE, WHEN THEY WANTED TO JUSTIFY THE FAILURE OF DISCIPLINE, THEY FABRICATED WITNESS STATEMENTS, AND THEY DID THE SAME THING BACK IN 1983.

THE COURT: OKAY. SO IN TERMS OF THE INTERNAL AFFAIRS PRONG OF YOUR *MONELL* THEORY, SINCE THE EVENTS DIDN'T

OCCUR UNTIL LONG AFTER THE CONVICTION AND MOST OF THE SENTENCE HAVING BEEN SERVED, WHAT IS THE CONNECTION TO DAMAGE TRIGGERING INJURY, TRIGGERING THE RIGHT TO RECOVER DAMAGES FROM THAT?

10:32:26 MR. GENEGO: THERE'S A POLICY AND CUSTOM THAT WAS IN EFFECT BACK IN 1982 BEFORE HIS CASE. AND ONE OF THE WAYS WE PROVED THAT, UNDER THE *HENRY* CASE, WHICH IS A NINTH CIRCUIT CASE, IS POST-EVENT PROCEDURES AND EVENTS. AND WHEN YOU LOOK AT THE HISTORY -- THIS IS AFTER 1982, INCLUDING UP TO THIS VERY CASE, 30 YEARS LATER.

10:32:41 SO WHAT WE INTEND TO DO AND WOULD PROPOSE IS THAT -- AND ARGUE TO THE JURY IS THAT, YES, WHAT HAPPENED TO MR. LISKER'S INTERNAL AFFAIRS INVESTIGATION IN 2003 AND 2004 WAS 30 YEARS AFTER; BUT IT IS SOLID, PERSUASIVE, COMPELLING PROOF THAT THERE WAS A 30-YEAR REIGN OF WHERE OFFICERS IN THE LAPD KNEW THEY COULD GET AWAY WITH LYING. AND THIS WAS JUST ANOTHER ASPECT OF THAT AND IT CONTINUED ON FOR 30 YEARS, AND WE THINK WE CAN SUPPORT THAT. SO IT IS POST-EVENT *HENRY* EVIDENCE THAT PROVES THE EXISTENCE OF AFFAIRS PRIOR TO HIS CONVICTION.

10:33:01

10:33:32 THE COURT: OKAY. NOW, I'D LIKE TO ASK YOU A COUPLE OF QUESTIONS, MR. BOJORQUEZ.

THANK YOU, MR. GENEGO.

PLEASE REFRESH MY RECOLLECTION AS TO WHAT NEW -- BY THAT I MEAN SINCE -- I GUESS SINCE THE FACT OF CONVICTION OR

10:33:52

MAYBE SINCE THE FACT OF THE IA INQUIRY OR MAYBE SINCE THE RELEASE FROM CUSTODY OF MR. LISKER, WHAT IS THE NEW EVIDENCE THAT YOU INTEND TO PROFFER AT TRIAL TO SHOW, IN FACT, HE COMMITTED THE MURDER; THE ADDITIONAL EVIDENCE THAT WAS NOT PRODUCED? I THINK YOU'VE TOLD ME, AND I UNDERSTAND WHY, THAT IT WOULD BE ADMISSIONS BEFORE THE PAROLE PROCEEDINGS.

10:34:25

MR. BOJORQUEZ: THAT'S CORRECT, YOUR HONOR.

THE COURT: ANYTHING ELSE?

MR. BOJORQUEZ: I MEAN, I THINK THAT'S THE MAJORITY OF EVIDENCE. I THINK THAT'S KIND OF OUTSIDE THE ACTUAL PHYSICAL EVIDENCE THAT EXISTED. I THINK ONE OF THE MOST SIGNIFICANT POINTS WOULD BE THE ISSUE REGARDING THE FACT THAT THE PROSECUTOR AT THE UNDERLYING CRIMINAL TRIAL TOOK A CERTAIN THEORY AND PRESENTED CERTAIN EVIDENCE THAT THEY BELIEVED WERE SOMEHOW INSTRUMENTAL FOR THEIR CAUSE, SO-TO-SPEAK. I DON'T NECESSARILY BELIEVE THAT THE DEFENDANTS, YOU KNOW, LOOKING AT THE CASE 20/20 HINDSIGHT NOW WOULD HAVE MAYBE PROCEEDED ALONG THE PROSECUTION IN THAT MANNER. BUT MAJORITY SPEAKING, IT WOULD BE --

10:34:41 10:35:01

THE COURT: ARE YOU GOING TO INTEND TO PURSUE THE NOTION THAT IT -- THAT UNDER THIS NEW THEORY TO PROVE GUILT, WHATEVER IT MAY BE OR NEW SLANT OR NEW EMPHASIS, NEW INFORMATION CAN BE INCLUDED, OR JUST NEW ARGUMENTATION OR EMPHASIS OR WHAT?

10:35:12

MR. BOJORQUEZ: I WOULD SAY, OBVIOUSLY, ANYTHING

10:35:42

THAT WAS LEARNED DURING THE DEPOSITION OF THE PARTIES IN THE UNDERLYING DISCOVERY THUS FAR.

THE COURT: PARTIES IN THIS CASE?

MR. BOJORQUEZ: CORRECT. AND THAT I --

10:35:55 THE COURT: YOU KNOW, I'M NOT TRYING -- LOOK, I GOT THE PLAINTIFF TO TELL ME WHAT HIS CASE IS -- I THINK DISCOVERY IS JUST ABOUT OVER, RIGHT?

I MEAN, IT'S TIME TO SHOW THE CARDS AND YOU WOULD HAVE TO DO THAT BEFORE A MEDIATOR, ANYWAY. SO WHEN YOU 10:36:13 REFER, MR. BOJORQUEZ, TO WHAT YOU ASCERTAIN, ANY ELICITED DISCOVERY FROM MR. LISKER OR OTHERS, CAN YOU HELP ME OUT AND TELL ME WHAT YOU'RE REFERRING TO?

MR. BOJORQUEZ: I REALLY -- I MEAN, I THINK -- ALL THE EVIDENCE IS THERE. I DON'T -- I GUESS THE MAIN THING FOR 10:36:31 US WOULD BE USING INFORMATION SUCH AS THE STATEMENTS FOR PURPOSES OF A JUVENILE PROCEEDING WHERE HE HAD ADMITTED AT THE TIME OF HIS GUILT; AND THEN I THINK SUBSEQUENT TO THAT, THERE WERE SEVERAL PSYCHOLOGISTS OR PSYCHIATRISTS THAT HE MET WITH WHERE HE BASICALLY HAD PROVIDED ADMISSIONS OR BASICALLY 10:36:52 HAD COPPED OUT, SO-TO-SPEAK, TO THOSE PARTICULAR CRIMES AND THEN I THINK, ALSO, INCLUDING WITH THE PAROLE HEARINGS WHERE THERE WAS EITHER REPRESENTATIONS MADE BY HIMSELF OR REPRESENTATIONS MADE BY OTHERS REGARDING HIS PARTICULAR ISSUE. THE ONLY OTHER THINGS I WOULD SAY WOULD JUST BE, YOU 10:37:12 KNOW, MINIMAL; FOR EXAMPLE, MAYBE HIGHLIGHTING CERTAIN

EVIDENCE MORE THAN OTHERS. FOR EXAMPLE, THE 911 CALL REALLY WASN'T A BIG FACTOR AT THE TIME OF THE UNDERLYING CRIMINAL TRIAL BUT --

THE COURT: YES, WE TALKED ABOUT THAT.

10:37:27 MR. BOJORQUEZ: CORRECT.

SO THOSE ARE THE -- OTHER THAN THAT, THERE'S NOTHING OUT THERE THAT, YOU KNOW, SOMEHOW IS GLEANED NEW INFORMATION THAT WE SAY ALL OF A SUDDEN HIGHLIGHTS THE FACT THAT MR. LISKER HAS SOME NEW PIECE OF EVIDENCE THAT -- YOU 10:37:41 KNOW, LIKE A VIDEOTAPE OR SOMETHING LIKE THAT. I DON'T BELIEVE THERE'S ANYTHING ELSE LIKE THAT, YOUR HONOR.

THE COURT: OKAY. AND IS THERE EVIDENCE IF IT EVER GOT TO THE *MONELL* STAGE -- AND THE *MONELL* STAGE WILL DEFINITELY BE SEPARATE, YOUR POINTS IN YOUR MOTION. IN 10:38:04 PRINCIPLE, MANY OF THEM WERE VERY SOUND. BUT AT ANY *MONELL* PHASE, IS IT GOING TO BE NEW EVIDENCE THAT YOU INTRODUCE, OR ARE YOU BASICALLY GOING TO BE SAYING THEY HAVEN'T PROVEN WHAT THEY'RE REQUIRED TO PROVE?

MR. BOJORQUEZ: I WOULD SAY IT WOULD BE THE LATTER, 10:38:22 YOUR HONOR, THAT ULTIMATELY THAT -- YOU KNOW, THE INVESTIGATION, THE FACT THAT IT WAS CONDUCTED IN THE MANNER THAT IT WAS, I THINK OUR POSITION IS THAT IT WAS DONE IN AN APPROPRIATE MANNER. SO I DON'T REALLY THINK THERE'S GOING TO BE THE INFORMATION THAT -- I CAN ADVISE THE COURT THIS: 10:38:32 THERE'S NOT GOING TO BE INFORMATION COMING FORWARD IN THE

*MONELL* INVESTIGATION THAT SOMEHOW DURING THE *MONELL* OR THE INTERNAL AFFAIRS INVESTIGATION THEY SOMEHOW, YOU KNOW, DETERMINED ADDITIONAL EVIDENCE THAT HASN'T -- YEAH, THAT'S NOT GOING TO BE THE CASE, YOUR HONOR.

10:38:56 THE COURT: SO NO NEW DISCOVERIES OF GUILT BY INTERNAL AFFAIRS?

MR. BOJORQUEZ: I WOULD ACTUALLY AGREE WITH THAT, YES.

THE COURT: OKAY. OKAY. THANK YOU, MR. BOJORQUEZ.

10:39:01 NOW, WHILE YOU'RE SITTING DOWN I'M GOING TO -- YOU CAN SIT DOWN.

MR. BOJORQUEZ: THANK YOU.

THE COURT: THERE ARE A COUPLE OF OBSERVATIONS I WANT TO MAKE ABOUT THE BRIEFS THAT WERE FILED ON NUMBER 14, 10:39:21 AND I'VE READ EVERY WORD OF THEM.

IN THE FUTURE, MR. BOJORQUEZ, DON'T USE ROMAN NUMERALS TO START OUT. THERE'S MORE THAN ONE PAGE ONE. ONE WITH A ROMAN NUMERAL; ONE WITH AN ARABIC NUMERAL. JUST USE ARABIC NUMERALS RIGHT FROM THE BEGINNING.

10:39:32 MR. BOJORQUEZ: I JUST NOTICED THAT THIS MORNING.

THE COURT: THAT'S JUST A LITTLE THING, BUT DON'T DO THAT.

MR. BOJORQUEZ: YES, I APOLOGIZE.

THE COURT: AND, SECONDLY, I THINK MR. BOJORQUEZ IS 10:39:42 RIGHT THAT WHAT YOU HAVE ESSENTIALLY DONE IS REVERSED

POSITIONS, CHANGED YOUR VIEW. I CAN UNDERSTAND WHY BECAUSE, CONCEPTUALLY AND ANALYTICALLY, THIS IS A VERY THORNY CASE. I HAVE STRUGGLED A LOT WITH IT. BUT IT'S DISCOURAGING FOR ME TO LISTEN CAREFULLY TO YOU, MR. GENEGO, AND WIND UP CONCLUDING THAT YOUR PROPOSAL MAKES SENSE, AND ACTING ON IT, AND ISSUING AN ORDER FOR YOU TO COME BACK IN THE SPACE OF MAYBE TWO WEEKS --

10:40:09

MR. GENEGO: YOUR HONOR, I DID WANT TO APOLOGIZE --

THE COURT: -- AND SAY WE WITHDRAW IT. WE DON'T LIKE IT.

10:40:21

NOW, I'M GOING TO RULE ON THE MERITS NOTWITHSTANDING THAT THERE IS THAT PROCEDURAL DISAPPOINTMENT OR EVEN VIOLATION. AND NOW -- YOU CAN BE SEATED.

I'M GOING TO TELL YOU WHAT I THINK MAKES SENSE HERE AND EVENTUALLY THE ORDER THAT WILL GO OUT WILL BE AN ORDER THAT I DRAFT, NOT THE -- EITHER SIDE. SO IT CAN BE AS CLOSE TO PRECISE AS I WIND UP CONCLUDING I CAN MAKE IT.

10:40:41

HERE'S WHAT I'M INCLINED TO DO, AND MAYBE I SHOULD TELL YOU NOW SO YOU CAN UNDERSTAND HOW THIS WILL GO DOWN, THAT THERE IS NO WAY, NO HUMANLY POSSIBLE WAY THAT I CAN BE READY TO TRY THIS CASE ON APRIL 3RD. THIS TRIAL IS NOT GOING TO START ON APRIL 3RD.

10:41:02

I'M IN THE MIDDLE OF A TRIAL NOW AND IT'S A BENCH TRIAL THAT HAD TO BE LAUNCHED QUICKLY, AND THAT REQUIRES LOTS OF EFFORT. ONCE IT'S OVER -- AND IT'S RUNNING BEHIND

10:41:22

SCHEDULE ON FINDINGS OF FACTS AND CONCLUSIONS OF LAW.  YOU

JUST HEARD ANOTHER CASE WHICH IS ROUND TWO OF A LONG-LASTING

CIRCULAR CASE, ENVIRONMENTAL CASE.  I HAVE CRIMINAL CASES AND

I HAVE ALL YOUR MOTIONS; AND THEN MR. BOJORQUEZ'S SUMMARY

JUDGMENT, AND VACATION PLANS IN MAY.  AND I'M WORKING

EXTREMELY HARD.

I HAVE A VERY HOTLY ACTIVATED DEATH PENALTY HABEAS

CASE THAT HAS TO GO OUT; MANY, MANY THINGS.  AND I WANT TO DO

THIS RIGHT, RATHER THAN RAPIDLY; AND I CAN'T DO IT, AND I

DON'T THINK THE LAWYERS CAN DO IT.  SO WE'RE GOING TO EXPLORE

LATER ON WHAT THE REVISITED TRIAL DATE WILL BE, AND I DON'T

REMEMBER WHO SAID WHAT WHEN I PROPOSED JUNE OR JULY, BUT THAT

WILL BE MUCH MORE REALISTIC.

APRIL 3RD IS JUST OUT OF THE QUESTION.  THERE IS NO

WAY WE CAN POSSIBLY DO IT, IN FAIRNESS TO ANYBODY.

WITH THAT BACKGROUND IN MIND -- AND WE'LL RETURN TO

THE TIMING LATER -- THAT WILL MEAN THAT YOUR SUMMARY JUDGMENT

MOTION CAN COME LATER ON; AND IT CAN'T COME NOW, IT CAN'T

COME ANYWAY.  I CAN'T RULE ON ALL YOUR MOTIONS.  SO WE'LL GET

BACK TO THAT.  I THINK THERE SHOULD BE TWO PHASES IN THIS

TRIAL.

PHASE 1, WHICH WOULD HAVE TO BE STRUCTURED IN A

CAREFULLY CALCULATED AND CAREFULLY ADHERED-TO STEPS OR

SEQUENCE WOULD INCLUDE BOTH LIABILITY FOR PROCURING A

CONVICTION IN VIOLATION OF *NAPUE* AND DUE PROCESS AND ACTUAL

GUILT OR INNOCENCE -- BOTH. BECAUSE NO MATTER HOW HARD I'VE TRIED AND NO MATTER HOW HARD THE LAWYERS HAVE TRIED, THESE ISSUES ARE SEAMLESSLY INTERTWINED AND CANNOT BE DIVORCED. SO WHAT I ANTICIPATE IS HAVING THE EVIDENCE -- THE SO-CALLED DUE 10:43:37 PROCESS *BRADY* EVIDENCE, COUPLED WITH THE STIPULATION THAT I TOLD YOU ABOUT, THAT MR. GENEGO AND I JUST EXPLORED. TO THE EXTENT THAT THERE IS SOME NOTION OF INAPPROPRIATE RELIANCE ON A JAILHOUSE INFORMANT, SUCH AS HUGHES, THAT CAN BE EXPLORED WITHOUT REFERENCE TO THE GRAND JURY REPORT, WHICH DIDN'T EVEN 10:44:01 EXIST AND HADN'T EVEN BEEN COMMISSIONED AT THE TIME OF THE TRIAL; BUT THERE'S FAIR GAME, AND MAYBE IT WAS EXPLORED BY THIS SADLY DEFICIENT LAWYER AT THE UNDERLYING TRIAL, I DON'T KNOW. BUT THAT'S PART OF THE ATTACK ON THE BASIS FOR THE CONVICTION WHICH ABSOLUTELY REQUIRES A STATE-OF-MIND SHOWING.

10:44:31 ALSO INCLUDED AT THAT STAGE OF THE FIRST PHASE WOULD BE ALL THE KNOWN RYAN EVIDENCE. AS FAR AS I CAN REMEMBER, THE EVIDENCE POINTING TO RYAN OR EXCULPATING LISKER THAT WAS NOT KNOWN AT THE TIME CONSISTS OF HIS CRIMINAL RECORD BECAUSE OF THE MISSING DIGIT OR THE WRONG DIGIT, AND 10:45:12 SOMETHING TO DO WITH A TELEPHONE CALL, RIGHT?

MR. GENEGO: THERE'S THREE ITEMS, YOUR HONOR. ONE IS NOT THE TELEPHONE CALL THAT WAS MADE AT 10:22 A.M., IN RESEMBLANCE TO MR. RYAN'S MOTHER'S NUMBER; THAT'S ONE PIECE. THE SECOND PIECE IS THE ARMED ROBBERY BY KNIFE IN VENTURA 10:45:32 THAT WE WANTED TO USE AS 404(B) EVIDENCE, AS WELL AS IN 1986

ROBBERY BY KNIFEPOINT THAT WE ALSO WANT TO USE AS 404(B) EVIDENCE.

THE FACT OF HIS CRIMINAL CONVICTION WAS KNOWN AT THE TIME OF THE ORIGINAL INVESTIGATION. DETECTIVE MONSUE HAS ADMITTED THAT IN HIS DEPOSITION. THE MURDER BOOK CONTAINS A NOTATION "NO RECORD," AND IT'S ASSOCIATED WITH THE WRONG B.O.V. BUT DETECTIVE MONSUE ADMITTED IN HIS DEPOSITION THAT DURING THE COURSE OF THE INVESTIGATION, HE LEARNED THAT HE HAD A CRIMINAL RECORD AND THAT WAS NEVER PRODUCED. SO THE FACT OF THE CONVICTION, I THINK, WOULD STILL BE PART OF THE *BRADY* CLAIM, BUT THE DETAILS OF THAT AS 404(B), THIRD-PARTY CULPABILITY EVIDENCE WOULD BE DIFFERENT THAN THAT BECAUSE THE FAILURE TO DISCLOSE THE FACTS --

THE COURT: SO THE NEW RYAN EVIDENCE IS THE TELEPHONE CALL AND THE FACTS OF THE UNDERLYING CRIMES?

MR. GENEGO: PRECISELY.

THE COURT: THE FACT THAT HE HAD A CRIMINAL RECORD AND IT WASN'T ACCOUNTED FOR IN THE MURDER BOOK WOULD BE PART OF THE KNOWN, BUT UNDISCLOSED AND UNACKNOWLEDGED OR DISMISSED INFORMATION POINTING TO RYAN.

MR. GENEGO: CORRECT.

THE COURT: OKAY. THE PART THAT WAS DISCOVERED LATER, THE TELEPHONE CALL, THE ARMED ROBBERIES COULD NOT COME IN AT THIS SEQUENCE OR THIS STAGE OF THE FIRST PHASE. WHAT COULD COME IN, IN ADDITION TO THE DUE-PROCESS-KNOWN RYAN

EVIDENCE, IS THE FACT OF MONSUE'S LETTER TO THE PAROLE BOARD. THAT'S A CENTRAL, RELEVANT, PROBATIVE PIECE OF EVIDENCE ON THE ISSUE OF HIS STATE OF MIND, BUT THAT WOULD NOT INCLUDE AND NOT ALLOW ANY REFERENCE TO THE EXISTENCE OF THE INTERNAL AFFAIRS INQUIRY OR WHAT HAPPENED TO GAVIN OR GAVIN'S OPINIONS. IT IS NOT GOING TO BE PREJUDICIAL TO EITHER SIDE TO HAVE IT ESTABLISHED THAT MONSUE WROTE A LETTER TO THE PAROLE BOARD AND WHETHER -- AND THE EXTENT TO WHICH IT WAS TRUE, UNTRUE, UNFOUNDED, KNOWN TO BE OR THE LIKE -- ALL OF THAT IS FAIR GAME.

AFTER THE EVIDENCE -- AND I DON'T PURPORT TO HAVE ACCOUNTED FOR ALL OF IT -- THAT PLAINTIFF HAS A SHOT AT INTRODUCING TO SHOW HE WAS CONVICTED WRONGFULLY HAS BEEN PRESENTED TO THE JURY IN THIS PHASE 1. THE JURY WILL GET AN INSTRUCTION THAT BASICALLY SAYS THAT, WHEN IT COMES TIME FOR IT TO DELIBERATE AS TO WHETHER OR NOT THE PLAINTIFF PROVED A VIOLATION OF HIS CONSTITUTIONAL RIGHTS, THEY WILL BE REQUIRED TO DO SO ONLY ON THE BASIS OF WHAT THEY'VE HEARD THUS FAR. BUT BECAUSE OF THE NEED TO ALLOW BOTH SIDES TO PRESENT A COMPLETE AND FULL PICTURE AND BECAUSE OF THE NEED TO PERMIT THE DEFENDANTS TO ESTABLISH THAT THEY ACTED IN GOOD FAITH, THERE'S ADDITIONAL EVIDENCE BEYOND THAT WHICH THEY ALREADY HEARD THAT HAD BEEN MADE -- THAT HAD BEEN PLACED INTO THE RECORD AT THE TRIAL, THAT THE DEFENDANTS WILL HAVE A RIGHT TO INTRODUCE -- TO SHOW THAT, IN FACT, NOT ONLY WERE THEY ACTING

IN GOOD FAITH, BUT, IN FACT, THEY GOT THE RIGHT MAN. AND THEN YOU CAN PUT IN THAT ADDITIONAL EVIDENCE. AND THE JURY WILL BE INSTRUCTED -- AND I KNOW WE TALKED ABOUT THIS ONCE BEFORE, BUT THIS IS THE ONLY WAY I COULD THINK OF DOING IT FAIRLY FOR BOTH SIDES. THAT DOES NOT ESTABLISH ANYTHING, WHATSOEVER; THEY MAY NOT TAKE IT INTO ACCOUNT IN DETERMINING WHETHER OR NOT MR. LISKER PROVED HIS CASE AS TO THE CONSTITUTIONAL VIOLATIONS.

AND THEN AFTER THE DEFENSE IS PERMITTED TO PUT ON PROOF OF ACTUAL GUILT, AND THEY WILL BE ABLE TO ARGUE THAT IF THE JURY IS PERSUADED THAT LISKER WAS THE ACTUAL KILLER, THEY'LL HAVE A SPECIFIC QUESTION ON THE DIRECTED VERDICT FORM TO THAT EFFECT. THEY WON'T REALLY BE TOLD ABOUT DAMAGES BECAUSE DAMAGES WILL COME IN PHASE 2.

IT WILL ALL BE RELEVANT AND IT WILL ALL BE STRUCTURED AND PART OF PHASE 1.

I BELIEVE, CONTRARY TO MY PREVIOUS RULINGS -- BUT I DON'T THINK I MADE THOSE RULINGS IN LIGHT OF FULL BRIEFING, SO I WON'T PRECLUDE THE PARTIES FROM BRIEFING IT FURTHER -- THAT IN THIS SINGLE PHASE 1, TO THE LIMITED EXTENT THAT IT'S NOT ALREADY OUT THERE THAT LISKER WAS THE ACTUAL GUILTY PARTY; BUT, INSTEAD, DEFENDANTS ARE ENTITLED TO PUT IN EVIDENCE OF THE GUILTY PLEAS AND ADMISSIONS BEFORE THE PAROLE BOARD TO OBTAIN JUVENILE STATUS. AND I DON'T KNOW WHAT WAS SAID ABOUT THE SHRINK. WE'LL HAVE TO SEE WHETHER OR NOT IT'S

PROBATIVE, BUT IF THAT COMES IN AS WELL.

IN ORDER TO HAVE A FINDING, AS THERE WILL BE, A SPECIAL VERDICT FINDING AS TO WHETHER OR NOT THE DEFENDANTS HAVE PROVEN ACTUAL GUILT, RIGHT NOW IT'S MY EXPECTATION THAT 10:51:43 THE SAME STANDARD OF PROOF -- IN OTHER WORDS, THE PREPONDERANCE OF THE EVIDENCE IS THE STANDARD THAT THE DEFENDANTS WILL HAVE TO MEET, NOT PROVE BEYOND A REASONABLE DOUBT; AND THAT'S BECAUSE, OTHERWISE, IT'S GOING TO BE HOPELESSLY ENTANGLED AND CONFUSING TO THE JURY.

10:52:01 I HAVE A VIEW THAT IF MR. LISKER SUCCEEDS IN PROVING BEYOND -- BY A PREPONDERANCE OF THE EVIDENCE THAT HIS CONSTITUTIONAL RIGHTS WERE VIOLATED, THE ADMISSION OF ADDITIONAL EVIDENCE, FOLLOWED BY THE NEW RYAN EVIDENCE WILL GO A FAR WAY AND MAYBE A TOTAL DISTANCE TO NEGATING ANY 10:52:31 IMPACT. AND I ACKNOWLEDGE IT WILL BE HARMFUL, BUT THAT DOESN'T ESTABLISH LEGAL PREJUDICE TO MR. LISKER OF HAVING PROOF OF GUILT COME IN, INCLUDING BY A PREPONDERANCE OF THE EVIDENCE.

SO THE JURY IS GOING TO SAY THAT LISKER PROVED THAT 10:52:52 HIS CONSTITUTIONAL RIGHTS WERE VIOLATED. AND DID THE DEFENDANTS PROVE THAT, EVEN THOUGH THEY WERE VIOLATED, HE WAS THE RIGHT MAN? AND THEY'RE GOING TO DO THAT IN LIGHT OF THE FULL STORY IN LIGHT OF THE SEQUENTIAL FASHION. THAT'S PHASE 1.

10:53:02 DEPENDING ON THE VERDICTS, WE THEN TURN TO PHASE 2.

PHASE 2 WILL INCLUDE DAMAGES, WHICH IS AN ENTIRELY DIFFERENT AND LESSER ARRAY OF EVIDENCE. FOR SURE, THERE WILL BE A DAMAGE INQUIRY, INCLUDING PUNITIVE DAMAGES. THERE WILL BE A FINDING IN THE FIRST PHASE AS TO WHETHER OR NOT THE CONDUCT WAS -- THAT MIGHT TRIGGER A FINDING OF LIABILITY ONCE THEY LATER AWARD OF PUNITIVE DAMAGES.

10:53:33

THEN IN PHASE 2, I HAVE SOME DOUBT, BASED UPON EXPERIENCE AND COMMON SENSE, WHETHER IF PLAINTIFF GOT AN AWARD THAT HE WON ON PHASE 1 AND THAT HE PROVED THE RIGHT TO RECOVER PUNITIVE DAMAGES, THERE MIGHT NOT EVEN BE, FOR PRACTICAL AND OTHER REASONS, A DECISION BY HIM TO PURSUE *MONELL* DAMAGES. BUT I'M NOT PRECLUDING IT AND I DON'T KNOW WHAT THE PLAINTIFF WILL DECIDE TO DO. IF THERE IS A *MONELL* INQUIRY, WHICH IS MUCH DIFFERENT FROM WHAT HAPPENED TO MR. LISKER AND WHICH OPENS UP A WHOLE NEW ARRAY OF ISSUES IN EVIDENCE, IT WILL BE EXPLORED IN PHASE 2; AND THERE WILL BE SEPARATE DAMAGES AWARDS, AND I WILL WORK VERY HARD WITH THE LAWYERS TO LIMIT THE DAMAGES THAT THE INDIVIDUALS MAY HAVE TO BE SADDLED WITH AND THOSE UNDER *MONELL*. AND THAT'S THE WAY, I THINK, MAKES SENSE AND IS FAIR. BOTH SIDES ARE GOING TO SQUAWK, AND I'LL GIVE YOU A CHANCE NOW. BUT I'VE LOOKED AT ALL THE DIFFERENT PERMUTATIONS AND COMBINATIONS AND ALTERNATIVES, AND I THINK THIS IS THE RIGHT WAY TO PROCEED. AND IT'S CONSISTENT WITH WHAT I THOUGHT EARLIER ON, ANYWAY. SO I THINK MY INITIAL INSTINCTS MAY HAVE BEEN DOUBT.

10:53:51 10:54:21 10:54:52 10:55:12

NOW, DO YOU WISH TO BE HEARD, MR. GENEGO?

MR. GENEGO: AGAIN, CAN I HAVE JUST ONE MOMENT TO SPEAK?

THE COURT: YES.

10:55:24 AND I'LL GIVE YOU A CHANCE AS WELL, MR. BOJORQUEZ.

MR. BOJORQUEZ: THANK YOU.

(COUNSEL CONFER.)

MR. GENEGO: YOUR HONOR, COULD WE TAKE A FIVE-MINUTE BREAK?

10:55:52 THE COURT: ALL RIGHT.

MR. GENEGO: THANK YOU.

THE COURT: I'LL COME BACK IN FIVE MINUTES.

MR. GENEGO: THANK YOU.

(RECESS.)

11:10:35 THE COURT: BEFORE YOU ADDRESS THE COURT, MR. GENEGO, LET ME MAKE CLEAR WHAT I ASSUME THESE EXPERIENCED TRIAL LAWYERS ASSUMED, WHICH IS THAT THE FIRST PARTS OF WHAT I'VE DESCRIBED AS PHASE ONE WOULD BE IN THE PLAINTIFF'S CASE-IN-CHIEF. THE PROOF OF GUILT, INCLUDING THE EVIDENCE 11:10:52 ABOUT THE GUILTY PLEAS OR ADMISSIONS TO PSYCHOLOGISTS, ASSUMING ALL OF THAT BECOMES ADMISSIBLE, WOULD BE SUBMITTED AND PROFFERED BY THE DEFENDANT AFTER THE PLAINTIFF RESTED IN THE FIRST PHASE. THE EVIDENCE THAT THAT WOULD BE ENTITLED TO HAVE CONSIDERATION FOR IT TO BE CONSIDERED FOR WOULD BE BOTH 11:11:22 ON STATE OF MIND AND GUILT, ACTUAL GUILT. AFTER THE DEFENSE

RESTS ON REBUTTAL, THE PLAINTIFF WOULD THEN INTRODUCE THE NEW RYAN EVIDENCE THAT WOULD BE RESPONSIVE TO A CLAIM OF ACTUAL GUILT OR GOOD FAITH AND IT WOULD REALLY GO TO THE ISSUE OF ACTUAL GUILT. SO THAT'S WHAT I WAS REFERRING TO BY DIFFERENT SEQUENCES IN THE FIRST PHASE.

11:11:56

NOW, DO YOU WISH TO BE HEARD, MR. GENEGO?

MR. GENEGO: YES, YOUR HONOR, I WOULD, JUST BRIEFLY.

FIRST OF ALL, I DO WANT TO APOLOGIZE FOR HAVING ARGUED AT THE DECEMBER 12TH HEARING FOR SOMETHING THAT I THINK THE COURT GAVE US AND THEN WE -- WE DID SOMETHING DIFFERENT. SO I APOLOGIZE FOR THAT. IT REMINDS ME OF ONE OF THOSE LITTLE PLASTIC GAMES I USED TO HAVE AS A KID WHERE YOU TRY TO SPELL SOMETHING, AND THEN AS SOON AS IT MOVES ONE CUBE -- OR ONE PIECE, IT WOULD THEN CHANGE THE WHOLE PUZZLE, AND SO THERE'S A CERTAIN DEGREE OF THAT, BUT I DO REGRET HAVING ADVOCATED THAT.

11:12:06

11:12:11

THERE WAS TWO POINTS THAT WE WANT TO ADDRESS. FIRST OF ALL, IT HAS TO DO WITH THE PREPONDERANCE STANDARD, RATHER THAN GUILT BEYOND A REASONABLE DOUBT. AND WE WOULD LIKE TO SUBMIT SOMETHING, BRIEFLY, IN WRITING ABOUT THIS, BUT I JUST WANT TO PREVIEW JUST A LITTLE BIT AND THAT IS --

11:12:32

THE COURT: YOU HAVEN'T REACHED A FINAL CONCLUSION AS TO WHAT THE STANDARD OF PROOF IS. I WELCOME FOCUSED BRIEFS AND I WANT THEM TO DEAL WITH CASES OR OTHER SOURCES OF

11:12:42

DISCUSSION AND CITATION THAT HAD TO DO WITH THIS CONTEXT, WHICH IS AKIN TO A TRIAL WITHIN A TRIAL. SOMEBODY GOT CONVICTED OF A CRIME, THE DEFENDANT IS BEING ACCUSED OF PROCURING THAT CONVICTION WRONGFULLY AND THAT THE DEFENDANT WHO GOT CONVICTED WAS, IN FACT, INNOCENT.

11:13:14

THIS CASE -- WHAT'S THE STANDARD THAT HAS TO BE MET TO PROVE, IN FACT, THEY GOT THE RIGHT GUY?

AND YOU'LL, OF COURSE, HAVE A CHANCE TO OPPOSE THAT. AND I DON'T THINK YOU HAVE TO FILE -- I DON'T KNOW THAT I HAVE TO FILE A -- ASSUMING THAT I STICK TO MY GUNS HERE, WHICH IS HIGHLY LIKELY, YOU DON'T HAVE TO FILE IT RIGHT AWAY. WE'VE GOT OTHER THINGS THAT I HAVE TO DEAL WITH. ONCE THE CASE IS IN -- UNLESS YOU THINK IT'S GOING TO EFFECT SETTLEMENT, THEN YOU CAN FILE IT EARLIER, BUT NOTICE IT AS A NOTICED MOTION. MR. BOJORQUEZ WILL HAVE AN OPPORTUNITY TO OPPOSE IT, AND THEN CONSIDER IT.

11:13:31

11:13:51

MR. GENEGO: WHAT WE TENTATIVELY WOULD INTEND TO PROPOSE TO THE COURT, AND WHAT WE WILL ELABORATE ON WRITING, IS REALLY, I THINK, WHAT WE BRIEFED IN OUR ORIGINAL MOTION FOR TRIFURCATION; AND THAT WAS THAT THE BURDEN WOULD BE ON US TO PROVE BY A PREPONDERANCE THAT A UNANIMOUS JURY WOULD NOT FIND MR. LISKER GUILTY BEYOND A REASONABLE DOUBT. AND SO THE BURDEN WOULD BE OURS, BASICALLY, TO PROVE THAT HE WOULD NOT HAVE BEEN CONVICTED AT A -- HE WOULD NOT BE CONVICTED AT A CRIMINAL TRIAL, AND THAT WOULD THEN KEEP THE PREPONDERANCE

11:14:02

11:14:32

STANDARD, PUT THE BURDEN ON US, BUT STILL RETAIN THE UNDERLYING CONCEPT THAT AT A CRIMINAL TRIAL HE WOULD HAVE TO BE PROVED BEYOND A -- GUILTY BEYOND A REASONABLE DOUBT.

THE COURT: I MAY NOT HAVE PREVIOUSLY UNDERSTOOD THAT. SO YOU WOULD THEN REQUIRE THE JURY TO BE INSTRUCTED THAT THE BURDEN OF PROOF THE PLAINTIFF HAS IS A PREPONDERANCE, BUT HE HAS TO PROVE JUST WHAT YOU SAID, AND THEN THEY WOULD BE TOLD WHAT A GUILTY -- WHAT GUILT BEYOND A REASONABLE DOUBT STANDARD WOULD HAVE BEEN.

MR. GENEGO: CORRECT.

THE COURT: BOTH WOULD BE -- WELL, MAYBE THAT'S THE WAY TO DO IT. BUT YOU BRIEF IT, AND THEN MR. BOJORQUEZ WILL RESPOND TO IT.

MR. GENEGO: THANK YOU, YOUR HONOR.

THE SECOND POINT HAS TO DO WITH THE POINT AT WHICH WE WOULD BE ABLE TO CALL MR. LISKER OR WHEN WE WOULD CALL MR. LISKER, AND WHAT HE WOULD BE ALLOWED TO TESTIFY TO. THE COURT JUST SET UP STRUCTURE WHERE THE GUILTY PLEA AND THE STATEMENTS TO THE PAROLE BOARD WOULD BE PART OF THE DEFENDANT'S CASE. WE WOULD LIKE TO BE ABLE TO CALL MR. LISKER IN OUR FIRST PHASE AND HAVE HIM TESTIFY TO SOME OF THE FACTS IN THE LIABILITY PHASE, AND IN THAT SAME PHASE, ENABLE HIM TO ADDRESS THE GUILTY PLEA AND THE PAROLE HEARINGS SO THAT THAT WOULD BE PART OF HIS CONTINUOUS EXAM WHEN WE FIRST CALLED HIM, RATHER THAN HAVING HIM TESTIFY IN THAT

FIRST PHASE AND THEN DEFENDANTS CALLING HIM AND BASICALLY CROSS-EXAMINING HIM ABOUT THOSE FACTS BEFORE WE HAD AN OPPORTUNITY TO ADDRESS IT ON DIRECT. AND THAT WOULD THEN ALLOW US TO PRESENT HIS TESTIMONY IN A COHESIVE --

11:16:16 THE COURT: WELL, THEN THAT DOES AWAY WITH HAVING THE ISSUE OF ACTUAL GUILT AND GOOD FAITH ON THE PART OF THE DEFENDANT IN THEIR BELIEF THAT HE WAS ACTUALLY GUILTY RESERVED FOR THE DEFENDANT'S CASE AFTER THE PLAINTIFF RESTED. AND I DON'T KNOW WHAT THAT DOES TO MY STRUCTURE HERE. IT CERTAINLY UNDERMINES THE LOGIC OF IT.

11:16:41 MR. GENEGO: WELL, THAT WAS NOT MY INTENT. I MEAN, PERHAPS, WHAT WE WOULD DO IS WE WOULD BE ALLOWED TO CALL MR. LISKER IN THE START OF THE SECOND PHASE TO DO A DIRECT EXAMINATION OF HIM AND --

11:16:52 THE COURT: NO, THE SECOND PHASE --

MR. GENEGO: I MEAN, THE SECOND PART OF THE FIRST PHASE IS WHAT I MEAN.

THE COURT: YEAH, BUT -- OKAY. THE CASE -- THE DEFENDANT'S CASE?

11:17:02 MR. GENEGO: THAT'S EXACTLY RIGHT.

THE COURT: YOU, OF COURSE, COULD CALL HIM IN THAT CASE -- IN THAT PHASE, BUT FIRST YOU HAVE TO LET THE DEFENDANTS PUT ON THE EVIDENCE, WHICH WOULD BE PROBABLY AN HOUR OF TESTIMONY.

11:17:12 MR. GENEGO: BUT I BELIEVE UNDER THE COURT'S PRIOR

ORDER YOU SAID THE DEFENDANTS COULD CALL HIM, AND WE WOULD LIKE TO NOT HAVE HIM, QUITE FRANKLY, BE SUBJECT TO THEIR CROSS-EXAMINATION BEFORE WE'RE ALLOWED TO --

THE COURT: WELL, I DON'T KNOW IF THAT'S FAIR, AND I DON'T EVEN THINK IT'S GOING TO MAKE A DIFFERENCE. I DON'T THINK YOU CAN ESTABLISH A BASIS TO PRECLUDE THIS DEFENDANT FROM HAVING THE RIGHT TO CROSS-EXAMINE A HOSTILE WITNESS WHO'S SUING THEM. IF THEY'RE GOING TO PUT ON EVIDENCE THAT, IN FACT, HE'S GUILTY AND THEY THOUGHT SO IN GOOD FAITH, THEN THEY'RE ENTITLED TO PUT HIM ON THE STAND, CROSS-EXAMINE HIM. ALL THE QUESTIONS YOU WOULD HAVE ASKED IN YOUR CASE-IN-CHIEF TO ADDRESS THIS ISSUE, WHICH WOULD NOT HAVE YET SURFACED AND WHAT YOU DIDN'T WANT TO SURFACE YOU DIDN'T WANT TO HAVE -- AND I GOT TALKED INTO IT -- ANY EVIDENCE ABOUT CONFESSIONS AND STATEMENTS TO SHRINKS WHEN YOU WERE OUT TO PROVE THE CONSTITUTIONAL VIOLATIONS, THIS IS A WAY TO DEAL WITH THOSE OBJECTIVES. SO I DON'T -- I DON'T THINK THAT I'M GOING TO GO ALONG WITH THAT.

MR. GENEGO: THAT'S FINE.

I MEAN, I UNDERSTAND THE COURT TO -- WE MIGHT TOUCH UPON THAT IN THE BRIEF WE DO ABOUT US HAVING THE BURDEN AS TO BOTH LIABILITY AND THAT HE WOULDN'T BE CONVICTED BEYOND A REASONABLE DOUBT, BUT I UNDERSTAND THE COURT'S POSITION.

THE COURT: OKAY.

DO YOU WISH TO BE HEARD, MR. BOJORQUEZ?

MR. BOJORQUEZ: YOUR HONOR, AS FAR AS THE DEFENSE' PERSPECTIVE, I THINK THE LOGIC IN THE MANNER THAT THE COURT HAD INITIALLY SPOKE WITH US BEFORE THE BREAK -- OTHER THAN ANY SPECIFIC THINGS THAT MAY COME OUT THAT, YOU KNOW, THAT THE COURT HADN'T ADDRESSED TODAY, I BELIEVE THE COURT HAS A LEGITIMATE, VERY GOOD GRASP, MAYBE BETTER THAN COUNSEL AT THIS POINT, BECAUSE YOU'RE SEPARATE AND DETACHED AND LOOKING AT THIS FROM THE PERSPECTIVE OF HOW IT SHOULD GO. YOU KNOW, EVERYBODY IS TRYING TO CRAFT IT THE WAY THAT IT'S GOING TO MOST BE BENEFICIAL TO THEM, BUT I THINK THE COURT -- IN THE WAY THE COURT HAS CONSTRUCTED IT, I MEAN, THE DEFENSE AT THIS POINT DOESN'T HAVE AN ISSUE AT ALL, YOUR HONOR.

THE COURT: OKAY. I'LL ISSUE AN ORDER THAT WILL REFLECT IN, I HOPE, CAREFUL AND CLEAR FASHION HOW THE TRIAL WILL PROCEED, AND IT WILL BE IN RESPONSE TO THIS MOTION IN LIMINE. IT'S GOING TO SAY I'M DENYING THE MOTION TO TRIFURCATE; BUT INSTEAD, NOTWITHSTANDING ANY PREVIOUS ORDERS THAT I ISSUED AND PREVIOUS STATEMENTS THAT I MADE, HERE'S HOW WE'RE GOING TO DO IT. SO THAT'S MY RULING ON NUMBER 14.

I AM NOT IN A POSITION TO RULE ON ANYTHING ELSE THAT WAS ON CALENDAR TODAY. I THINK YOU GUYS HAVE -- AND I INCLUDE THAT GENERICALLY, MS. PODBERESKY AND MS. MARSHAL. KNOW THAT I READ THIS STUFF AND I JUST NEED MORE TIME. SO MY REQUEST IS THAT YOU TALK TO EACH OTHER AND PROPOSE A DATE.

STEVE, I HAVE THE BLUE SHEET WITH ME --

THE CLERK: MM-HUH.

THE COURT: -- AND MY OWN PERSONAL CALENDAR.

I FORGET WHY SOMEBODY COULDN'T OR DIDN'T WANT TO DO IT IN JUNE OR JULY. BUT I'M OPENING THAT UP AGAIN. WE HAVE THAT *ZAG* CASE (PHONETIC) ON JUNE 19TH. THIS CASE WOULD TAKE PRIORITY OVER THAT.

THE CLERK: YES.

THE COURT: ANY OTHERS THAT I SEE THERE, I'M NOT GOING TO PAY ATTENTION TO. JUST ASSUME I'LL GO WITH -- SO ONE AVAILABLE DATE WOULD BE JUNE 19TH.

WE JUST CONTINUED THE *CHOU* CASE, STEVE.

THE CLERK: OKAY.

THE COURT: I SIGNED THAT.

THE CLERK: YES, YOU DID.

THE COURT: YEAH, NOT TOO MANY CRIMINAL TRIALS THEN.

JUNE 19TH, JUNE 26TH.

THERE'S NO POINT -- WELL, IT MIGHT BE A POINT STARTING ON JULY 3RD, BUT THE NEXT DAY IS A HOLIDAY.

JULY 10TH. OH, BUT I -- THIS FLETCHER CASE, THAT ONE IS GOING, STEVE. AND THAT'S THE DATE WE CONTINUED IT TO?

THE CLERK: YES.

THE COURT: NOW, I'D HAVE TO GET THIS TRIAL COMPLETED BY JULY 17TH. SO JUNE -- THE EARLIER DATES IN JUNE WOULD BE MUCH BETTER. AND THEN IF IT WERE AFTER JULY 17TH,

IT COULD NOT BE BEFORE -- LOOK AT THIS.

THE NINTH CIRCUIT CONFERENCE IS THE WEEK OF AUGUST 13TH. SO IT WOULD HAVE TO BE AUGUST 21ST, AND IF THAT INTERFERES WITH CAREFULLY PLANNED OR IMPORTANTLY CONTEMPLATED VACATIONS OF THE LAWYERS, I'M AVAILABLE IN SEPTEMBER.

11:23:51

SO YOU MEET AND CONFER AND YOU PROPOSE A DATE. AND LET'S ASSUME IT'S GOING TO BE A 12-DAY TRIAL. AND, IN THE MEANTIME, I WANT -- NOW, I BROUGHT OUT THE SCHEDULE OF WHAT'S SUPPOSEDLY COMING IN. THE SUMMARY JUDGMENT MOTION DOESN'T HAVE TO BE FILED ON THE 21ST UNTIL SOMETIME AFTER I'VE RULED ON NECESSARY MOTIONS IN LIMINE.

11:24:31

HAVE ALL THE MOTIONS IN LIMINE NOW BEEN FULLY BRIEFED, COUNSEL?

MR. GENEGO: EXCEPT FOR THE EXPERTS.

11:24:51

THE COURT: EXCEPT FOR THE EXPERTS.

MR. GENEGO: WE STILL OWE THE COURT THE CHARTS THAT YOU ASKED ABOUT, WHEN THOSE SHOULD BE FILED. AS SOON AS WE GET EXPERTS WE'LL FILE THAT.

THE COURT: ALL RIGHT. WELL, HERE'S THE THING. I HAVEN'T RULED ON 5 THROUGH 11 OF THE PLAINTIFF. I'VE ONLY RULED ON 14 OF THE -- NUMBER 14 OF THE DEFENDANTS'. THERE ARE A LOT OF THE DEFENDANTS'. SOME OF THESE ARE TRICKY ISSUES. I'VE BEGUN TO LOOK INTO THEM, LIKE ON 5 AND 6. AND THEN THERE'S STILL MOTIONS IN LIMINE 12 AND 13.

11:25:02

11:25:22

WHICH ONES WERE THOSE? ARE THOSE THE EXPERTS?

MR. GENEGO: NO. ACTUALLY, NUMBER 13 HAD TO DO WITH MR. GAVIN'S TESTIMONY AND OUR REQUEST THEY NOT BE ALLOWED TO IMPEACH HIM WITH HIS LAWSUIT. AND NUMBER 12 HAD TO DO WITH THE DEFENDANTS NOT BEING ALLOWED TO ARGUE THAT USE OF DRUGS CAUSES VIOLENCE, AND I THINK THAT THEY'VE AGREED TO THAT SUBJECT OF THE EXPERT TESTIMONY OF DR. ROSENBERG.

THE COURT: LET ME ASK YOU THIS -- I DON'T KNOW IF I ASKED YOU TO DO THIS BEFORE.

IS THERE ANY MOTION THAT, DEPENDING ON HOW IT'S DECIDED, COULD MOOT THE NEED FOR MY LOOKING AT ANY OTHER MOTION?

MR. GENEGO: ONLY THEIR SUMMARY JUDGMENT MOTION, I WOULD THINK.

THE COURT: NO. THAT -- ALL RIGHT. WELL, THEN, THIS IS WHAT WE'RE GOING TO DO: I'M NOT GOING TO -- WE'RE NOT GOING TO HAVE A HEARING ON FEBRUARY 6TH, NEXT WEEK. AND I PROBABLY WILL, AS BEST AS I CAN, WORK ON 5 THROUGH 11 WHEN I CAN, LET YOU KNOW WHEN WE'LL HAVE A HEARING ON THOSE. AND THEN AT THAT HEARING, LET YOU KNOW WHEN WE'LL HAVE A HEARING OR WHEN WE MIGHT BE IN A POSITION TO HAVE A HEARING ON DEFENDANT'S MOTIONS AND ON PLAINTIFF'S 12 THROUGH 13.

THE SUMMARY JUDGMENT CALENDARING IS GOING TO BE SUBJECT TO A STIPULATION OF THE LAWYERS AND IT SHOULD BE THAT THE MOTION FOR SUMMARY JUDGMENT WOULD BE FILED -- YOU ALREADY PROBABLY HAVE BEGUN WORKING ON IT AND THOUGHT ABOUT IT, MR.

BOJORQUEZ. IF IT'S TWO WEEKS AFTER THE LAST RULING ON THE LAST REMAINING MOTION IN LIMINE, IS THAT ADEQUATE TIME?

MR. BOJORQUEZ: I BELIEVE THAT WOULD BE ADEQUATE.

THE COURT: OKAY. SO YOU FILE A STIPULATION THAT THE MOTION FOR SUMMARY JUDGMENT NEEDS TO BE FILED TWO WEEKS AFTER THE LAST RULING AND WOULD BE SUBJECT TO ORDINARY CALENDARING SCHEDULES. AND YOUR STIPULATION SHOULD HAVE A DATE FOR THE PROPOSED PRETRIAL CONFERENCE ORDER AND THE FILING OF A PRETRIAL CONFERENCE -- AND THE HOLDING OF A PRETRIAL CONFERENCE, END OF THE TRIAL.

SO I'M JUST GOING TO DO WHAT I CAN, COUNSEL. AND IT'S A PRIORITY FOR ME, BUT I CAN'T BE PRECLUSIVE OF ALL THE OTHER THINGS I'M TRYING TO DO.

THANK YOU FOR YOUR COOPERATION. WE'RE ADJOURNED.

MR. BOJORQUEZ: THANK YOU, YOUR HONOR.

MR. GENEGO: THANK YOU.

MS. PODBERESKY: THANK YOU.

(END OF PROCEEDINGS.)

--000--

CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES )
) SS.
STATE OF CALIFORNIA )

I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED: JUNE 29, 2012

**/S/ ROSALYN ADAMS**

ROSALYN ADAMS, CSR 11794
OFFICIAL COURT REPORTER